UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THEODORE ITZKOWITZ,                             :

                    Plaintiff,          :          Index No. 07 CV 3783 (JGK)

    -against-                                  :

ISRAEL DISCOUNT BANK OF NEW YORK,               :
ISRAEL DISCOUNT BANK OF NEW YORK                :
SEVERANCE PLAN FOR SPECIFIED                     :          **DECLARATION**
EXECUTIVES, ISRAEL DISCOUNT BANK OF              :
NEW YORK SEVERANCE PLAN, ISRAEL                  :
DISCOUNT BANK OF NEW YORK DEFERRED               :
COMPENSATION PLAN, and PENSION PLAN             :
FOR EMPLOYEES OF ISRAEL DISCOUNT                 :
BANK OF NEW YORK,                               :
                                :
               Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

I, Jennifer B. Rubin, pursuant to 28 U.S.C. §1746, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

    1.    I am a member of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., counsel for defendants in this action.  As such counsel, I am fully familiar with the facts and circumstances of this action. I submit this Declaration in support of IDBNY's motion to dismiss the Fourth and Fifth Counts of plaintiff Theodore Itzkowitz's Complaint.

    2.    On June 4, 2007, I transmitted a letter by email, a true and correct copy of which is attached hereto as Exhibit A, to plaintiff's counsel, in which I forwarded certain information regarding the Deferred Compensation Plan and Pension Plan that had been mailed to Mr. Itzkowitz and in which I requested that plaintiff withdraw the Fourth and Fifth Counts of his Complaint.

    3.    Counsel for plaintiff indicated that she would consider this request.

4.      On June 14, 2007, I again asked by letter, a true and correct copy of which is attached as Exhibit B, that these Counts be withdrawn given that they were clearly moot.

5.      Counsel for plaintiff responded by letter, a true and correct of which is attached as Exhibit C, that she would not withdraw these Counts.

6.      Plaintiff requested that IDBNY accommodate his request to withdraw his pension funds by posting collateral to secure these amounts.  In discussing his request with IDBNY, I learned that IDBNY's retirement committee would be meeting at the end of this month to consider whether IDBNY would be in a position to fund the pension plan in an amount which would permit plaintiff (and other IDBNY top 25 employees) to withdraw their funds.  I notified plaintiff's counsel of this request on June 26, 2007 by email, a true and correct copy of which is attached hereto as Exhibit D.

7.      Attached hereto as Exhibit E is a true and correct copy of *Headen v. Sullivan*, No. 91 CIV. 5817, 1992 WL 471168 (S.D.N.Y. Sept. 8, 1992).

8.      Attached hereto as Exhibit F is a true and correct copy of *Davey v. Jones*, 06 CV 4206, 2007 WL 1378428 (S.D.N.Y. May 11, 2007).

9.      Attached hereto as Exhibit G is a true and correct copy of *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629 (N.Y. App. Div. 1993).

10.      Attached hereto as Exhibit H is a true and correct copy of *Clark v. Bank of New York*, 185 A.D.2d 138 (N.Y. App. Div. 1992).

11.      Attached hereto as Exhibit I is a true and correct copy of *Brennan v. J.P. Morgan Securities, Inc.*, No. 602720/03, 2004 WL 3314910 (N.Y. Sup. Ct. Aug. 31, 2004).

12.      Attached hereto as Exhibit J is a true and correct copy of *Carlson v. Katonah Capital, LLC*, No. 602831/05, 2006 WL 273548 (N.Y. Sup. Ct. Jan. 27, 2006).

13.     Attached hereto as Exhibit K is a true and correct copy of *Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 738 N.E.2d 770, 715 N.Y.S.2d 366 (2000).

14.     Attached hereto as Exhibit L is a true and correct copy of *Kaplan v. Capital Co. of Am. LLC*, 298 A.D.2d 110 (N.Y. App. Div. 2002).

15.     Attached hereto as Exhibit M is a true and correct copy of *Gottlieb v. Kenneth D. Laub & Co., Inc.*, 82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213 (1993).

16.     Attached hereto as Exhibit N is a true and correct copy of *Simpson v. Lakeside Engineering, P.C.*, 26 A.D.3d 882 (N.Y. App. Div. 2006).

17.     Attached hereto as Exhibit O is a true and correct copy of *Monagale v. Scholastic, Inc.*, 06 CIV 14342, 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007).

18.     Attached hereto as Exhibit P is a true and correct copy of *Gleason v. U.S. Dep't of Homeland Security*, 06 Civ. 13115, 2007 WL 1597955 (S.D.N.Y. Jun. 1, 2007).

Dated: July 9, 2007
       New York, New York

4087517v.1

Jennifer B. Rubin

# EXHIBIT A

# MINTZ LEVIN

Chrysler Center
666 Third Avenue
New York, NY  10017
212-935-3000
212-983-3115 fax
www.mintz.com

Jennifer B. Rubin | 212 692 6766 | jbrubin@mintz.com

June 4, 2007

**Via PDF**

Eve Rachel Markewich, Esq.
Markewich & Rosenstock, LLP
8 East 41st Street, 5th Floor
New York, NY  10017

Re:    Itzkowitz v. Israel Discount Bank of New York, et al

Dear Eve:

Attached with this email correspondence are (a) a statement of benefits for Ted Itzkowitz relating to the Israel Discount Bank of New York ("IDBNY") Deferred Compensation Plan; and (b) a statement of benefits for Ted Itzkowitz relating to the IDBNY Pension Plan.

As I had explained to you in the past, neither of these statements could be provided to Ted until the actuary completed the analysis that resulted in the figures reflected on the statements. As a result, Ted's claims in his Complaint seeking benefits under these plans were not well taken, were entirely premature, and certainly do not have continued validity based upon the fact that he was never denied any rights under these plans and he may fully exercise his rights in accordance with the plans. As a result, please withdraw Counts Four and Five no later than Friday, June 8, 2007. If you do not withdraw these Counts and continue to prosecute them, IDBNY reserves all of its rights including, without limitation, the right to make an offer of judgment and/or a motion for sanctions.

Please have Ted contact Diana Nehro in the General Counsel's office directly to obtain the appropriate claim and election forms for the Deferred Compensation Plan. The forms necessary for the pension plan are included herewith. Please feel free to call me with any questions.

Very truly yours,

Jennifer B. Rubin

Enclosures

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

# EXHIBIT B

# MINTZ LEVIN

**Jennifer B. Rubin** | 212 692 6766 | jbrubin@mintz.com

Chrysler Center
666 Third Avenue
New York, NY 10017
212-935-3000
212-983-3115 fax
www.mintz.com

June 14, 2007

**<u>Via Telecopy</u>**

Eve Markewich, Esq.
Lawrence Rosenstock, Esq.
Markewich & Rosenstock, LLP
8 East 41st Street, 5th Floor
New York, NY 10017

Re:    <u>Itzkowitz v. Israel Discount Bank of New York, et al</u>

Dear Eve and Larry:

To accommodate your request, we are willing to wait until June 28 to permit Mr. Itzkowitz to withdraw Counts Four and Five in the Complaint in the above-referenced action.

Very truly yours,

Jennifer B. Rubin

ACTIVE 4069275v.1

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

# EXHIBIT C

# MARKEWICH AND ROSENSTOCK LLP

8 East 41st Street • Fifth Floor • New York, New York 10017

*tel:* (212) 542-3156  *fax:* (212) 481-1761  *emarkewich@mrlawllp.com*

Lawrence M. Rosenstock
Eve Rachel Markewich

Robert Markewich, of counsel

June 27, 2007

## BY PDF AND FIRST CLASS MAIL

Jennifer B. Rubin, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo P.C.
Chrysler Center
666 Third Avenue
New York, New York  10017

Re:  Itzkowitz v. Israel Discount Bank of New York, et al

Dear Jen:

We disagree with the Bank's contention that it is not "obligated to enter into an agreement concerning the posting of collateral", and that it would be an "accommodation" to pay my client his pension in a lump sum, as you set forth in your email sent yesterday to my partner Larry Rosenstock.  The Plan is crystal clear that a participant is entitled to elect a lump sum payment, providing that if the Plan is not funded at 110%, then the participant is required to provide security for a possible disgorgement in the future.  As set forth in the materials sent to Ted by the Bank, a pledge or an IRA is acceptable security.

Ted intends to submit the completed paperwork to the Bank today.  To ensure that there are no questions regarding the forms, he would like to bring the documentation to the Bank, himself, and review same with the appropriate individual from Human Resources or the General Counsel's Office.

At this time, we decline to withdraw the Fourth and Fifth Counts of the Complaint.  If you believe you are in a position to make an offer of judgment, please do so.  Otherwise, until Ted receives his entitlement under the Plans, valid claims exist.  Even upon payment, there may be additional

letter Jennifer rubin2 – 6-27-07.doc

Jennifer B. Rubin, Esq.
June 27, 2007
Page 2

issues, including but not limited to compensation to Ted for his legal fees incurred in achieving his entitled payments.

    Once again, I ask that your client consider Ted's proposal that the global dispute between the two parties be resolved at this time by appropriate payment to compensate Ted for all to which he is entitled.

                             Very truly yours,

                             Eve Rachel Markewich

ERM:js

cc: Theodore Itzkowitz, Esq.

# EXHIBIT D

**Rubin, Jennifer**

| | |
|---|---|
| **From:** | Rubin, Jennifer |
| **Sent:** | Tuesday, June 26, 2007 2:22 PM |
| **To:** | 'Lawrence M. Rosenstock' |
| **Cc:** | Rubin, Jennifer |
| **Subject:** | RE: Emailing: IRA REPAYMENT AND SECURITY AGREEMENT.doc |

Lawrence:

In discussing Ted's request with IDBNY, I have learned that IDBNY's retirement committee will be meeting at the end of July to consider whether the bank is in a position to fund the pension at 110% and thus allow Ted to withdraw his vested pension amount in its entirety.  Given that fact and given that the bank is not obligated to enter into an agreement concerning the posting of collateral, I am asking that Ted agree to wait until the end of July before pursuing this matter further. If, at that time, the funding level does not permit Ted's complete withdrawal of the pension funds, I would be happy to reopen discussions about collateral and whether IDBNY would consider entering into such an arrangement as an accommodation to Ted.

On a related matter, by way of reminder, I am expecting the two causes of action (relating to the pension and deferred compensation plans) to be withdrawn by June 28.

Regards,

Jen Rubin

-----Original Message-----
From: Lawrence M. Rosenstock [mailto:lrosenstock@mrlawllp.com]
Sent: Friday, June 22, 2007 3:05 PM
To: Rubin, Jennifer
Cc: Theodore D Itzkowitz; Eve Rachel Markewich
Subject: Emailing: IRA REPAYMENT AND SECURITY AGREEMENT.doc

  <<IRA REPAYMENT AND SECURITY AGREEMENT.doc>>

Jenifer. Ted asked that I forward you a Pledge Agreement with respect to the IRA payment that is due to him. As Eve is away this week I am sending it to you. Obviously Ted expects payment this month and the Custodian is satisfied with the structure of the Agreement. Eve may have some comments as well) The Bank has the financial information and other related documents. Please review and get back to us as soon as possible.
Eve will be in the office Tuesday. Larry

The message is ready to be sent with the following file or link attachments:

IRA REPAYMENT AND SECURITY AGREEMENT.doc

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

# **EXHIBIT E**

Westlaw.

Not Reported in F.Supp.                                                                                          Page 1
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A
**(Cite as: Not Reported in F.Supp.)**

C

Headen v. Sullivan
S.D.N.Y.,1992.

United States District Court, S.D. New York.
John Daniel HEADEN
v.
SULLIVAN.
**No. 91 CIV. 5817(KMW).**

Sept. 8, 1992.

John Daniel Headen, plaintiff, pro se.
Linda A. Riffkin, Sp. Asst. U.S. Atty., New York
City, for defendant.

Order

KIMBA M. WOOD, District Judge:
*1 In a Report and Recommendation ("Report")
issued on September 8, 1992, Magistrate Judge Katz
recommended that this matter be dismissed as moot.
In conformity with *Small v. Secretary of Health and
Human Services,* 892 F.2d 15, 16 (2d Cir.1989), the
Magistrate Judge's Report explicitly cautioned that
failure to file timely objections would constitute a
waiver of those objections.   No objections have been
received.    I therefore accept and adopt Magistrate
Judge Katz's recommendation.   *See Thomas v. Arn,*
474 U.S. 140 (1985) (stating that the failure to file
timely objections constitutes waiver of objections,
and district court review is not required); *cf. Small,*
892 F.2d 15 (stating that *Arn* applies even to *pro se*
litigants where Report contains proper cautionary
language).    This matter is hereby dismissed.

SO ORDERED.

Report and Recommendation
KATZ, Magistrate Judge:
TO THE HONORABLE KIMBA M. WOOD,
UNITED STATES DISTRICT JUDGE:

This social security action was referred to me,
pursuant to your Order of Reference, for a report and
recommendation in accordance with 28 U.S.C. §
636(b)(1)(B) and (C).   For the reasons that follow, I
recommend that the action be dismissed as moot.

*Background*

Plaintiff John Daniel Headen brought suit against
defendant Secretary, Department of Health and
Human Services, to recover $3,733.50 in social
security benefits he allegedly never received for the
period of October 1983 through January 1985.[FN1]
Complaint at 2.    Defendant has not disputed
plaintiff's entitlement to the amount claimed in the
Complaint.

In January 1985, an Administrative Law Judge found
plaintiff to be disabled as of April 1983 and entitled
to receive social security benefits as of October 1983.
Plaintiff was scheduled to receive a retroactive
benefit payment for the period of October 1983
through January 1985.    As set forth in greater detail
below, that payment, less fees paid directly to his
attorney, should have totaled $3,733.50, the amount
claimed in the Complaint.[FN2]    For reasons
unexplained, plaintiff never received his retroactive
benefits check.    Although he attempted over several
years to secure his retroactive benefits through
administrative channels (*see* Request for
Reconsideration dated June 22, 1989, attached to
Answer to Motion dated March 5, 1992), it was not
until this action was commenced that a thorough
investigation occurred and it was confirmed that
plaintiff remained entitled to $3,733.50 in retroactive
benefits.    After completing its administrative review
of the matter, defendant issued a replacement check
to plaintiff for $3,733.50 on April 17, 1992.
Affidavit of Jack Gallagher, dated June 9, 1992, ¶ 2-
3;   Declaration of Linda A. Riffkin, dated June 10,
1992, ¶ 3-4.

Although plaintiff admits receipt of this check, he
now claims that an additional sum is owed to him by
the defendant.    The additional amount is somewhat
ambiguous:    in a letter to the Court, receipt dated
May 4, 1992, plaintiff stated that the total amount
owed to him was $7,381.00;   in a letter to the Court,
receipt dated June 9, 1992, he stated the total amount
owed was $7,778.00;   in a pleading/letter to the
Court, receipt dated July 15, 1992, the amount
claimed was $7,467.00.    (Copies of these three
submissions are Attachments 2-4 hereto).    Thus,
after deducting the $3,733.50 recently paid and an
attorney's fee of $1,244.50 paid in 1985 to prior
counsel, plaintiff is apparently claiming he is still
owed either $2,303.00, $2,800.00, or $2,489.00.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A
(Cite as: Not Reported in F.Supp.)

*2 Defendant now moves for dismissal, pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, claiming that its payment to plaintiff of the $3,733.50 renders this action moot, since plaintiff has obtained the relief he requested in his Complaint. Defendant's Memorandum of Law at 3-4. Plaintiff responds that defendant still owes him over $3,000.00 in past benefits that were never paid to him. Plaintiff's Pleading/Letter, receipt dated July 15, 1992.

## Discussion

Where a motion to dismiss is made under Rule 12(b)(1) as well as under other provisions, the Court should consider the Rule 12(b)(1) challenge first because, in the absence of subject matter jurisdiction, the Court need not, indeed, is unable to, address other defenses or issues. Rhulen Agency, Inc. v. Alabama Insurance Guaranty Ass'n, 896 F.2d 674, 678 (2d Cir.1990); citing Bell v. Hood, 327 U.S. 678, 682 (1946) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since a determination of the validity of the claim is, itself, an exercise of jurisdiction). In deciding whether the Court has subject matter jurisdiction over an action, as opposed to a Rule 12(b)(6) motion to dismiss, the Court may consider affidavits and other extra-pleading material in resolving issues of fact. Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.1991), vacated on other grounds, 112 S.Ct. 3020 (1992); Kamen v. A.T. & T., 791 F.2d 1006, 1011 (2d Cir.1986); Exchange National Bank v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir.1976). In reviewing such material, however, the Court retains its obligation to accord pro se pleadings a close and sympathetic reading, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and to construe all pleadings so as to do substantial justice, Fed.R.Civ.Pro. 8(f). Having applied these standards

to the present case, I conclude that the case should be dismissed for lack of jurisdiction since the issues raised in the Complaint are moot. [FN3]

Federal courts lack jurisdiction to hear moot cases because such cases do not meet the "case or controversy" requirement of Article III of the Constitution. DeFunis v. Odegaard, 416 U.S. 312, 316 (1974); North Carolina v. Rice, 404 U.S. 244, 246 (1971); Mosley v. Hairston, 920 F.2d 409, 414 (6th Cir.1990); Air Line Pilots Ass'n v. UAL Corp., 897 F.2d 1394, 1396-97 (7th Cir.1990). An action is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982); U.S. Parole Commission v. Geraghty, 445 U.S. 388, 396 (1980); Powell v. McCormack, 395 U.S. 486, 496 (1969). In a social security action seeking payment of benefits, the actual payment of those benefits generally moots the action. See, e.g., Burton v. Bowen, 815 F.2d 1239, 1241 (8th Cir.1987); Lopez v. Sullivan, 882 F.2d 1533, 1537 (10th Cir.1989) (earlier appeal mooted in most respects by award of disability benefits); Wilson v. Secretary of Health & Human Services, 671 F.2d 673, 679 (1st Cir.1982).

*3 It is clear that plaintiff has received the relief requested in his Complaint, payment of $3,733.50. That claim is therefore moot. Any claim for additional sums of money are not properly part of this action since such claims do not appear in the Complaint and plaintiff has not requested leave to amend the Complaint to include them. See Fed.R.Civ.P. 15(a).

An examination of the social security benefits due to plaintiff for the period October 1983 through January 1985 confirms that he received all the relief requested in the Complaint. According to the Social Security Award Certificate (attached to plaintiff's July 15, 1992 letter/pleading to the Court), plaintiff was to receive the following monthly benefits: [FN4]

|   | Dates | Monthly Benefit | Total |
|---|-------|-----------------|-------|
| A. | October 1983 through November 1983.......... | $301.00.... | $ 602.00 |
| B. | December 1983 through | $311.00.... | $3,732.00 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A
**(Cite as: Not Reported in F.Supp.)**

| | | | |
|---|---|---|---|
| | November 1984.......... | | |
| C. | December 1984 through January 1985.......... | $322.00.... | $ 644 .00 |
| | $4,978.00 | *TOTAL BENEFITS DUE:* | |
| D. | Deduction for attorney's fee (25% of total benefits awarded) paid directly to lawyer [5] .......... | . | $1,244.50 |
| | $3,733.50 | *TOTAL BENEFITS ORIGINALLY DUE TO PLAINTIFF:* | |

There appear to be two sources for plaintiff's new claim for sums of money above and beyond the $3,733.50. First, there is a mysterious reference to past due benefits of $7,000.00 in a letter written by plaintiff's prior attorney. *See* September 15, 1989 letter of Charles N. Miller attached to plaintiff's July 15, 1992 letter/pleading. The letter does not explain the origin of the $7,000.00 figure.

The second source is plaintiff's reference, in his June 9, 1992 letter to the Court, to past due benefits for the period of October 1983 through November 1985. From this it may be surmised that plaintiff is now asserting that he is still owed benefits for the period from February 1985 through November 1985. According to plaintiff, he is owed $322.00 per month for this ten month period, or a total of $3,220.00. This amount plus the $3,733.50 recently paid to plaintiff total to $6,953.50, perhaps explaining the $7,000.00 figure asserted by plaintiff's prior attorney.

Since plaintiff's claim for relief above the $3,733.50 was not asserted in the Complaint, the action is still moot and subject to dismissal unless it is found that amendment of the Complaint to include the new claim is appropriate. Fed.R.Civ.P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." As noted in *Wearing v. Coughlin,* 90 Civ. 2507 (PKL), 1992 U.S.Dist.Lexis 3168 (S.D.N.Y. March 17, 1992), "Rule 15(a) has been interpreted liberally, and the granting of a motion to dismiss is almost always accompanied by leave to replead." *Id,* 1992 U.S.Dist.Lexis 3168 at *11 (*citing Cortec Industries v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* 112 S.Ct. 1561 (1992)); *see Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). However, the determination whether to grant leave to amend "is reserved to the discretion of the district court," *McLaughlin v. Anderson,* 962 F.2d 187, 195 (2d Cir.1992), and dismissal without leave to replead is proper if it is "based on a valid ground." *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990); *accord Cortec Industries,* 949 F.2d at 48. Under the present circumstances, there are two valid grounds for denying leave to amend.

**\*4** First, a district court is generally without jurisdiction to intervene in social security matters prior to a plaintiff's exhaustion of administrative remedies. *See* 42 U.S.C. § 405(g), (h). The "exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a 'claim for benefits shall have been presented to the Secretary [of Health and Human Services].' " *Heckler v. Ringer,* 466

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 4
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A
**(Cite as: Not Reported in F.Supp.)**

U.S. 602, 617 (1984), *quoting Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *accord Weinberger v. Salfi*, 422 U.S. 749, 764, 766-67 (1975) (requirement in § 405(g) that there be a final decision by the Secretary after a hearing is "central to the requisite grant of subject matter jurisdiction").   Although plaintiff clearly raised the issue of his entitlement to the $3,733.50 in benefits for the period October 1983 through January 1985 before the Social Security Administration, *see* Social Security forms and letter attached to Answer to Motion dated March 5, 1992, there is no indication he asserted nonpayment of benefits for the period February through November 1985. Indeed, in a letter to the Social Security Administration dated September 15, 1989, written by plaintiff's former attorney, it was acknowledged that plaintiff had been receiving his benefits since at least February 1985.

Additionally, it is still unclear what additional claim plaintiff might be attempting to raise.   Although he was ordered to explain the basis for any claim of benefits beyond the amount claimed in the Complaint, Order dated May 1, 1992, plaintiff failed to cogently outline the facts underlying any such claim.[FN6]

Given the confusion surrounding plaintiff's new claim, his failure to exhaust administrative remedies, the Social Security Administration's expertise in this area and its access to records documenting the payment of benefits, it is recommended that leave to amend not be granted.   It is suggested that the action be dismissed without prejudice to filing a new action for any additional claim for benefits beyond the $3,733.50 requested in the Complaint, *after* plaintiff has exhausted his administrative remedies with regard to any such additional claim.

*Conclusion*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.   *See also* Fed.R.Civ.P. 6.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, U.S.D.J., and to the chambers of the undersigned, Room 115.   Any requests for an extension of time for filing objections must be directed to Judge Wood.   Failure to file objections will result in a waiver of those objections for purposes of appeal.   *Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir.1983).*

FN1. The Complaint does not clearly set out the

benefits period corresponding to the $3,733.50 requested.     Defendant also appears to be confused concerning the applicable period, stating in one place that the applicable period is October 1983 through February 1985 (Riffkin Affidavit ¶ 3) and in another place, that the period is October 1983 through March 1985 (Defendant's Memorandum of Law at 2). However, as demonstrated later in this report, the $3,733.50 represents the amount owed for October 1983 through January 1985.   Although February 24, 1985 is mentioned in the Complaint, that date was simply the date of the Social Security Award Certificate recognizing plaintiff's entitlement to benefits.     It appears from page 2 of the Award Certificate (attached to plaintiff's letter/pleading to the Court, receipt dated July 15, 1992) that plaintiff was to be paid his monthly benefit for February 1985 separately from the payment for the period of October 1983 through January 1985.   As discussed later, the payment for February 1985 is a separate issue.

FN2.   Any ambiguity regarding the amount claimed in this action is eliminated by plaintiff's reference to the same figure of $3,733.50 in his Declaration in Support of Request to Proceed In Forma Pauperis (¶ 8) and his Answer to Motion, dated March 5, 1992 (¶ 3; attachment 1 hereto). Moreover, various exhibits regarding his attempt to resolve this dispute through administrative channels also clearly show that $3,733.50 was at issue.     *See* Social Security forms and letter attached to Answer to Motion dated March 5, 1992.

FN3.   Since dismissal is warranted under Fed.R.Civ.P. 12(b)(1), it is unnecessary to decide whether dismissal is also warranted under Fed.R.Civ.P. 12(b)(6), as alleged by defendant.

FN4.   As noted in the Award Certificate, the actual payments due to plaintiff are rounded down to a dollar figure, even though the monthly benefit of record was in dollars and cents.

FN5. According to the Award Certificate, up to 25% of the awarded benefits could be used to pay attorneys' fees.   42 U.S.C. § 406(a)(2)(A). In the Request for Reconsideration attached to plaintiff's March 5, 1992 Answer to Motion, it is noted that payment of 25% of the award was, in fact, made directly to his attorney.     25% of $4,978.00 is $1,244.50.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 5
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A
**(Cite as: Not Reported in F.Supp.)**

<u>FN6.</u> Also puzzling is the computer printout submitted by both parties which shows the plaintiff's monthly benefits as $318.00 from January 1984 through November 1984 and $329.00 from December 1984 through August 1985. These figures conflict with the Award Certificate and the figure of $3,733.50 (for October 1983 through January 1985), which is shown in the text to be consistent with the Award Certificate.

S.D.N.Y.,1992.
Headen v. Sullivan
Not Reported in F.Supp., 1992 WL 471168 (S.D.N.Y.), Unempl.Ins.Rep. (CCH) P 17174A

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT F**

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 1378428 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Davey v. Jones
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Peter F. DAVEY, Plaintiff,
v.
Winfield JONES and Jones Hirsch Connors & Bull,
P.C., Defendants.
No. 06 Civ. 4206(DC).

May 11, 2007.

Peter F. Davey, Esq., New York, NY, pro se.
Jones Hirsch Connors & Bull P.C., by: Peter T.
Shapiro, Esq., New York, NY, pro se and Attorneys
for Defendant Winfield P. Jones.

### MEMORANDUM DECISION

CHIN, D.J.

*1 In this employment discrimination case, *pro se*
plaintiff Peter F. Davey alleges that his former
employer, Jones Hirsch Connors & Bull, P.C., a law
firm ("JHCB" or the "Firm"), and one of JHCB's
partners, Winfield Jones, discriminated against him
because of his age in violation of federal, state, and
local law. Davey also contends that Jones slandered
him by stating to another JHCB employee that Davey
was "not eligible for rehire" at the Firm. Finally,
Davey claims that defendants breached a contract by
offering him a settlement agreement and then
revoking the offer. Defendants move to dismiss for
failure to state a claim on which relief can be granted,
pursuant to Federal Rule of Civil Procedure 12(b)(6).
For the reasons that follow, the motion is denied in
part and granted in part.

### BACKGROUND

#### A. *Facts*

For purposes of this motion to dismiss, the facts as
alleged in Davey's complaint are assumed to be true.

Davey, a resident of New York City, worked as an
attorney for JHCB from February 1989 until his
discharge on May 6, 2005. (Compl.¶¶ 9, 12). Prior
to his dismissal, Davey had not been subject to any

disciplinary action by the Firm. (*Id.* ¶ 10). That day,
Jones informed Davey that he was being dismissed,
and instructed him to clean out his office, surrender
his employment identification, leave the building,
and not return. (*Id.* ¶¶ 12, 15). Jones did not state a
reason for Davey's dismissal, but, in the presence of
Davey, Jones stated to Stephanie Ransom, another
JHCB employee, that Davey was "not eligible for
rehire." (*Id.* ¶¶ 12, 24).

At the time of his dismissal, Davey was sixty-two
years old and had been employed at the Firm for
sixteen years, apparently the longest term of service
of any attorney at the Firm. (*Id.* ¶¶ 11, 13).
Throughout Davey's employment at JHCB the Firm
periodically hired attorneys under age forty. (*Id.* ¶
16).

On the day of his discharge, Jones offered Davey
$20,000, conditioned upon Davey signing an
agreement waiving any claims that Davey might have
against defendants. (*Id.* ¶ 59). Davey asked how long
the offer would remain open, and Jones replied that
there was no time limit to the offer. (*Id.* ¶¶ 60, 61).
Subsequently, Jones sent Davey a letter rescinding
this offer. (*Id.* ¶ 62).

#### B. *Procedural History*

On March 2, 2006, Davey timely filed a charge of
discrimination with the Equal Employment
Opportunity Commission (the "EEOC"). On January
31, 2007, the EEOC closed its file on Davey's charge
because he had already filed a federal lawsuit.

Davey filed his complaint in this action on July 20,
2006. Davey alleges that defendants discriminated
against him because of his age in violation of the Age
Discrimination in Employment Act (the "ADEA"),
29 U.S.C. § 623(a)(1), the New York State Human
Rights Law, N.Y. Exec. Law § 296, and the New
York City Human Rights Law, N .Y.C. Admin. Code
§ 8-101, by dismissing him without cause while
hiring and continuing to employ attorneys under
forty. In connection with his dismissal from JHCB,
he appears to allege common law abusive discharge
and intentional infliction of emotional distress
("IIED"). Davey also claims that Jones slandered him
by stating to another JHCB employee that he was not
eligible to be rehired by the Firm. Finally, he

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1378428 (S.D.N.Y.)
**(Cite as: Slip Copy)**

contends that defendants' rescission of the offer of a settlement constitutes breach of contract.

**\*2** Defendants filed this motion to dismiss on December 8, 2006. For the reasons set forth below, the motion is denied in part and granted in part.

### DISCUSSION

#### A. Pleading Standards

A complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002) (quoting Fed.R.Civ.P. 8). Such a statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957).

Although Davey proceeds *pro se* here, he is an experienced attorney and accordingly the Court is not obligated to read his pleadings liberally. *Chira v. Columbia Univ.,* 289 F.Supp.2d 477, 482 (S.D.N.Y.2003); *see also Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir.2001); *Bliven v. Hunt,* --- F.Supp.2d ----, 2007 WL 831703 (E.D.N.Y.2007).

A complaint may not be dismissed under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quoting *Conley,* 355 U.S. at 45-46). The test for dismissal is not whether the plaintiff is likely to prevail, [FN1] but whether he is entitled to offer evidence to support his claims. *Id.* "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). The court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff, *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996), but "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss." *Gavish v. Revlon, Inc.,* No. 00 Civ. 7291(SHS), 2004 WL 2210269, at \*10 (S.D.N.Y. Sept. 30, 2004) (quoting *Citibank,*

*N.A., v. Itochu Int'l Inc.,* No. 01 Civ. 6007(GBD), 2003 WL 1797847, at \*1 (S.D.N.Y. Apr. 4, 2003)).

> FN1. Defendants are advised that the test also is not whether plaintiff has a "propensity" for litigation. (*See* Def.'s Mem. of Law 4).

#### B. Age Discrimination

To state a claim under the ADEA a plaintiff must allege that he: (1) is a member of the protected age group, i.e., forty years old or older; (2) was qualified for his job; and (3) was discharged under circumstances giving rise to, at the minimum, an inference of discrimination. *Dugan v. Martin Marietta Aerospace,* 760 F.2d 397, 399 (2d Cir.1985) (citing *Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983)).

I conclude that Davey's complaint satisfies the pleading requirements of Rule 8, and states a claim for age discrimination under federal, state, and local law. Davey falls within the ADEA protected class, as he is sixty-two years old. (Compl.¶ 20). Defendants do not dispute that Davey was discharged, and he alleges that he was qualified for his job and that he suffered no disciplinary actions while employed by JHCB. (*Id.* ¶ ¶ 10, 14). Finally, he alleges that throughout his employment the Firm hired individuals under age forty, and that after sixteen years of "work[ing] diligently to meet and exceed the requirements" of the Firm, JHCB fired him without cause because of his age. (*Id.* ¶ ¶ 14, 16, 18). While the allegations of the complaint are sparse with respect to age discrimination, I conclude that they do give rise to an inference of age discrimination, and Davey has undoubtedly put defendants on notice of the substance of his claim. Furthermore, based on the allegations in his complaint, I cannot conclude that he could prove no set of facts that would entitle him to relief.

**\*3** To the extent that Davey is attempting to state a claim under the ADEA against Winfield Jones as an individual, "[i]t is well-settled that individuals may not be held personally liable under Title VII" or the ADEA. *Lennon v. New York City,* 392 F.Supp.2d 630, 640 (S.D.N.Y.2005) (individual defendants not liable under ADEA); *Parker v. Metro. Transp. Auth.,* 97 F.Supp.2d 437, 452 (S.D.N.Y.2000) (same). *But see Parker,* 97 F.Supp.2d at 452 (individuals may be held liable under New York state discrimination law). Accordingly, Davey's federal employment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discrimination claim against Jones in his individual capacity must be dismissed.

Davey's federal age discrimination claim against JHCB and his state and local age discrimination claims against both defendants may go forward. Defendants' motion to dismiss these claims is denied.

### C. *Abusive Discharge*

"New York does not recognize a common law cause of action for abusive discharge." *Rohlehr v. Brookdale Univ. Hosp. & Med. Ctr.,* 390 F.Supp.2d 207, 211 (E.D.N.Y.2005) (citing *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 300-01 (1983)). Accordingly, to the extent plaintiff is claiming abusive discharge separately from his ADEA and state and local statutory employment law claims, the claim of abusive discharge is dismissed.

### D. *Intentional Infliction of Emotional Distress*

To the extent that plaintiff claims that defendants committed the tort of IIED, this claim must be dismissed for failure to state a claim on which relief can be granted.

To state a claim for IIED under New York law, plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress. *See Bender v. City of New York,* 78 F .3d 787, 790 (2d Cir.1996); *Williams v. City of Mount Vernon,* 428 F.Supp.2d 146, 160 (S.D.N.Y.2006); *Pepe v. Maklansky,* 67 F.Supp.2d 186, 187 (S.D.N.Y.1999); *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121 (1993). To satisfy the first element, the alleged conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Murphy,* 58 N.Y.2d at 303 (quoting Restatement (Second) of Torts § 46 cmt. d); *accord Howell,* 81 N.Y.2d at 122 (rule is "rigorous, and difficult to satisfy") (quotation omitted).

Although Davey cloaks the events of his dismissal in many descriptors-"abruptly," "abusively," "great and lasting mental and physical stress, distress, pain and shock," "hostile,", "hostility," "causing great embarrassment and humiliation," "suspicion," "prohibit[ed] dignified departure," "inflicting

emotional ... harm," and "arbitrary, discriminatory, abusive"-it is the conduct of defendants that governs, and not Davey's reaction to, or feelings about, that conduct. (*See* Compl. ¶ ¶ 43, 44, 47, 48). Stripped of this language, the event can be summarized as follows: (1) Davey was fired effective immediately and without a stated reason, (2) he was told he would not be rehired by one of the partners of the Firm in the presence of another employee, (3) his employee identification was confiscated, (4) he was given little time to clean out his office, and (5) upon leaving that day he was told he could not return. (*See* Compl. ¶ ¶ 12, 15, 24). These events do not rise to the level of "extreme and outrageous conduct," *Bender,* 78 F.3d at 790, such that they "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Murphy,* 58 N.Y.2d at 293. Accordingly, Davey fails to state a claim for IIED, and this claim must be dismissed.

### E. *Slander*

*4 To state a claim for slander under New York law, a plaintiff must allege that defendant (1) made a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) either causing special harm or constituting slander *per se,* and (7) not protected by privilege. *Albert v. Loksen,* 239 F.3d 256, 265-66 (2d Cir.2001) (citation omitted); *Lian v. Sedgewick James of N.Y., Inc.,* 992 F.Supp. 644, 649 (S.D.N.Y.1998).

"Under New York law, '[t]here exists a qualified privilege where the communication is made to persons who have some common interest in the subject matter.' " *Long v. Marubeni Am. Corp.,* 406 F.Supp.2d 285, 297 (S.D.N.Y.2005) (quoting *Foster v. Churchill,* 87 N.Y.2d 744, 751 (1996)). Supervisors and company principals have "a qualified privilege to 'make[ ] a bona fide communication upon a subject in which [that person had] an interest, or a legal, moral, or social duty to speak, [where] the communication [was] made to a person having a corresponding interest or duty.' " *Peters v. Baldwin Union Free Sch. Dist.,* 320 F.3d 164, 169 (2d Cir.2003) (quoting *Santavicca v. City of Yonkers,* 518 N.Y.S.2d 29, 31 (2d Dep't 1987)). "[T]o the extent that ... statements are made about an employee in an employment context, they are qualifiedly privileged as having been made by one person to another upon a subject in which they have a common interest." *Dillon v. City of New York,* 704

N.Y.S.2d 1, 7 (1st Dep't 1999). This qualified privilege may be defeated by a showing of common law malice, defined as spite or ill will, only if it is "the one and only cause for the publication." *Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 98 (2d Cir.2000) (quotations and citations omitted).

Davey contends that Jones slandered him when he stated to Ransom that Davey was "not eligible for rehire." (Compl.¶ 24). Davey further claims that the statement "indicat[ed] plaintiff had engaged in proven serious misconduct." (*Id.* ¶ 25). Even assuming that this was Jones's implication and that this was false, Davey cannot overcome the qualified privilege that protects the statement. *See Dillon,* 704 N.Y.S.2d at 7. Assuming for purposes of this motion only that one of Jones's motives for the communication was to indicate to Ransom that Davey had engaged in wrongdoing, Davey cannot show that malice was "the one and only cause for the publication." *See Konikoff,* 234 F.3d at 98. Jones had an additional motive: to indicate to Ransom that JHCB would not rehire Davey. (*See* Compl. ¶ 24). Accordingly, Davey has failed to state a claim for defamation, and this claim must be dismissed.

### F. Breach of Contract

Finally, Davey contends that Jones's revocation of the offer of $20,000 in exchange for Davey waiving any claims against the Firm constitutes breach of contact. This claim must be dismissed for failure to state a claim on which relief can be granted.

\*5 In New York, a contract is valid if there is an offer and acceptance, consideration, mutual assent, and an intent to be bound. *See Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir.2004). Here there was an offer, followed by revocation before acceptance. (Compl.¶ 60). Unless given in exchange for consideration, an offer "may be revoked by the offeror at any time prior to the creation of a contract by acceptance." 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 5:8 (4th ed.1993). Accordingly, Jones was free to revoke the offer at any time without consequence. *See id.*

Davey argues in his moving papers, for the first time, that there was consideration for keeping the offer open: his forebearance from bringing suit. (Pl.'s Mem. of Law in Opp'n 23). "Under New York law, forbearance to assert a colorable legal claim constitutes sufficient consideration to support a contract so long as the promise of forbearance is

absolute and for a definite time." *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 521 F.Supp. 104, 111 (S.D.N.Y.1981), *aff'd* 691 F.2d 1039 (2d Cir.1982). Davey nowhere alleges that he actually articulated a promise to forbear or that it was for a definite period of time. Likewise, he does not state that Jones accepted any promise to forebear, and therefore Davey's secret and unilateral decision not to act cannot supply the necessary consideration for keeping the offer open. *See* Restatement (Second) of Contracts § 2 ("A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.").

I conclude as a matter of law that there was no consideration for keeping the offer open. Thus, Jones could revoke it at any time, and did so. No contract was formed, and consequently there can be no breach. Accordingly, Davey fails to state a claim for breach of contract, and this claim must be dismissed.

### *CONCLUSION*

For the foregoing reasons, the motion to dismiss is denied in part and granted in part. It is denied as to Davey's federal claim of employment discrimination against JHCB, and his state and local discrimination claims against both defendants. All other claims in the complaint are dismissed.

Davey's request for leave to amend his complaint is denied. Additionally, the request in his sur-reply memorandum for judgment in his favor is denied.

All discovery, fact and expert, shall be completed by September 7, 2007. At the close of discovery, any party wishing to move for summary judgment must do so by October 22, 2007. Any opposition to summary judgment is due by December 3, 2007, and any reply is due by December 21, 2007.

SO ORDERED.

S.D.N.Y.,2007.
Davey v. Jones
Slip Copy, 2007 WL 1378428 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **<u>EXHIBIT G</u>**

Westlaw.

189 A.D.2d 629                                                                                   Page 1
189 A.D.2d 629, 592 N.Y.S.2d 700
(Cite as: 189 A.D.2d 629)

▷

Michael P. Tierney, Respondent-Appellant,
v.
Capricorn Investors, L. P., et al., Appellants-
Respondents, et al., Defendant.

Supreme Court, Appellate Division, First
Department, New York

(January 14, 1993)
CITE TITLE AS: Tierney v Capricorn Invs.

Order, Supreme Court, New York County (Joan B.
Lobis, J.) entered on or about April 27, 1992, which
granted defendants-appellants' motion pursuant to
CPLR 3211 (a) (7) to dismiss the complaint only to
the extent of dismissing the second and fourth causes
of action as against said defendants, is unanimously
modified on the law, to grant the defendants' motion
to dismiss the complaint in its entirety, and otherwise
affirmed, without costs or disbursements. The Clerk
is directed to enter judgment in favor of defendants-
appellants dismissing and severing the action as to
them.

Plaintiff, who was formerly employed as an
investment banker by non-appealing defendant The
Stamford Company, commenced the underlying
action for, *inter alia,* breach of contract, non-payment
of an agreed-upon wage and fraudulent inducement.
He seeks to recover the additional sum of $158,263
which he alleges is due and owing as a bonus from
the defendants pursuant to an employment agreement
between himself and Stamford, and pursuant to an
alleged oral agreement wherein the plaintiff would be
paid the additional bonus as a result of his having
worked on a particular project known as the MITI-
Mexico Financing, which involved the arrangement
of a loan of at least two hundred million dollars.

Until December 30, 1990, when his employment was
terminated, plaintiff was employed as an investment
banker by defendant Stamford, pursuant to a three-
year Employment Agreement, which provided the
plaintiff a salary "at an annual rate of no less than
$100,000; for the periods of 1989 and 1990, *pro rata*
based upon the number of days during those years
that you are employed", and which, provided the
**\*630** plaintiff with a guaranteed bonus of "an
additional guaranteed amount of no less than

$300,000 per annum", reduced by certain set-offs, if
the plaintiff worked through to the end of 1990.

In addition, although the Agreement guaranteed the
plaintiff a bonus of "no less than $300,000 per
annum", the Agreement included a specific
mechanism for increasing the plaintiff's bonus
beyond the $300,000 figure from a "bonus pool"
derived from Stamford's before-tax earnings.

Moreover, a non-competition agreement, executed
by the plaintiff, specifically provided, *inter alia,* that:
"This letter and Employment Letter sets forth our
entire understanding in respect to the subject matter
contained herein ... and may only be amended by a
written agreement signed by Stamford Capital and
you."

In 1990 there was a change in ownership and in
accordance with the plaintiff's Employment
Agreement, plaintiff was given written notice of the
termination of his employment, effective December
30, 1990. The plaintiff continued to perform pursuant
to the Agreement through the end of December,
1990, and thereafter received his $100,000 salary for
1990 as well as a $300,000 bonus pursuant to the
terms of the Agreement.

Nevertheless, plaintiff commenced the underlying
action against the defendants seeking to recover as
additional compensation 10.67% of a fee allegedly
received by an entity known as Ecoban, an affiliate of
Stamford, in connection with the MITI-Mexico
transaction, involving the arrangement of a loan of at
least two hundred million dollars by certain Japanese
corporations to the national foreign trade bank of
Mexico known as BancoMex. The plaintiff alleged
that the defendants had willfully and wrongfully
refused to pay him an additional bonus of $158,263
which was allegedly due and owing to the plaintiff on
June 30, 1991 in accordance with an alleged oral
agreement.

The IAS Court granted the defendants' dismissal
motion pursuant to CPLR 3211 (a) (7) only to the
extent of dismissing the plaintiff's second and fourth
causes of action for fraud and quantum meruit relief,
while declining to dismiss the balance of the
complaint.

Plaintiff's first cause of action for breach of contract

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

189 A.D.2d 629
189 A.D.2d 629, 592 N.Y.S.2d 700
(Cite as: 189 A.D.2d 629)

Page 2

seeking to recover compensation over and above the compensation set forth in the Employment Agreement, cannot be sustained. Plaintiff's contention that the Employment Agreement expressly *631 contemplated the payment to him of an additional bonus at mid-year of 10.67% of the fee received by the defendants in connection with the MITI-Mexico transaction is inconsistent with the terms of that Agreement. It specifically provides that there are only two components of the plaintiff's bonus, a guaranteed minimum of $300,000, which the plaintiff admittedly received upon his termination, and possible participation in a "bonus pool", derived from defendant Stamford's before-tax earnings, if any.

Moreover, the Employment Agreement itself specifically provides that it can be changed or modified only by a signed writing. When a written contract provides that it can only be changed by a signed writing, an oral modification of that agreement, as here, is not enforceable (General Obligations Law § 15-301 [1]; Goodyear Publ. Co. v Mundell, 75 AD2d 556).

Further, the limited exceptions to the requirement of a written modification, i.e., partial performance or estoppel, are not present herein. Partial performance, in order to excuse the absence of a writing, must be "unequivocally referable" to the alleged modification (Rose v Spa Realty Assocs., 42 NY2d 338, 345). Plaintiff's performance here, however, would be equally consistent with his desire to continue to earn his compensation under the written Employment Agreement, as with the alleged oral modification. In addition, the doctrine of equitable estoppel does not apply on the facts herein. For such estoppel, the conduct relied upon to excuse the requirement of a written modification "must not otherwise be compatible with the agreement as written" (supra, at 344). Plaintiff's alleged reliance, in continuing his employment, consisted of nothing more than what the written agreement required him to do, and for which he was paid $400,000 in 1990.

Even if the alleged oral agreement is considered a superseding agreement or novation, there was a failure by plaintiff to show adequate consideration. Neither a promise to do that which the promisor is already bound to do, nor the performance of an existing legal obligation constitutes valid consideration (see, Federal Deposit Ins. Corp. v Hyer, 66 AD2d 521, 529, appeal dismissed 47 NY2d 951).

Accordingly, plaintiff's first cause of action for

breach of contract should have been dismissed.

The IAS Court properly dismissed the plaintiff's second cause of action for fraudulent inducement as entirely duplicative of the plaintiff's breach of contract claim. A cause of action for fraud does not arise when the only fraud charged *632 relates to a breach of contract (Tesoro Petroleum Corp. v Holborn Oil Co., 108 AD2d 607, appeal dismissed 65 NY2d 637).

Similarly, the IAS Court erred in refusing to dismiss the third cause of action, which alleged that the defendants' failure to pay additional compensation to the plaintiff in connection with the MITI-Mexico transaction constituted a willful failure to pay wages under Labor Law § 190 et seq. The plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages.

However, the IAS Court properly dismissed the plaintiff's fourth cause of action seeking quantum meruit relief since it is impermissible to seek damages under a quantum meruit theory where, as here, there is an express written contract between those parties (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389). The Employment Agreement expressly covers the subject matter of the plaintiff's bonus and the plaintiff affirmatively alleged that the Agreement expressly provides for the payment of the additional bonus sought in the underlying action. Thus, recovery under a quantum meruit theory seeking to recover that bonus is precluded.

Finally, plaintiff's fifth cause of action seeking recovery based upon a theory of promissory estoppel should also have been dismissed. The plaintiff made only a conclusory allegation that he relied to his detriment on the defendants' representations and failed to allege an essential element of a promissory estoppel, i.e., that the alleged reliance resulted in some " 'prejudicial change in his position' " (BWA Corp. v Alltrans Express, 112 AD2d 850, 853). The undisputed facts are that while plaintiff continued his performance under the Employment Agreement, he continued to earn his $100,000 salary and continued to remain eligible for the $300,000 bonus stipulated to in the Agreement, which was admittedly paid.

Concur--Murphy, P. J., Carro, Rosenberger, Asch and Kassal, JJ.

Copr. (c) 2007, Secretary of State, State of New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

189 A.D.2d 629
189 A.D.2d 629, 592 N.Y.S.2d 700
**(Cite as: 189 A.D.2d 629)**

York.

N.Y.A.D.,1993.

Tierney v Capricorn Investors

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **<u>EXHIBIT H</u>**

Westlaw.

185 A.D.2d 138                                                                                           Page 1
185 A.D.2d 138, 585 N.Y.S.2d 749
**(Cite as: 185 A.D.2d 138)**

# H

Vincent Clark, Respondent-Appellant,
v.
Bank of New York et al., Appellants-Respondents.

Supreme Court, Appellate Division, First
Department, New York

(July 2, 1992)
CITE TITLE AS: Clark v Bank of N.Y.

Judgment of the Supreme Court, New York County
(Burton S. Sherman, J.), entered on June 10, 1991,
which, following a jury trial, awarded plaintiff the
sum of $30,000 together with interest, attorneys' fees,
costs and disbursements for a total amount of
$46,127.50, is unanimously reversed on the law and
the complaint dismissed, without costs or
disbursements. The clerk is directed to enter
judgment in favor of defendants dismissing the
complaint.

Plaintiff commenced this action against The Bank of
New York and Irving Trust Company in August of
1989 for breach of express and implied contract,
misrepresentation, punitive damages for a purported
violation of Labor Law § 198-a and attorneys' fees.
Defendants answered by denying all of the
allegations in the complaint and asserted that there
was a *139 failure to state a cause of action.
Following some discovery and four adjournments,
the matter finally went to trial on May 2, 1991. At the
close of the evidence, defendants moved for
judgment dismissing the complaint, which the trial
court granted with respect to the claims for implied
contract, misrepresentation and punitive damages.
The court upheld the causes of actions relating to
express contract and attorneys' fees. The jury
thereafter awarded a verdict in plaintiff's favor, and
the court directed that plaintiff be accorded attorneys'
fees. Defendants have appealed and plaintiff has
cross-appealed.

Plaintiff, an investment banker, was hired by Joseph
Tenicki, a senior vice-president of Irving Trust
Company, in July of 1987 as a vice-president in the
Public Finance Department. His compensation
package consisted of an initial salary of $90,000, plus
a signing bonus of $25,000 and yearly bonuses based
upon performance.

During 1988, many employees of Irving Trust
Company began seeking and accepting other jobs
when it became evident that the bank would be
merging with The Bank of New York. Thereupon, in
November of 1988, Joseph Tenicki informed plaintiff
that he had been recommended for a $60,000 bonus.
According to plaintiff, it was originally his
understanding that the bonus would be payable in one
lump sum in early February but Tenicki later
explained that the sum would be split into two
installments of $30,000 in February of 1989 and
another $30,000 on May 1, 1989 since this
arrangement would be more amenable to
management. Indeed, plaintiff received the first
$30,000 payment in February, as well as a $9,500
merit increase in January and another $4,000 in
November of 1988 in lieu of profit sharing. On April
25, 1989, plaintiff submitted his resignation, effective
May 10, 1989. Plaintiff further testified that when he
requested payment of his second $30,000 bonus, he
was told that senior management refused to accede to
this. He also asserted that he had always been assured
that the second bonus installment would be payable
on May 1, 1989 and that he need not remain
employed to receive it. Defendants, on the other
hand, claimed that Tenicki suggested that plaintiff be
given a $60,000 performance award to ensure that he
stay with the bank after the merger. They contended
that Douglas Tantillo of Irving Trust Company's
compensation department initially opposed such a
large amount but that Tenicki was insistent that a
large award was essential to retain plaintiff's services.
Therefore, Tantillo proposed that the $60,000 would
be more acceptable *140 to senior management if it
was divided into two payments. Moreover, the
installment method would accomplish Tenicki's goal
of keeping plaintiff with the bank at least until the
second payment in June of 1989. Defendants urged
that Tenicki adopted Tantillo's approach and that this
was ultimately the option approved by the bank's
senior management. In any event, it is uncontested
that when plaintiff departed on May 10, 1989, he had
not been accorded the second $30,000 installment,
and the present lawsuit ensued.

Section 5-1105 of the General Obligations Law
provides that: "A promise in writing and signed by
the promisor or by his agent shall not be denied effect
as a valid contractual obligation on the ground that
consideration for the promise is past or executed, if

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

185 A.D.2d 138
185 A.D.2d 138, 585 N.Y.S.2d 749
**(Cite as: 185 A.D.2d 138)**

Page 2

the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."

Although the parties dispute whether the $60,000 payment was intended as a performance bonus or a retention award, and the jury was evidently persuaded by plaintiff's position, even a performance bonus would have been based upon past consideration since it was for the purpose of rewarding him for work which he had already performed *(see, Holt v Feigenbaum,* 52 NY2d 291) and was, moreover, entirely discretionary for someone in his employment category. Consequently, plaintiff's promised bonus is enforceable only if it was memorialized by a writing (General Obligations Law § 5-1105). Contrary to plaintiff's argument that the doctrine of part performance is applicable because defendants paid the initial $30,000, other than plaintiff's statement to that effect there is no evidence that he was working in reliance upon obtaining a bonus nor is there any showing of unjust enrichment. It is true that the record contains several writings indicating that plaintiff was to be paid $60,000, but it is not evident from an examination of these documents themselves whether the money, referred to as an "award", was for past performance or an attempt to retain plaintiff in his job. In that regard, General Obligations Law § 5-1105 requires that the consideration be expressed in the writing. As the court held in *Umscheid v Simnacher,* 106 AD2d 380, 381), "[t]he consideration alluded to in the documents ... is vague, imprecise, and, indeed, is without meaning. In short, resort to evidence extrinsic to the documents is necessary to give meaning to the consideration ' expressed' in those documents". In the absence of a writing that can be understood without dependence upon extrinsic evidence and **\*141** that clearly describes the consideration, a promise derived from past consideration is simply not actionable. Accordingly, defendants' motion to dismiss should have been granted in full. We have considered plaintiff's other arguments and find them to be without merit.

Concur--Sullivan, J. P., Milonas, Ross, Asch and Kassal, JJ.

Copr. (c) 2007, Secretary of State, State of New York.

N.Y.A.D.,1992.

Clark v Bank of N. Y.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.