# **EXHIBIT I**

Westlaw.

7 Misc.3d 1013(A)                                                                                    Page 1
7 Misc.3d 1013(A), 801 N.Y.S.2d 230, 2004 WL 3314910 (N.Y.Sup.), 2004 N.Y. Slip Op. 51879(U)
**(Cite as: 7 Misc.3d 1013(A))**

Brennan v. J.P. Morgan Securities, Inc.
N.Y.Sup.,2004.
(The decision of the Court is referenced in a table in
the New York Supplement.)
Supreme Court, New York County, New York.
Brian J. BRENNAN, Plaintiff,
v.
J.P. MORGAN SECURITIES, INC., Defendant.
No. 602720/03.

Aug. 31, 2004.

RICHARD B. LOWE, J.
*1 Plaintiff Brian J. Brennan alleges that his former
employer, defendant J.P. Morgan Securities, Inc.,
breached an employee compensation agreement when
it failed to pay him his full bonus for the year 2000.
Defendant makes a pre-answer motion to dismiss the
complaint and plaintiff cross-moves to amend the
complaint.

In 1985, plaintiff went to work as a trader for one of
defendant's predecessors. In 2001, as the result of a
merger with the last predecessor, Chase Manhattan
Corporation (Chase), the instant defendant became
plaintiff's employer. At the time that plaintiff was
hired, he alleges that he and Chase agreed that, in
addition to his base salary, he would receive a year-
end bonus, based upon his personal performance, the
performance of his division, and the performance of
the company as a whole. Plaintiff alleges that
defendant assumed this agreement.

Plaintiff alleges that his year-end bonus increased
every year of his employment through 1999, as he
gained experience and received promotions. For the
year 1999, head traders who met their performance
goals received bonuses of approximately $400,000,
plus stock options. Plaintiff was promoted to the
position of head trader of his division for 2000.
Under his guidance, he alleges, his division met or
exceeded all of the profit and performance goals set
by the employer. For the year 2000, all of the other
traders in his group that were supervised by him
received the same bonus or more than they had
received for 1999. Plaintiff anticipated a substantial
increase in his year-end bonus and stock options.
Instead, plaintiff was given a bonus of $225,000,
$60,000 less than he received for 1999. Plaintiff
alleges that two persons in management told him that

defendant directed that any employee that it intended
to terminate should not be paid his or her full and fair
year-end bonus. Defendant dismissed plaintiff on
January 17, 2001 as part of a firm-wide round of
layoffs.

In addition to a greater bonus for 2000, plaintiff seeks
a bonus for 2001, prorated for the two weeks that he
worked that year. Plaintiff alleges that the total sum
owed him is approximately $400,000. He asserts
causes of action for breach of contract, quantum
meruit, unjust enrichment, and violations of Labor
Law § 198(1)-a, under which an employer who fails
to pay wages must pay the employee's attorneys' fees
and, if the failure is found to be willful, must pay
25% of the wages found to be due, in addition to the
wages.

Plaintiff states that he and his employer had an oral
agreement. However, defendant alleges that plaintiff's
bonus compensation was governed by the Global
Markets Incentive Plan of the Chase Manhattan
Corporation (the Plan). Apparently, plaintiff was
employed in the Global Markets Group, which
comprises several divisions or units. Defendant
contends that the Plan vests the employer with
absolute discretion as to the entitlement and amount
of any payments thereunder. Therefore, plaintiff
cannot recover based on a claim that the employer
failed to pay him compensation. Defendant also
argues that the Labor Law does not apply because the
bonus is not wages.

*2 The rule with respect to bonuses is that an
employee's entitlement to a bonus is governed by the
terms of the employer's bonus plan (_Hall v. United
Parcel Serv. of Am._, 76 N.Y.2d 27, 36 [1990]; _Weiner
v. The Diebold Group, Inc._, 173 A.D.2d 166, 167 [1st
Dept 1991]; _see also_ _Kaplan v. Capital Co. of Am.
LLC_, 298 A.D.2d 110, 111 [1st Dept 2002] ). An
employer may agree to award a bonus to an
employee, in which case the employee has a right to
the bonus, or the bonus may be entirely up to the
employer's discretion (_see_ _Mirchel v. RMJ Securities
Corp._, 205 A.D.2d 388, 389-390 [1st Dept 1994];
_Weiner_, 173 A.D.2d at 167). An employee has no
enforceable right to compensation under a
discretionary compensation or bonus plan (_Namad v.
Salomon Inc._, 74 N.Y.2d 751, 753 [1989] ).

Regarding plaintiff's Labor Law claim for wages,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7 Misc.3d 1013(A)                                                                                   Page 2
7 Misc.3d 1013(A), 801 N.Y.S.2d 230, 2004 WL 3314910 (N.Y.Sup.), 2004 N.Y. Slip Op. 51879(U)
**(Cite as: 7 Misc.3d 1013(A))**

section 190(1) defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." Earned wages, including those that come in the form of bonuses, may not be forfeited (*Weiner, 173 A.D.2d at 167; see also Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 101-102 [1989]; Mirchel, 205 A.D.2d at 389*). It is generally held that wages, despite the term's broad definition, do not encompass compensation based on incentive plans (*Truelove v. Northeast Capital & Advisory, Inc., 268 A.D.2d 648, 649* [3d Dept] *affd 95 N.Y.2d 220 [2000]; Magness v. Human Resource Servs., 161 A.D.2d 418, 419* [1st Dept 1990]; *Matter of Dean Witter Reynolds, Inc. v. Ross, 75 A.D.2d 373, 381* [1st Dept 1980] ). Nonetheless, whether compensation constitutes wages or something else depends not upon the title of the employer's plan, but upon "whether the compensation is vested and mandatory as opposed to discretionary and forfeitable" (*Truelove, 268 A.D.2d at 649*).

The Plan first became effective on January 1, 1992 (Plan, ¶ 2.1[m] ), and was amended every year through January 1, 1998 (*id.* at 5). The declared purpose of the Plan is to attract and retain employees who can "make a material contribution" to the success of the Global Market divisions (*id.,* ¶ 1.1). Employees eligible for bonuses are called Participants and include all division heads (*id.,* ¶ 3.1). Participation in the Plan precludes participating in any other annual bonus plan (*id.*).

At the end of each plan year, two bonus pools will be created (*id.,* ¶ 4.1). One will be allocated at the discretion of the division head, and the other at the discretion of a specified executive (*id.*). A third pool may be created, based on the discretion of Chase's chair (*id.*). Each pool will comprise a set percentage of the profits of the Global Markets divisions (*id.* at 6). No obligation exists to distribute 100 percent of the funds in the pools, "nor to grant superior compensation levels to individuals who provide only adequate performance levels or who were not significant factors in generating the profitability or solid operations of the Group" (*id.,* ¶ 4.6).

*3 The Plan is administered by the Compensation Committee, whose interpretation or determination of any award "shall be final and binding on all Participants, including a determination by the Compensation Committee to adjust, defer, or completely eliminate the payment of any award hereunder or any current Plan Year ..." (*id.,* ¶ 7.1). "In the unusual event it is deemed appropriate to

agree in advance with a Participant that an award will be a specific size, the agreement and its conditions shall be reduced to writing and approved by the Plan Administrator" (*id.,* ¶ 7.7). Also, the Plan states that in order to be eligible for a bonus, an employee must be actively employed by the corporation on the day of payment (*id.,* ¶ 4.4).

In 2000, Chase distributed to employees a document entitled Features of the Plan, along with a cover letter. The letter, dated February 29, 2000, states that employees in the Global Market group receive bonuses based on a " 'pay for performance' philosophy" (Letter). Compensation is based on "market competitive levels *and* performance, with performance being a combination of individual performance plus team performance" (*id.*). "While the [bonus pools] provide a concrete funding source, individual awards are discretionary, and they are based on a combination of profit performance, competitive market requirements and qualitative factors" (*id.*).

The Features of the Plan provides much the same information as the Plan. It also states that individual bonus awards are based on individual performance, market activity, and the profitability of the Global Market divisions (Features of the Plan, ¶ 2). "Payment of all monies in a bonus pool to participants in the pool is not mandatory. No employee should interpret this Plan as granting individual rights" (*id.,* ¶ 7). The Features of the Plan states that, in the event of a discrepancy between it and the "official plan document," the latter, that is, the Plan, will apply (*id.,* ¶ 9).

The Plan unambiguously provides that the employer has the discretionary authority to decide if and how much the employee is to be paid (see *Modugu v. Continuum Health Partners, Inc., 3 AD3d 422, 423* [1st Dept 2004]; *Kaplan, 298 A.D.2d at 111*). It also provides that any agreement as to an amount must be set in writing, and that participation in the Plan precludes participating in any other annual bonus plans. Hence, plaintiff's claims of an oral agreement for another amount or of another bonus agreement altogether are not tenable. The oral agreement was purportedly made when plaintiff was hired in 1985, but it is obvious that the employer since changed its policy. In addition, the fact that an employee receives bonuses throughout an employment relationship does not vitiate the employer's right to retain full discretion in determining the amount, if any, of an employee's bonus (*Freedman v. Pearlman, 271 A.D.2d 301, 303* [1st Dept 2000] ). Nor does such a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7 Misc.3d 1013(A)                                                                                                                   Page 3
7 Misc.3d 1013(A), 801 N.Y.S.2d 230, 2004 WL 3314910 (N.Y.Sup.), 2004 N.Y. Slip Op. 51879(U)
**(Cite as: 7 Misc.3d 1013(A))**

practice, by itself, create an implied contract. All that plaintiff says about the alleged oral contract is that it existed.

**\*4** Plaintiff argues that the Plan cannot determine his rights, as it is not a contract, and that if it is a contract, he was never a party to it. However, the non-contractual nature of an employer policy does not render it inapplicable (see _Kaplan,_ 298 A.D.2d at 111). The policy, whether contained in a plan, such as here, or in a handbook or manual covers the terms of the employment (see _Matter of Salza,_ 297 A.D.2d 850 [3d Dept 2002]; _Jagust v. Brookhaven Mem. Assn., Inc.,_ 150 A.D.2d 432, 433 [2d Dept 1989] ), unless the contrary can be established, which has not been done here. Additionally, that the Features of the Plan and the Letter were circulated to plaintiff is shown by the fact that defendant was able to retrieve them from his email records. Defendant does not show that plaintiff also received a copy of the Plan; however, the Features of the Plan refers to the Plan. Therefore, plaintiff knew or should have known of the employer's policy regarding bonuses. Nor does plaintiff have a claim for wages. Wages are not forfeitable, as are the bonuses described in the Plan.

Plaintiff asserts causes of action for quantum meruit and unjust enrichment. These are quasi contract doctrines developed to ensure that a party whose work has benefitted another will be paid the worth of his or her services (_Zolotar v. New York Life Ins. Co., 172 A.D.2d 27, 33_ [1st Dept 1991] ). The doctrines do not apply where there is a written document that covers the subject matter of the dispute (_id._).

On a CPLR 3211(a)(7) motion to dismiss for failure to state a cause of action, plaintiff's allegations are regarded as true. Nonetheless, an exception exists for bare legal conclusions and factual claims which are contradicted by the evidence, which the court is not required to accept (_Meyer v. Guinta,_ 262 A.D.2d 463, 464 [2d Dept 1999] ). Plaintiff's claim of an oral agreement reflects both of these deficiencies. To successfully seek dismissal on a CPLR 3211(a)(1) motion, defendant must show that the "documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (_Goshen v Mutual Life Ins. Co. of New York,_ 98 N.Y.2d 314, 326 [2002] ). Defendant has met this burden. The motion to dismiss the complaint is granted.

Plaintiff cross-moves to amend the complaint. The motion is denied. Although, as a rule, leave to amend a pleading is freely granted, it will not be granted

"when the proposed pleading is palpably insufficient as a matter of law" (_Ancrum v. St. Barnabas Hosp., 301 A.D.2d 474, 473_ [1st Dept 2003] ). Plaintiff has given no indication of how an amended pleading would possess more merit than the present one.

In conclusion, it is

ORDERED that defendant's motion to dismiss is granted, and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk of the Court; and it is further

ORDERED that the Clerk is ordered to enter judgment accordingly; and it is further

**\*5** ORDERED that plaintiff's cross motion is denied.

N.Y.Sup.,2004.
Brennan v. J.P. Morgan Securities, Inc.
7 Misc.3d 1013(A), 801 N.Y.S.2d 230, 2004 WL 3314910 (N.Y.Sup.), 2004 N.Y. Slip Op. 51879(U)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **<u>EXHIBIT J</u>**

Westlaw.

814 N.Y.S.2d 889 (Table)                                                                                    Page 1
10 Misc.3d 1076(A), 814 N.Y.S.2d 889 (Table), 2006 WL 273548 (N.Y.Sup.), 2006 N.Y. Slip Op. 50103(U)
**Unpublished Disposition**
**(Cite as: 10 Misc.3d 1076(A),  814 N.Y.S.2d 889,  2006 WL 273548 (N.Y.Sup.))**

**C**

**Motions, Pleadings and Filings**

(The decision of the Court is referenced in a table in
the New York Supplement.)

Supreme Court, New York County, New York.
Brian C. CARLSON, Joyce C. Delucca, Marion J.
Golfinopoulos, Lora L.
Leavenworth, Thomas C. Liu, Robert R. Perry,
Nancy A. Schulman, Nicole M.
Shore, Robert H. Snyder, and Andrew T. Stern,
Plaintiffs,
v.
KATONAH CAPITAL, L.L.C. and Kohlberg & Co.,
L.L.C., Defendants.
No. 602831/05.

Jan. 27, 2006.
Proskauer Rose LLP, by Steven M. Kayman, Esq.,
Isaac Nesser, Esq., New York, for Plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison LLP, by
Marc Falcone, Esq., Solomon N. Klein, Esq., New
York, for Defendant.

BERNARD J. FRIED, J.

***1 Plaintiffs, ten former employees of defendant
Katonah Capital LLC ("Katonah") [FN1], bring this
action seeking over $3 million dollars of incentive
compensation that defendants allegedly failed to pay.
In the complaint, plaintiffs assert four causes of
action, including a claim for attorney's fees and
unpaid wages under Article 6 of the Labor Law.

> FN1. The second defendant, Kohlberg &
> Co., L.L.C., is a majority owner of Katonah.
> For the purposes of this motion, the
> defendants will collectively be referred to as
> "Katonah."

Katonah, an asset management firm which operates
several structured investment funds, employed each
of the plaintiffs during 2004. The plaintiffs held
different positions, with titles ranging from "Senior
Analyst" to "Chief Operating Officer" to "Portfolio
Manager and Managing Principal." The

responsibilities of each plaintiff were described in
employment letters signed by a principal of Katonah
and each employee. [FN2] These letters, and
subsequent amendments, also describe the terms and
conditions of the plaintiffs' compensation.

> FN2. All of the employment letters were
> signed by Ms. DeLucca, on behalf of
> Katonah, except her own employment letter.
> Ms. DeLucca is a plaintiff in this action.

In December of 2004, Katonah awarded, by letter,
certain incentive compensation to the plaintiffs,
awards including specified percentages of net
operating income ("operating income shares"),
individual performance bonuses, and, for some of the
plaintiffs, a share of certain carried interest payments
received by Katonah during 2004 ("carried interest").
The award letters also noted the period of time in
which payment of the incentive compensation would
be made. The complaint alleges that plaintiffs
terminated their employment before the incentive
compensation was paid.

Katonah has not paid, and refuses to pay, any of the
incentive compensation specified in the award letters
of December 2004, arguing that payment of this
compensation was discretionary. Plaintiffs assert that
the incentive compensation awards were non-
discretionary, vested, and that Katonah's failure to
pay gives rise to a wage claim under Article 6 the
Labor Law and allows the plaintiffs to recover
attorney's fees pursuant to § 198(1-a) of Article 6.
Katonah moves to dismiss the Labor Law claim
pursuant to CPLR 3211(a)(1) based on documentary
evidence, or pursuant to CPLR 3211(a)(7) for failure
to state a cause of action.

Katonah argues that plaintiffs have no valid wage
claim because documentary evidence shows that the
incentive compensation fails to qualify as wages'
protected by Article 6 and that the plaintiffs are
executives, a class of employees excluded from
Article 6. Therefore, according to Katonah, plaintiffs
cannot seek attorney's fees under § 198(1-a) because
such relief may be awarded only where a plaintiff
prevails on a valid wage claim under Article 6.

Plaintiffs oppose, arguing that Article 6 protects the
compensation at issue because it was vested, earned,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

814 N.Y.S.2d 889 (Table)                                                                                                    Page 2
10 Misc.3d 1076(A), 814 N.Y.S.2d 889 (Table), 2006 WL 273548 (N.Y.Sup.), 2006 N.Y. Slip Op. 50103(U)
Unpublished Disposition
(Cite as: 10 Misc.3d 1076(A), 814 N.Y.S.2d 889, 2006 WL 273548 (N.Y.Sup.))

and non-discretionary compensation owed to the plaintiffs. They also assert that none of the plaintiffs, except Ms. DeLucca, were executives, and, even if the plaintiffs were executives, they nevertheless have valid wage claims under certain provisions of Article 6, specifically § 193, even though rights created by other provisions, such as § 191, are denied to employees who qualify as executives.

***2 A motion to dismiss may be granted on documentary evidence so long as the documents alone "definitively dispose of plaintiff's claim." (E.g., _Bronxville Knolls, Inc. v. Webster Town Center Partnership,_ 221 A.D.2d 248, 634 N.Y.S.2d 62 [1st Dep't 1995] ). The movant may not rely on affidavits or depositions to support a motion to dismiss pursuant to CPLR § 3211(a)(1). (See Seigel, Practice Commentaries, McKinney's Cons Laws of NY, CPLR § 3211 [a][1]; _see generally Juliano v. McEntee,_ 150 A.D.2d 524, 525, 541 N.Y.S.2d 232 [2nd Dep't 1989]; _Demas v. 325 West End Ave. Corp.,_ 127 A.D.2d 476, 477, 511 N.Y.S.2d 621 [1st Dep't 1987] ). Documentary evidence on this issue includes letters of employment for most of the plaintiffs, subsequent letters amending the letters of employment, and copies of the 2004 award letters, except for Ms. DeLucca. Most of the award letters discuss the plaintiffs' performance of their respective duties.

Article 6 allows an employee to recover attorney's fees, and in certain circumstances liquidated damages, if the employee prevails on a wage claim made pursuant to one of the substantive provisions of Article 6. (Labor Law § 198[1-a]; _Gottlieb v. Kenneth D. Laub & Company,_ 82 N.Y.2d 457, 464 [1993] ). Here, plaintiffs contend that § 193 provides them, as employees, with a wage claim for the improper deduction of the 2004 incentive compensation from their earned wages.

Plaintiffs' wage claim depends first on whether the incentive compensation falls under the Article 6 definition of earned wages and, second, on whether they qualify as a class protected under Article 6. Article 6 defines wages as the "earnings of an employee for ... services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." (Labor Law § 190[1] ). Typically, the term wages includes bonuses, profit-sharing, and other forms of incentive compensation only when the incentive compensation is earned by the employee. (_See Truelove v. Northeast Capital & Advisory, Inc.,_ 95 N.Y.2d 220,

223-24 [2000]; _Dean Witter Reynolds, Inc. v. Ross,_ 75 A.D.2d 373, 381, 429 N.Y.S.2d 653 [1st Dep't 1980] ). Factors to be considered in determining whether incentive compensation has become earned are whether the incentive compensation is directly tied to the employee's performance, and whether it is dependent upon some condition or the discretion of the employer. (_Truelove,_ 95 N.Y.2d at 223-24, 715 N.Y.S.2d 366, 738 N.E.2d 770).

An employee's incentive compensation may become earned when the employee acquires a vested interest in the incentive compensation and its payment is not conditioned upon some occurrence or left to the discretion of the employer. (See _id.; Mirchel v. RMJ Securities Corp.,_ 205 A.D.2d 388, 389-90, 613 N.Y.S.2d 876 [1st Dep't 1994]; _Westheim v. Elkay Industries, Inc.,_ 166 A.D.2d 318, 318-19, 560 N.Y.S.2d 779 [1st Dep't 1990]; _Dean Witter Reynolds, Inc. v. Ross,_ 75 A.D.2d 373, 381, 429 N.Y.S.2d 653 [1st Dep't 1980] ). Bonuses and similar incentive compensation become vested either by contract or when an employer otherwise awards a specified amount of compensation to the employee. (See _Truelove,_ 95 N.Y.2d at 223-24, 715 N.Y.S.2d 366, 738 N.E.2d 770; _Mirchel v. RMJ Securities Corp.,_ 205 A.D.2d 388, 389-90, 613 N.Y.S.2d 876 [1st Dep't 1994]; _Westheim v. Elkay Industries, Inc.,_ 166 A.D.2d 318, 318- 19, 560 N.Y.S.2d 779 [1st Dep't 1990]; _Dean Witter Reynolds, Inc. v. Ross,_ 75 A.D.2d 373, 381, 429 N.Y.S.2d 653 [1st Dep't 1980] ).

***3 Turning to the documentary evidence in this case, it is clear that some of the incentive compensation fails to qualify as earned wages. Although the 2004 award letters award each plaintiff a bonus and an amount of carried interest, causing those forms of incentive compensation to vest in each employee, the employment letters specify the terms governing payment of those forms of compensation. Each employment letter states, in the Termination and Severance clause, that no bonus will be paid if the employee voluntarily terminates employment at any time. Payment of carried interest is also conditioned upon the plaintiffs' continuous employment with Katonah. The complaint makes clear that all the plaintiffs voluntarily terminated their employment when it alleges that "Plaintiff DeLucca ... resign[ed] in January 2005," that the other plaintiffs "le[ft] Katonah," that they "joined [DeLucca] in a new business enterprise," and that "they had the unquestioned right to do so." The termination of plaintiffs' employment occurred before

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

814 N.Y.S.2d 889 (Table)                                                                 Page 3
10 Misc.3d 1076(A), 814 N.Y.S.2d 889 (Table), 2006 WL 273548 (N.Y.Sup.), 2006 N.Y. Slip Op. 50103(U)
**Unpublished Disposition**
**(Cite as: 10 Misc.3d 1076(A), 814 N.Y.S.2d 889, 2006 WL 273548 (N.Y.Sup.))**

payment of either the bonuses or the carried interest. Neither the bonuses, nor the carried interest, qualify as wages because their payment was conditioned upon the non-existence of a voluntary termination of employment, a condition not met by the plaintiffs.

However, the incentive compensation comprising operating income shares does qualify as earned wages. Although the employment letters, and subsequent letters of amendment, state that shares of operating income will be awarded to each employee "[a]t the sole discretion of Katonah and subject to [the employee's] performance," this form of compensation vested in each plaintiff when Katonah elected, in its 2004 award letters, to award each plaintiff a specified amount of operating income for 2004. (*See* *Truelove, 95 N.Y.2d at 223-24, 715 N.Y.S.2d 366, 738 N.E.2d 770*; *Mirchel v. RMJ Securities Corp., 205 A.D.2d 388, 389-90, 613 N.Y.S.2d 876* [1st Dep't 1994]; *Westheim v. Elkay Industries, Inc., 166 A.D.2d 318, 318-19, 560 N.Y.S.2d 779* [1st Dep't 1990]; *Dean Witter Reynolds, Inc. v. Ross, 75 A.D.2d 373, 381, 429 N.Y.S.2d 653* [1st Dep't 1980] ).

Only two conditions restrict payment of the operating income shares: Katonah reserved the right to determine the time when the shares will be paid and to not pay "any Operating Income share for the year" in which an employee voluntarily terminates employment. The first does not apply here because, in the award letters, Katonah clearly designated the time when the Operating Income will be payable sometime during the first quarter of 2005. Moreover, the second condition does not apply to the 2004 operating income shares designated in the award letters. Each of the plaintiffs terminated their employment in 2005, a year for which the plaintiffs do not seek payment of operating income shares. Thus, the documentary evidence shows that the operating income shares awarded by Katonah qualify as earned wages for the purposes of wage claims made pursuant to Article 6 of the Labor Law because this form of incentive compensation became vested in each plaintiff and there are no conditions that prevented payment.

***4** Even though there are earned wages here, I must also determine whether the plaintiffs legally qualify to assert a wage claim under any of the substantive provisions of Article 6, specifically § 193. The answer to this question depends on whether plaintiffs are employees under this Article.

Sections 190 and 191-a define several terms used throughout Article 6, including the classes of persons to whom the substantive provisions provide rights. Section 190 defines a general class of persons identified as "Employee[s]," which includes "any person employed for hire by an employer in any employment." (Labor Law § 190[2] ). Section 190 defines other, more limited classes, such as "Manual Workers," "Railroad Workers," "Commission Salesman," and the "Clerical and other worker" category that includes all employees that do not qualify as either manual workers, railroad workers, or commission salesman, excluding "executive[s], administrat[ors], and professional[s]...." (Labor Law § 190[7] ).

The provisions of Article 6 that grant rights, the provisions that are called substantive in the case law, specify the classes of persons to which each provision applies. For example, § 191 specifies that its terms apply only to manual workers, railroad workers, commission salesman, and clerical or other workers. Section 191-b applies only to sales representatives. Other substantive provisions, such as section 193, apply to the general "Employee" category, seemingly granting rights to any person in an employer-employee relationship.

However, the Appellate Division, First Department, relying on *Gottlieb v. Kenneth D. Laub & Company, 82 N.Y.2d 457, 605 N.Y.S.2d 213, 626 N.E.2d 29*, has made clear that executives do not qualify as employees for the purposes of asserting wage claims under Article 6. **[FN3]** (*Taylor v. Blaylock & Partners, 240 A.D.2d 289, 292, 659 N.Y.S.2d 257* [1st Dep't 1997]; *Cohen v. Fox-Knapp, Inc., 226 A.D.2d 207, 207-08, 640 N.Y.S.2d 554* [1st Dep't 1996] ) (*See also Cantor Fitzgerald Associates, L.P. v. Mines, 2003 WL 23109714, at *2* [NY Sup.Ct., Oct. 13, 2003] ). As these cases make clear, certainly employees who qualify as executives cannot assert wage claims under any substantive provision of Article 6, including § 193 . **[FN4]**

> **FN3.** In *Gottlieb* the Court of Appeals stated, in dicta, that § 191, a substantive provision of Article 6, provides no protection to executives. (*82 N.Y.2d at 461, 605 N.Y.S.2d 213, 626 N.E.2d 29*).

> **FN4.** Although plaintiffs cite federal cases that interpret Article 6 as allowing executives to assert substantive wage claims under Article 6, *e.g. Miteva v. Third Point*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

814 N.Y.S.2d 889 (Table)                                                                                 Page 4
10 Misc.3d 1076(A), 814 N.Y.S.2d 889 (Table), 2006 WL 273548 (N.Y.Sup.), 2006 N.Y. Slip Op. 50103(U)
**Unpublished Disposition**
**(Cite as: 10 Misc.3d 1076(A), 814 N.Y.S.2d 889, 2006 WL 273548 (N.Y.Sup.))**

*Mgmt. Co.*, 323 F.Supp.2d 573 (S.D.N.Y.2004); *Pachter v. Bernard Hodes Group, Inc.*, 2005 WL 2063838 (S.D.N.Y. Aug.25, 2005), such cases are not binding upon New York trial courts, but can only be considered as persuasive authorities. (*See Mayer Bros. Poultry Farms v. Meltzer*, 274 A.D. 169, 177, 80 N.Y.S.2d 874 [1st Dep't 1948]; *Marsich v. Eastman Kodak Co.*, 244 A.D. 295, 296, 279 N.Y.S. 140 [2d Dep't 1935], aff. 269 N.Y. 621 [1936] ). Notwithstanding the rationale of those decisions, as a trial court in the First Department, I am bound by its clear and unequivocal decisions.

This requires that I turn to the question of whether the plaintiffs qualify as executives. Here, the parties agree, and the documentary evidence shows, that Ms. DeLucca was an executive when employed by Katonah. But, they dispute the executive status of the other nine plaintiffs.

An employee qualifies as an executive if he or she "exercises independent judgment" in performing his or her duties. (*See Dean Witter Reynolds, Inc.*, 75 A.D.2d at 380, 429 N.Y.S.2d 653 [citations omitted]; *Cantor Fitzgerald Associates v. Mines* 2003 WL 23109714, at *2 [NY Sup.Ct., Oct. 12, 2003] ). Based on the employment letters and the 2004 award letters, it is clear that eight of the nine remaining plaintiffs acted as executives during their employment: Nancy A. Schulman, as Katonah's Chief Operating Office, acted in an executive role because she performed many executive level and administrative duties, duties requiring her to exercise independent judgment during her employment. Although the remaining plaintiffs possessed lesser supervisory authority, the documentary evidence shows that all of them, except Nicole M. Shore, possessed at least the authority to "exercise independent judgment" with regard to Katonah's investments or the administration of the company, and, therefore, they qualify as executives. (*See Cantor Fitzgerald Associates v. Mines*, 2003 WL 23109714, at *2 [NY Sup.Ct., Oct. 12, 2003] ). The documents relating to Ms. Shore contain insufficient detail to determine whether she exercised the independent judgment of an executive.

**\*\*\*5** For these reasons, the first cause of action, under Article 6 of the Labor Law, must be dismissed as to all plaintiffs, except Nicole M. Shore.

With regard to Katonah's argument that dismissal is warranted because there has been a failure to state a cause of action, I need only consider the validity of Nicole M. Shore's Article 6 claim.

When deciding a motion to dismiss pursuant to CPLR 3211(a)(7), the facts as alleged in the complaint must be accepted as true. A court must accord the plaintiff "the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory." (E.g, *Sokoloff v. Harriman Estates Development Corp.*, 96 N.Y.2d 409, 414 [2001]; *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 [1994] ). "The motion must be denied, if from the pleadings' four corners, 'factual allegations are discerned which taken together manifest any cause of action cognizable at law.' ' (*Richbell Information Services, Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 289, 765 N.Y.S.2d 575 [1st Dep't 2003] ).

Assuming the truth of the allegations of the complaint, the Operating Income Share awarded to Nicole M. Shore in her 2004 award letter qualifies as wages for the reasons stated above. In addition, the complaint alleges that Katonah refuses to pay the Operating Income Share it awarded to Ms. Shore and that Ms. Shore was an employee of Katonah, a class of persons entitled to assert wage claims under § 193. (*See* Labor Law § § 190, 193). Even though Katonah argues that Ms. Shore was an executive, that assertion does not justify dismissal for failure to state a cause of action, it merely makes the question of Ms. Shore's status as an executive a question of fact not to be decided on a motion to dismiss. The complaint states a valid cause of action with respect to Ms. Shore.

Accordingly, it is

ORDERED that the first cause of action is dismissed as to all plaintiffs, except Nicole M. Shore.

10 Misc.3d 1076(A), 814 N.Y.S.2d 889 (Table), 2006 WL 273548 (N.Y.Sup.), 2006 N.Y. Slip Op. 50103(U) Unpublished Disposition

**Motions, Pleadings and Filings** (Back to top)

• 0602831/2005 (Docket) (Aug. 05, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT K

Westlaw.

95 N.Y.2d 220                                                                                                    Page 1
95 N.Y.2d 220, 738 N.E.2d 770, 715 N.Y.S.2d 366, 2000 N.Y. Slip Op. 08648
**(Cite as: 95 N.Y.2d 220)**

▷

William B. Truelove, Jr., Appellant,
v.
Northeast Capital & Advisory, Inc., Respondent.

Court of Appeals of New York

Argued September 6, 2000;

Decided October 17, 2000
CITE TITLE AS: Truelove v Northeast Capital &
Advisory

### SUMMARY

Appeal, by permission of the Court of Appeals, from
an order of the Appellate Division of the Supreme
Court in the Third Judicial Department, entered
January 6, 2000, which affirmed an order of the
Supreme Court (Bernard J. Malone, Jr., J.), entered in
Albany County, granting a motion by defendant for
summary judgment dismissing the complaint, and
denying a cross motion by plaintiff for partial
summary judgment on his first cause of action.

Truelove v Northeast Capital & Advisory, 268 AD2d
648, affirmed.

### HEADNOTE

Labor--Hours and Wages--Bonus Partially
Dependent on Employer's Overall Financial Success
Not "Wages"

A bonus, payable in quarterly installments and
conditioned on continued employment, does not
constitute "wages" within the meaning of Labor Law
§ 190 (1). Therefore, defendant employer's failure
to pay plaintiff the last three quarterly installments
following plaintiff's departure from employment was
not a violation of Labor Law § 193. The terms of
defendant's bonus compensation plan did not
predicate bonus payments upon plaintiff's own
personal productivity nor give plaintiff a contractual
right to bonus payments based upon his productivity;
rather, the declaration of a bonus pool was dependent
solely upon his employer's overall financial success.
In addition, plaintiff's share in the bonus pool was
entirely discretionary and subject to the non-
reviewable determination of his employer. The
Legislature elected not to define "wages" in Labor
Law § 190 (1) so expansively as to cover all forms
of employee remuneration. The more restrictive

statutory definition of "wages," as earnings "for labor
or services rendered," excludes incentive
compensation based on factors falling outside the
scope of the employee's actual work. The wording of
the statute, in expressly linking earnings to an
employee's labor or services personally rendered,
contemplates a direct relationship between an
employee's own performance and the compensation
to which that employee is entitled. Moreover,
plaintiff did not have a vested right to the bonus
payments once defendant declared that a bonus
would be paid and calculated the amount, since the
bonus plan explicitly predicated the continuation of
bonus payments upon the recipient's continued
employment status.

TOTAL CLIENT SERVICE LIBRARY
REFERENCES

Am Jur 2d, Employment Relationship, § § 55,
59.**221

McKinney's, Labor Law § 190 (1); § 193.

NY Jur 2d, Employment Relations, § § 109, 118,
120.

ANNOTATION REFERENCES
See ALR Index under Bonuses; Labor and
Employment.

POINTS OF COUNSEL

*Cooper, Erving, Savage, Nolan & Heller, L. L. P.,*
Albany (*Phillip G. Steck* of counsel), for appellant.

I. Mr. Truelove's bonus constitutes earned wages as
that term is defined in Labor Law § 190 (1).
(*Olmstead v L. C.,* 527 US 581; *Quotron Sys. v
Gallman,* 39 NY2d 428; *Seidenberg v Duboff &
Davies,* 143 Misc 167; *McKenzie v Harrison,* 120
NY 260; *Pickslay v Starr,* 149 NY 432; *Caruso v
Allnet Communication Servs.,* 242 AD2d 484; *Weiner
v Diebold Corp.,* 173 AD2d 166; *Falk v FFF Indus.,*
731 F Supp 134; *Giuntoli v Garvin Guybutler Corp.,*
726 F Supp 494; *Mirchel v RMJ Sec. Corp.,* 205
AD2d 388.) II. There is neither an "incentive
compensation" nor a "non-sales" exception to Labor
Law § 190 (1). (*Matter of Dean Witter Reynolds v
Ross,* 75 AD2d 373; *Reilly v NatWest Mkts. Group,*
181 F3d 253; *Giuntoli v Garvin Guybutler Corp.,* 726
F Supp 494; *Tuttle v McQuesten Co.,* 227 AD2d

95 N.Y.2d 220
95 N.Y.2d 220, 738 N.E.2d 770, 715 N.Y.S.2d 366, 2000 N.Y. Slip Op. 08648
(Cite as: 95 N.Y.2d 220)

754.) III. Mr. Truelove's bonus is not subject to forfeiture. (*Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *P & L Group v Garfinkel,* 150 AD2d 663; *Guepet v International TAO Sys.,* 110 Misc 2d 940; *Tuttle v McQuesten Co.,* 227 AD2d 754; *Weiner v Diebold Corp.,* 173 AD2d 166; *Mirchel v RMJ Sec. Corp.,* 205 AD2d 388.)

*Gleason, Dunn, Walsh & O'Shea,* Albany (*Mark T. Walsh* of counsel), for respondent.

I. Plaintiff was not an employee within the meaning of the Labor Law. (*Gottlieb v Laub & Co.,* 82 NY2d 457; *People v Vetri,* 309 NY 401; *People v Bloom,* 7 Misc 2d 1077; *Matter of Wright Metal,* 283 NY 47; *Taylor v Blaylock & Partners,* 240 AD2d 289; *Cohen v Fox-Knapp, Inc.,* 226 AD2d 207; *Conticommodity Servs. v Haltmier,* 67 AD2d 480; *Cohen v ACM Med. Lab.,* 178 Misc 2d 130, 265 AD2d 839.) II. The bonus to which plaintiff claims an entitlement does not constitute "wages" within the meaning of New York Labor Law § 190. (*Magness v Human Resource Servs.,* 161 AD2d 418; *Canet v Gooch Ware Travelstead,* 917 F Supp 969; *Daley v Related Cos.,* 179 AD2d 55; *International Paper Co. v Suwyn,* 978 F Supp 506; *Tischmann v ITT/Sheraton Corp.,* 882 F Supp 1358; *Ellis v Provident Life & Acc. Ins. Co.,* 3 F Supp 2d 399; *Colangelo v Fresh Perspectives,* 948 F Supp 331; *223Tuttle v McQuesten Co.,* 227 AD2d 754; *Caruso v Allnet Communication Servs.,* 242 AD2d 484; *Mirchel v RMJ Sec. Corp.,* 205 AD2d 388.) III. The alleged failure to pay a bonus when claimed due is not a "deduction from wages" within the meaning of section 193 of the Labor Law. (*Gottlieb v Laub & Co.,* 82 NY2d 457; *Matter of Hudacs v Frito-Lay, Inc.,* 90 NY2d 342; *Matter of Apkon [Odyssey Partners],* 236 AD2d 225.) IV. The plan under which plaintiff sues on its face does not require the payments plaintiff claims are due. (*Hall v United Parcel Serv.,* 76 NY2d 27; *Bayer v Oxford Univ. Press,* 270 App Div 586, 296 NY 780; *Weiner v Diebold Group,* 173 AD2d 166; *International Bus. Machs. Corp. v Martson,* 37 F Supp 2d 613; *Rosenberg v Salmon, Inc.,* 992 F Supp 513; *Taylor v Blaylock & Partners,* 240 AD2d 289.)

OPINION OF THE COURT

Levine, J.

Plaintiff William B. Truelove, Jr., brought this action against his former employer, defendant Northeast Capital & Advisory, Inc., under article 6 of the Labor Law to recover the unpaid balance of a bonus he was awarded in December 1997, payable in quarterly installments through the following year. His complaint alleges that his bonus constituted "wages" within the meaning of Labor Law § 190 (1) and that, following his resignation after the first bonus payment, defendant violated Labor Law § 193 by enforcing an express condition in the bonus plan predicating payment of each quarterly installment on continued employment. We agree with Supreme Court and the Appellate Division that plaintiff's bonus does not fall within the definition of wages protected by Labor Law article 6.

Defendant, a small investment banking firm, hired plaintiff in June 1996 as a financial analyst in a non-revenue generating position. Plaintiff elected a compensation plan under which he was to receive an annual salary of $40,000 and be eligible to participate in a bonus/profit sharing pool. Plaintiff's offer of employment stated that a "bonus, if paid, w[ould] reflect a combination of the individual's performance and Northeast Capital's performance."

The terms of the bonus plan were further clarified in two memoranda by defendant's Chief Executive Officer. The memoranda explained that a bonus/profit sharing pool would be established only if the firm generated a certain stated minimum of revenues and that the pool, once established, would be calculated pursuant to a graduated percentage schedule of firm revenues. The memoranda further stipulated that bonus/profit *223 sharing distributions would be allocated in the CEO's sole discretion and would be paid in quarterly installments, with each payment contingent upon the recipient's continued employment at the firm. Employees were required to have an "acceptable" performance rating to participate in the bonus/profit sharing pool.

At the end of 1997, defendant established a bonus/profit sharing pool of $240,000 based upon firm revenues of approximately $1.6 million for that year. Defendant's CEO allocated $160,000 of that pool to plaintiff. Defendant paid plaintiff an initial bonus installment of $40,000, but refused to make any further payments after plaintiff's resignation.

Plaintiff brought this suit under Labor Law article 6, alleging that his bonus fell within the definition of wages set forth in Labor Law § 190 (1). Plaintiff claimed that defendant's failure to pay him the three remaining bonus installment payments for 1997 violated Labor Law § 193, which provides that "[n]o employer shall make any deduction from the wages of an employee, except" under certain limited circumstances not relevant here. Supreme Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 N.Y.2d 220
95 N.Y.2d 220, 738 N.E.2d 770, 715 N.Y.S.2d 366, 2000 N.Y. Slip Op. 08648
(Cite as: 95 N.Y.2d 220)

granted summary judgment to defendant on the ground that plaintiff's bonus did not constitute wages within the meaning of Labor Law article 6. The Appellate Division affirmed (268 AD2d 648). We granted leave to appeal and now affirm.

Article 6 of the Labor Law sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages (see, Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548, at 4). An employer who violates the requirements of Labor Law article 6 is subject to civil liability and criminal penalties (see, Labor Law § § 198, 198-a). The dispositive issue in this case is whether plaintiff's bonus constitutes "wages" within the meaning of the Labor Law.

Although New York has provided statutory protection for workers' wages for more than a century (see, People v Vetri, 309 NY 401, 405), the Legislature first defined the term "wages" in the 1966 enactment of Labor Law article 6 (L 1966, ch 548). Labor Law § 190 (1) defines "wages" as "the *earnings* of an employee *for labor or services rendered*, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis" (emphasis supplied). Courts have construed this statutory definition as excluding certain forms of "incentive compensation" that are more in the nature of a *224 profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise (see, International Paper Co. v Suwyn, 978 F Supp 506, 514; Tischmann v ITT/Sheraton Corp., 882 F Supp 1358, 1370; see also, Magness v Human Resource Servs., 161 AD2d 418, 419). We arrive at the same conclusion with respect to plaintiff's bonus compensation arrangement.

The terms of defendant's bonus compensation plan did not predicate bonus payments upon plaintiff's own personal productivity nor give plaintiff a contractual right to bonus payments based upon his productivity. To the contrary, the declaration of a bonus pool was dependent solely upon his employer's overall financial success. In addition, plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer. These factors, we believe, take plaintiff's bonus payments out of the statutory definition of wages.

Unlike in other areas where the Legislature chose to

define broadly the term "wages" to include every form of compensation paid to an employee, including bonuses (see, Unemployment Insurance Law [Labor Law] § § 517, 518), the Legislature elected not to define that term in Labor Law § 190 (1) so expansively as to cover all forms of employee remuneration. We therefore agree with those courts that have concluded that the more restrictive statutory definition of "wages," as "earnings ... for labor or services rendered," excludes incentive compensation "based on factors falling outside the scope of the employee's actual work" (Tischmann v ITT/Sheraton Corp., supra, 882 F Supp, at 1370). In our view, the wording of the statute, in expressly linking earnings to an employee's labor or services personally rendered, contemplates a more direct relationship between an employee's own performance and the compensation to which that employee is entitled. Discretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship, falls outside the protection of the statute.

The legislative history of the statute confirms our conclusion. As we previously noted, prior to the recodification of the Labor Law regulating the payment of wages in 1966 (L 1966, ch 548), the statute did not provide a definition of the term "wages." Then, as now, an employer was subject to both civil and criminal liability for failing to pay "wages" as required by the statute (see, former Penal Law § 1272 [the predecessor statute to Labor Law § 198-a]; Labor Law former § 196 [the predecessor *225 statute to Labor Law § 191]). In People v Vetri (309 NY 401, supra), this Court had to determine whether "vacation pay" was wages protected by the statute. The Court construed the term "wages" narrowly and held that "vacation pay" did not fall within that term, absent clear statutory language establishing that the Legislature intended otherwise. The Court rejected a broader construction of the term that would have encompassed "all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship" (id., at 407).

Thereafter, when the Legislature enacted article 6 of the Labor Law in 1966 and provided the first statutory definition of the term "wages," it intentionally followed Vetri's restricted view of wages for purposes of civil and criminal liability, specifically excluding from the definition wage supplements such as "health, welfare and retirement benefits, and vacation, separation or holiday pay" (Labor Law § 190 [1], as added by L 1966, ch 548; see also, Mem of Indus Commr, June 3, 1966, Bill

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Jacket, L 1966, ch 548, at 5 ["The bill specifically excludes fringe benefits from the term wages ... in accord with the holding of the Court of Appeals ... (in) *People v. Vetri*"]).

The Legislature subsequently amended the statute in 1972 by removing the wage supplement exclusion and providing certain statutory protections for the kind of fringe benefits commonly found in regular terms of employment (*see,* L 1972, ch 328). Nonetheless, the basic *Vetri* view--which rejected a broad view of wages as encompassing "all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship" (309 NY, at 407)-- has remained intact throughout the legislative history. That strongly militates against the broad interpretation of "wages" urged by plaintiff.

Finally, we reject plaintiff's argument that he had a vested right to the bonus payments once defendant declared that a bonus would be paid and calculated the amount of that bonus. In *Hall v United Parcel Serv.* (76 NY2d 27, 36), we held that an "employee's entitlement to a bonus is governed by the terms of the employer's bonus plan." Here, the bonus plan explicitly predicated the continuation of bonus payments upon the recipient's continued employment status. Because plaintiff resigned shortly after he received his first quarterly payment, he was not entitled to receive the remaining three payments.

Accordingly, the order of the Appellate Division should be affirmed, with costs.**226

Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Rosenblatt concur.

Order affirmed, with costs.**227

Copr. (c) 2007, Secretary of State, State of New York.

N.Y.2000.

TRUELOVE v NORTHEAST CAPITAL

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT L**

Westlaw.

298 A.D.2d 110                                                                                              Page 1
298 A.D.2d 110, 747 N.Y.S.2d 504, 2002 N.Y. Slip Op. 06691
(Cite as: 298 A.D.2d 110)

▷

Brett R. Kaplan, Appellant,
v.
Capital Company of America LLC et al.,
Respondents.

Supreme Court, Appellate Division, First
Department, New York

(October 1, 2002)
CITE TITLE AS: Kaplan v Capital Co. of Am.

Judgment, Supreme Court, New York County (Ira
Gammerman, J.), entered August 28, 2001,
dismissing the complaint and bringing up for review
an order, same court and Justice, entered on or about
August 9, 2001, which granted defendants' motion for
summary judgment, unanimously affirmed, with
costs. Appeal from the aforesaid order entered on or
about August 9, 2001,*111 unanimouslyyyyyy
dismissed, without costs, as subsumed in the appeal
from the ensuing judgment.

The court properly dismissed plaintiff's breach of
contract claims since he had no contractual right to
the bonuses he seeks to recover. Although ordinarily
the question of whether unpaid compensation
constitutes a discretionary bonus or nonforfeitable
earned wages is a question of fact (see Mirchel v
RMJ Sec. Corp., 205 AD2d 388, 389), here the bonus
compensation sought was clearly stated in the
company handbook to be purely discretionary. The
handbook also clearly stated that its terms alone
would govern the employment relationship and that
no other promises regarding the terms of employment
could be made, except by specific individuals and in
writing. Defendant signed documents providing that
he understood these terms (see generally Hall v
United Parcel Serv. of Am., 76 NY2d 27, 36-37).
Although the handbook asserted that the policies and
benefits contained therein were not intended to be
contractual and were subject to change at any time,
this provision was plainly not intended to render the
handbook wholly nugatory (see e.g. Lobosco v New
York Tel. Co., 96 NY2d 312, 317). Given the clearly
expressed policy of the company that bonuses were
to be paid solely at the company's discretion, and the
provision requiring a writing executed by specified
persons on the company's behalf to alter the terms of
the employment relationship, plaintiff has no

sustainable claim that defendant company entered
into an enforceable agreement entitling him to bonus
compensation. It is plain, in light of the company
handbook, that the company officers with whom
plaintiff dealt were without actual or apparent
authority to bind the company to pay a bonus and that
the company had no intention of incurring such an
obligation by means of an oral agreement such as the
one alleged.

Plaintiff's remaining claims, to recover bonus
compensation in quantum meruit, or pursuant to
Labor Law § 193, or to recover on theories of
fraudulent concealment and promissory estoppel are
all without merit. Given the circumstance that
plaintiff had no contractual right to a bonus and was
clearly apprised of, and acknowledged in writing that
he understood, the company policy that the payment
of bonus compensation was purely discretionary,
none of these theories is viable.

Concur--Williams, P.J., Mazzarelli, Sullivan,
Rosenberger and Gonzalez, JJ.

Copr. (c) 2007, Secretary of State, State of New
York.

N.Y.A.D.,2002.

Kaplan v Capital Co. of Am.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT M**

Westlaw.

82 N.Y.2d 457                                                                                    Page 1
82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213, 1 Wage & Hour Cas.2d (BNA) 1185
**(Cite as: 82 N.Y.2d 457)**

▷

Seymour Gottlieb, Respondent-Appellant,
v.
Kenneth D. Laub & Company, Inc., Appellant-
Respondent.

Court of Appeals of New York

Argued October 12, 1993;

Decided November 23, 1993
CITE TITLE AS: Gottlieb v Kenneth D. Laub & Co.

SUMMARY

Cross appeals, by permission of the Appellate
Division of the Supreme Court in the First Judicial
Department, from an order of that Court, entered
June 25, 1992, which affirmed an order of the
Supreme Court (Herbert Shapiro, J.), entered in
Bronx County, *inter alia,* (1) determining that
plaintiff was entitled to an award of attorney's fees
pursuant to Labor Law § 198 (1-a), (2) granting a
motion by defendant pursuant to CPLR 4404 (a) to
set aside the jury verdict insofar as it found that
defendant acted willfully in withholding commissions
from plaintiff (Labor Law § 198 [1-a]) and to the
extent that the verdict awarded plaintiff certain
percentages of commissions earned on two real estate
transactions, and ordering a new trial unless plaintiff
consented to a vacatur of the finding of willfulness
and a reduction of the percentage of commissions
awarded for those two transactions, and (3) denying a
cross motion by plaintiff to conform the pleadings to
the proof with respect to one real estate transaction so
as to increase the percentage amount of commission
to which plaintiff claims to be entitled. The following
question was certified by the Appellate Division:
"Was the order of Supreme Court, as affirmed by this
Court, properly made?"

Gottlieb v Laub & Co., 184 AD2d 429, reversed.

HEADNOTES

Labor--Hours and Wages--Award of Attorney's Fees
Available Only in Wage Claim Action Pursuant to
Labor Law Article 6
(1) Labor Law § 198 (1-a), which provides in part
that "[i]n any action instituted upon a wage claim by
an employee ... in which the employee prevails, the
court shall allow such employee reasonable attorney's

fees", applies only to wage claim actions brought for
violations of the wage payment law, article 6 of the
Labor Law. The statutory language and cumulative
legislative history of Labor Law article 6 in general
and section 198 (1-a) in particular indicate that the
statutory remedy of an award of attorney's fees to a
prevailing employee is limited to actions for wage
claims founded on the substantive provisions of
Labor Law article 6. Moreover, any doubts on the
true meaning of the statutory language or legislative
intent in the enactment of the attorney's fees
provision of Labor Law § 198 should be resolved in
favor of a narrow construction. Accordingly, plaintiff
is not entitled to an award of attorney's fees under
section 198 (1-a) on his **\*458** common-law
contractual remuneration claim against defendant
employer for real estate commissions due him.

Appeal--Court of Appeals--Appeal by Permission--
Question Certified by Appellate Division--
Affirmance of Order Granting New Trial
(2) The Appellate Division is not empowered to
grant leave to appeal to the Court of Appeals on a
certified question where the Appellate Division order
affirms the grant of a new trial on the issue appellant
seeks to appeal. (CPLR 5602 [b] [1].) Accordingly,
plaintiff's cross appeal to the Court of Appeals by
permission of the Appellate Division on a certified
question must be dismissed where the Appellate
Division affirmed an order of the Supreme Court that
ordered a new trial on the issue plaintiff seeks to
appeal in the event plaintiff did not stipulate to the
court's setting aside of the jury's finding on that issue
as against the weight of the evidence, and plaintiff
has apparently not so stipulated.

Labor--Hours and Wages--Liquidated Damages for
Willful Failure to Pay Wages Available Only in
Action Pursuant to Labor Law Article 6
(3) The liquidated damages remedy provided by
Labor Law § 198 (1-a) where a willful failure to pay
wages has been established applies only to actions for
wage claims founded on the substantive provisions of
Labor Law article 6. Accordingly, plaintiff employee
is not entitled to liquidated damages under section
198 (1-a) on his common-law contractual
remuneration claim against defendant employer for
real estate commissions due him.

TOTAL CLIENT SERVICE LIBRARY
REFERENCES

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 N.Y.2d 457

82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213, 1 Wage & Hour Cas.2d (BNA) 1185
**(Cite as: 82 N.Y.2d 457)**

Am Jur 2d, Appeal and Error, § § 47, 123; Labor and Labor Relations, § 2593; Master and Servant, § 71.

CPLR 5602 (b) (1); Labor Law § 198 (1-a).

NY Jur 2d, Appellate Review, § § 69, 70, 80; Employment Relations, § § 116, 135, 256.

ANNOTATION REFERENCES

See ALR Index under Appeal and Error; Attorneys' Fees; Labor and Employment; Liquidated Damages.

POINTS OF COUNSEL

*Davis Polk & Wardwell,* New York City *(Henry L. King* of counsel), and *Clarence S. Barasch* for appellant-respondent. Section 198 (1-a) of the Labor Law does not apply to this contractual dispute over the amount of discretionary contingent compensation. *(Mighty Midgets v Centennial Ins. Co., 47 NY2d 12; Williams v AGK Communications, 143 Misc 2d 845; People v Vetri, 309 NY 401; People v Grass, 257 App Div 1; *459 People v Rowan, 179 Misc 225; Daley v Related Cos., 179 AD2d 55; Magness v Human Resource Servs., 161 AD2d 418; Klepner v Codata Corp., 139 Misc 2d 382, 150 AD2d 994; Maggione v Bero Constr. Corp., 106 Misc 2d 384; Falk v FFF Indus., 731 F Supp 134.)*

*Bower & Gardner,* New York City *(Gerry E. Feinberg* and *Allen Hobbs* of counsel), for respondent-appellant. I. Section 198 (1-a) of the Labor Law mandates a finding that Gottlieb is entitled to his attorney's fees. *(Matter of Erie County Agric. Socy. v Cluchey, 40 NY2d 194; Matter of Carr v New York State Bd. of Elections, 40 NY2d 556; Matter of Schmidt v Roberts, 74 NY2d 513; People v Craig, 78 NY2d 616; Matter of First Coinvestors v Carr, 159 AD2d 209; Magness v Human Resource Servs., 161 AD2d 418; P & L Group v Garfinkel, 150 AD2d 663; Klepner v Codata Corp., 139 Misc 2d 382, 150 AD2d 994; Westheim v Elkay Indus., 166 AD2d 318; Gerlach v Horn & Hardart Co., 683 F Supp 342.)* II. The lower court abused its discretion as a matter of law by applying the wrong criteria in improperly setting aside the jury's finding of willfulness. *(P & L Group v Garfinkel, 150 AD2d 663; Matter of Hull-Hazard, Inc. v Roberts, 136 AD2d 872, 74 NY2d 710; Matter of Cam-Ful Indus. [Roberts], 128 AD2d 1006; Matter of Valvo [Ross], 83 AD2d 344, 57 NY2d 116; United States v Pomponio, 429 US 10; Novik v Bartell Broadcasters, 66 Misc 2d 857, 39 AD2d 885, 32 NY2d 659; Jefferne, Inc. v Capanegro, 96 AD2d 577; Jamaica*

*Sav. Bank v Sutton, 42 AD2d 856.)*

OPINION OF THE COURT

Levine, J.

(1) Labor Law § 198 (1-a) provides in part that "[i]n any action instituted upon a wage claim by an employee ... in which the employee prevails, the court shall allow such employee reasonable attorney's fees". The issue presented is whether this statutory entitlement to attorney's fees applies to any wage claim action or only to those brought for violations of the wage payment law, article 6 of the Labor Law. As explained below, we conclude that the plain language, legislative history and purpose of section 198 (1- a) all indicate that the intent of the statute is that the attorney's fees remedy provided therein is limited to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6.

Defendant Kenneth D. Laub & Company, a real estate *460 brokerage corporation, employed plaintiff Seymour Gottlieb as a real estate salesman for some 17 years until his employment was terminated in 1987. The parties' employment relationship was governed by a written agreement. Pursuant to that agreement, plaintiff was to receive as compensation a percentage of the commissions paid to defendant on the transactions in which he was involved. Plaintiff's share of a commission varied with the extent of his involvement in the particular transaction. He was entitled to no other compensation.

Following the termination of his employment, plaintiff commenced this action to recover commissions due him from three transactions in which he had participated. Plaintiff did not allege a violation of any of the substantive provisions of article 6 of the Labor Law, but only a common-law contract cause of action and a second cause of action for a "violation of Labor Law section 198", the costs and remedies provision of article 6, in which he demanded attorney's fees and liquidated damages thereunder. The amount plaintiff is entitled to in commissions is not in dispute; whether section 198 (1-a) applies to plaintiff's wage claim is the only issue.

After a trial and jury verdict in favor of plaintiff, Supreme Court held that section 198 (1-a) was applicable and awarded attorney's fees to plaintiff. The court, however, granted defendant's CPLR 4404 (a) motion and set aside, as against the weight of evidence, the jury finding that defendant acted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213, 1 Wage & Hour Cas.2d (BNA) 1185    Page 3
**(Cite as: 82 N.Y.2d 457)**

willfully in withholding the commissions, the statutory requisite for an award of liquidated damages (Labor Law § 198 [1-a]), and disallowed that claim. In the event that plaintiff did not consent to a vacatur of the finding of willfulness, the court ordered that a new trial should be held on that issue.

(2) Defendant appealed and plaintiff cross-appealed. The Appellate Division unanimously affirmed, holding that plaintiff was entitled to attorney's fees under section 198 (1-a) (184 AD2d 429, 431). The Appellate Division subsequently granted defendant's motion for leave to appeal on the issue of plaintiff's entitlement to attorney's fees and plaintiff's cross motion for leave to appeal on the issue of willfulness, certifying the following question: "Was the order of the Supreme Court, as affirmed by this Court, properly made?" Thereafter, this Court granted plaintiff's motion to limit the issues that defendant could raise on appeal to the applicability of Labor Law § 198 (81 NY2d 776). For the reasons that follow, we reverse the *461 portion of the Appellate Division order holding that Labor Law § 198 (1-a) applies. [FN1]

1 (2) Plaintiff's cross appeal must be dismissed. The Supreme Court ordered a new trial on the issue of willfulness in the event that plaintiff did not stipulate to the court's setting aside of the jury's finding of willfulness as against the weight of evidence. Plaintiff apparently has not so stipulated. Because the Appellate Division order affirms the grant of a new trial on the issue plaintiff seeks to appeal, the Appellate Division was not empowered to grant leave to plaintiff on a certified question (see, CPLR 5602 [b] [1]; Collins v McGinley, 78 NY2d 1002).

The attorney's fees provision of section 198 was enacted (L 1967, ch 310) at the next session of the Legislature following the general recodification of the Labor Law regulating the payment of wages, by creation of a new Labor Law article 6 (L 1966, ch 548), sponsored by the Department of Labor (see, Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548). The over-all objective of the 1966 legislation was to strengthen and clarify the substantive laws protecting the rights of employees to the payment of wages. As the Industrial Commissioner's sponsoring memorandum stated, in outlining his reasons for recommending enactment:

"The wage payment provisions established by this bill compare favorably with those of any other state in the nation. Not only are the rights and obligations of employees and employers presented in a clear

fashion, but the extension of the provisions for the prompt payment of wages, and the requirement for wage statements to be given to employees and for record-keeping provide increased wage protection to employees of the State" (id., at 4).

The statutory provision in the 1966 enactment of Labor Law article 6 which generally regulates payment of wages by employers and creates reciprocal rights of employees is Labor Law § 191. Except for manual workers, all other categories of employees entitled to statutory protection under Labor Law § 191 are limited by definitional exclusions of one form or another for employees serving in an executive, managerial or administrative capacity (see, Labor Law § 190 [5], [6], [7]). [FN2]

2 As previously noted, plaintiff did not plead any claim under Labor Law § 191 or any other substantive provision of article 6 in his complaint.

Labor Law § 198 as originally enacted in 1966 as part of Labor Law article 6 provided as follows:

"§ 198. Costs, remedies *462

"1. In any action *instituted upon a wage claim* by an employee or the commissioner *in which the employee prevails,* the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.

"2. The remedies provided *by this article* may be enforced simultaneously or consecutively so far as not inconsistent with each other." (Labor Law former § 198, as added by L 1966, ch 548 [emphasis supplied].)

Certainly nothing in the language of that enactment suggests that it was intended to provide any remedy whatsoever for the successful prosecution of a common-law civil action for contractually due remuneration on behalf of employees who in all other respects are excluded from wage enforcement protection under the recodified article 6 of the Labor Law. Moreover, nowhere in the very extensive legislative history of chapter 548 of the Laws of 1966 is there even a hint of a legislative intent to provide new remedies for claims falling outside the substantive provisions of article 6.

In 1967, the costs and remedies provisions of Labor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 N.Y.2d 457
82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213, 1 Wage & Hour Cas.2d (BNA) 1185
(Cite as: 82 N.Y.2d 457)

Page 4

Law article 6 as set forth in <u>section 198</u> were amended to add a new subdivision (1-a) (L 1967, ch 310), the interpretation of which is the subject of this appeal:

"1-a. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due" (<u>Labor Law § 198</u> [1-a]).

Plaintiff urges that the plain language of <u>Labor Law § 198</u> (1-a) compels a conclusion that he is entitled to recover attorney's fees upon prevailing on his common-law contract claim. Specifically, plaintiff argues that, under the pertinent definitions as set forth in section 190 of Labor Law article 6, he has established that he is an "employee" (<u>Labor Law § 190 [2]</u>) who has prevailed upon a "wage" (<u>Labor Law § 190 [1]</u>) claim *463 against an "employer" (<u>Labor Law § 190 [3]</u>). Having satisfied all the elements of <u>section 198</u> (1-a) as defined in <u>section 190</u> of the article, plaintiff contends, it necessarily follows that he is entitled to an award of attorney's fees. Even assuming arguendo that plaintiff falls within the foregoing definitions, plaintiff's argument must fail in the face of the statutory language and the legislative history of Labor Law article 6 and of <u>section 198</u> (1-a) in particular, which together point definitively to the conclusion that the remedies provided in <u>section 198</u> were intended to be limited to claims based upon substantive violations of the article.

Plaintiff's position that <u>Labor Law § 198</u> (1-a) should apply to his common-law contract claim first overlooks the statutory language of the section which refers to an employer's "failure to pay the wage *required by this article*" (emphasis supplied), which clearly evinces a legislative intent to limit the remedies provided therein to violations of article 6. Although one might perhaps read the phrase "failure to pay the wage required by this article" to modify only the clause setting forth the liquidated damages remedy, the legislative history of <u>section 198</u> (1-a) as well as other statutory language contained in <u>section 198</u> not only fails to support that construction but dictates the opposite conclusion.

The legislative history for the statute--as set forth in the Bill Jacket of chapter 310 of the Laws of 1967-- reveals that the proponents and supporters of the 1967 legislation treated all of the remedies in <u>Labor Law § 198</u> as addressing the same problem (i.e., employers' violation of the wage laws), having the same objective (enhancing enforcement of the Labor Law's substantive wage enforcement provisions), and providing cumulative remedies for wage claims brought thereunder. Thus, the State Industrial Commissioner's sponsoring memorandum to the bill which became <u>Labor Law § 198</u> (1-a) states as the *sole* purpose of the bill: "To assist the *enforcement of the wage payment* and minimum wage payment *laws* by imposing greater sanctions on employers *for violation of those laws*" (Mem of Indus Commr, Apr. 5, 1967, Bill Jacket, L 1967, ch 310 [emphasis supplied]). And, in a memorandum in support of the bill that became chapter 310 of the Laws of 1967 by the State AFL-CIO, the attorney's fees and liquidated damages remedies of <u>section 198</u> (1-a) are addressed collectively as "one more safeguard to assure employees of proper payment of wages *under the law* and would thus be a deterrent against *abuses* *464 and violations" (Mem of New York State AFL-CIO, Bill Jacket, L 1967, ch 310 [emphasis supplied]).

Nor does the statutory language of <u>Labor Law § 198</u>, read as a whole, support plaintiff's expansive interpretation of the attorney's fees remedy so as to apply to his common-law action for contractually due remuneration. First, that remedy as set forth in <u>section 198</u> (1-a) tracks the additional $50 cost remedy of subdivision (1) of that section, included as part of the 1966 recodification of Labor Law article 6, to be awarded to a prevailing employee in "any action instituted upon a wage claim by an employee or the commissioner" (<u>Labor Law § 198 [1]</u>). As previously discussed, however, no one has ever suggested that the additional costs remedy of <u>section 198 (1)</u> was available in common-law contractual remuneration actions by persons otherwise unprotected by the substantive "wage laws" of Labor Law article 6. Second, all of the remaining provisions of <u>Labor Law § 198</u> strongly suggest that the entire section was intended merely to afford procedural rules, including costs and cost-related remedies, to apply in actions brought for wage claims created under the substantive provisions of Labor Law article 6. Thus, <u>section 198 (2)</u> provides that "[t]he remedies provided *by this article* may be enforced simultaneously or consecutively" (emphasis supplied). Likewise, <u>section 198 (3)</u> provides that "an action to recover upon a liability imposed *by this article* must be commenced within six years" (emphasis supplied).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) Accordingly, the statutory language and cumulative legislative history of Labor Law article 6 in general and section 198 (1-a) in particular convince us that the statutory remedy of an award of attorney's fees to a prevailing employee, as well as the liquidated damages remedy where a willful failure to pay wages has been established, are limited to actions for wage claims founded on the substantive provisions of Labor Law article 6. Moreover, any doubts on the true meaning of the statutory language or legislative intent in the enactment of the attorney's fees provision of Labor Law § 198 should be resolved in favor of a narrow construction. New York has traditionally followed the common-law rule disfavoring any award of attorney's fees to the prevailing party in a litigation *(see, Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21-22; see also, 24 NY Jur 2d, Costs in Civil Actions, § 158)*. Therefore, the appropriate canon of statutory construction to be applied in this case favors a narrow interpretation *(see, *465 McKinney's Cons Laws of NY, Book 1, Statutes § 301 [a])*. Or, put another way:

"The common law is never abrogated by implication, but on the contrary it must be held no further changed than the clear import of the language used in a statute absolutely requires" *(id., § 301 [b])*.

(3) An expansive interpretation of Labor Law § 198 (1-a) to permit recovery of attorney's fees on a common-law contractual remuneration claim would not only violate the foregoing canons of statutory construction, but would afford a windfall remedy to litigants whom the Legislature consciously chose *not* to afford the protections and benefits of the wage payment regulatory provisions of the Labor Law. For all of the foregoing reasons, plaintiff's claim that he is entitled to liquidated damages under section 198 (1-a) must also fail.

Accordingly, plaintiff's appeal should be dismissed and, on defendant's appeal, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, plaintiff's cause of action based on Labor Law § 198 (1-a) dismissed, and the certified question answered in the negative.

Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Bellacosa and Smith concur.

Plaintiff's appeal dismissed upon the ground that the Appellate Division did not have the power in these circumstances to grant leave to appeal to the plaintiff on a certified question *(see, CPLR 5602 [b] [1]; Collins v McGinley, 78 NY2d 1002).* On defendant's

appeal, order, insofar as appealed from, reversed, with costs, plaintiff's cause of action based on Labor Law § 198 (1-a) dismissed, and certified question answered in the negative.*466

Copr. (c) 2005, Randy A. Daniels, Secretary of State, State of New York.

N.Y. 1993.

GOTTLIEB v LAUB & CO.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 N.Y.2d 457

82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213, 1 Wage & Hour Cas.2d (BNA) 1185

**(Cite as: 82 N.Y.2d 457)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT N**

Westlaw.

26 A.D.3d 882                                                                                     Page 1
26 A.D.3d 882, 809 N.Y.S.2d 710, 2006 N.Y. Slip Op. 00917
**(Cite as: 26 A.D.3d 882)**

**H**
Simpson v. Lakeside Engineering, P.C.
N.Y.A.D. 4 Dept.,2006.

Supreme Court, Appellate Division, Fourth
Department, New York.
Joanne SIMPSON, Plaintiff-Appellant,
v.
LAKESIDE ENGINEERING, P.C., Defendant-
Respondent.
Feb. 3, 2006.

**Background:** Former at-will employee sued
employer to recover unpaid bonus. The Supreme
Court, Monroe County, David D. Egan, J., dismissed,
and employee appealed.

**Holdings:** The Supreme Court, Appellate Division,
held that:

(1) written offer of employment, unequivocally
defining compensation in terms of both base salary
and bonus, created enforceable contract with respect
to payment of bonus, but

(2) statute providing for award of reasonable attorney
fees to employee who prevails on wage claim was not
applicable.

Affirmed as modified.
West Headnotes
**[1] Labor and Employment 231H ⬪175**

231H Labor and Employment
    231HIV Compensation and Benefits
        231HIV(A) In General
            231Hk175 k. Bonus. Most Cited Cases
Accepted, written offer of employment,
unequivocally defining offeree's compensation in
terms of both base salary and bonus, created
enforceable contract with respect to payment of
bonus.

**[2] Labor and Employment 231H ⬪175**

231H Labor and Employment
    231HIV Compensation and Benefits
        231HIV(A) In General

231Hk175 k. Bonus. Most Cited Cases
When bonus that is integral part of compensation
package has already been earned by time employer
decides not to pay it, latter can no longer argue that
such bonus is discretionary; at that point, failure to
pay it constitutes breach of contract of employment.

**[3] Labor and Employment 231H ⬪241**

231H Labor and Employment
    231HIV Compensation and Benefits
        231HIV(B) Actions
            231Hk241 k. Defenses. Most Cited Cases
When employee sues for agreed compensation for
fully completed past services, claim is defeated only
if facts show failure of performance that is
substantial, material and strikes at very essence of
contract.

**[4] Labor and Employment 231H ⬪175**

231H Labor and Employment
    231HIV Compensation and Benefits
        231HIV(A) In General
            231Hk175 k. Bonus. Most Cited Cases
Allegation that former employee had engaged in
fraud and bad faith was insufficient to defeat her
claim for annual bonus, earned prior to her
resignation.

**[5] Labor and Employment 231H ⬪271**

231H Labor and Employment
    231HIV Compensation and Benefits
        231HIV(B) Actions
            231Hk269 Costs and Attorney Fees
                231Hk271 k. Attorney Fees in General.
Most Cited Cases
Statute providing for award of reasonable attorney
fees to employee who prevails on wage claim applies
only to wage claim actions brought for violations of
wage payment law; it does not apply to common law
contract claims. McKinney's Labor Law § 198.

Mangione & Roisman, Rochester (Randall D.
Hilderbrandt of Counsel), for Plaintiff-Appellant.
Phillips Lytle LLP, Rochester (Chad W. Flansburg of
Counsel), for Defendant-Respondent.

PRESENT: PIGOTT, JR., P.J., GREEN, KEHOE,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 A.D.3d 882                                                                                    Page 2
26 A.D.3d 882, 809 N.Y.S.2d 710, 2006 N.Y. Slip Op. 00917
(Cite as: 26 A.D.3d 882)

MARTOCHE, AND PINE, JJ.
**\*882 MEMORANDUM:**
Plaintiff, an at-will employee, commenced this action for breach of contract seeking, inter alia, payment of a $10,000 bonus. Pursuant to a written offer of employment, plaintiff was hired as defendant's Director of Professional Services commencing March 5, 2001 at a base annual salary of $40,000, and was guaranteed a minimum bonus of $10,000 "assuming" that she completed at least one year of service. Plaintiff voluntarily resigned from her position on March 20, 2002 and did not receive the bonus payment. At the bench trial, Supreme Court granted in part defendant's motion for a trial order of dismissal at the close of plaintiff's case and dismissed two of the three causes of action. The court dismissed the remaining cause of action at the conclusion of the trial.

[1][2] Contrary to the court's determination, the record establishes that there was an enforceable contract with respect to payment of the bonus and that plaintiff is entitled to such payment, as sought in the first cause of action. We therefore modify the order accordingly. The parties stipulated that the February 2001 offer letter constituted the written offer of employment, and that offer letter unequivocally defines plaintiff's compensation in terms of both base salary and bonus. "When a bonus that is an integral part of a compensation package has already been \*883 earned by the time the employer decides not to pay it, the latter can no longer argue that such bonus is discretionary; at that point, failure to pay it constitutes a breach of the contract of employment" (*Sipkin v. Major League Baseball Advance Media*, 9 Misc.3d 133(A), 808 N.Y.S.2d 920, 2005 N.Y. Slip Op. 51648 [U], \*1, 2005 WL 2653955, citing *Harden v. Warner Amex Cable Communications*, 642 F.Supp. 1080, 1096). The offer letter in no way indicates that the bonus was discretionary, and thus "the bonus clause is reasonably susceptible of only one interpretation" (*Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 543 N.E.2d 722; *cf. Kaplan v. Capital Co. of Am.*, 298 A.D.2d 110, 747 N.Y.S.2d 504, *lv. denied* 99 N.Y.2d 510, 760 N.Y.S.2d 101, 790 N.E.2d 275).

[3][4] We reject the contention of defendant that, even if there were an enforceable contract to pay the bonus to plaintiff, the contract is no longer binding **\*\*712 on defendant based on plaintiff's fraud and lack of good faith. "When an employee sues for agreed compensation for fully completed past services, the claim is defeated only if the facts show a failure of performance that is substantial, material and strikes at the very essence of the contract" (*Russ v. Minuteman Opt. Corp.*, 99 A.D.2d 632, 633, 472 N.Y.S.2d 198), and there was no such showing herein.

[5] Finally, we conclude that the court properly granted that part of defendant's motion seeking dismissal of the second and third causes of action under Labor Law § 198, seeking attorney's fees and liquidated damages in an amount equal to 25% of the total amount of wages due. It is well settled that section 198 does not apply to a "common-law contract claim" such as that asserted herein (*Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 462, 605 N.Y.S.2d 213, 626 N.E.2d 29, *rearg. denied* 83 N.Y.2d 801, 611 N.Y.S.2d 136, 633 N.E.2d 491). Rather, that section applies only to claims "based upon substantive violations of [Labor Law article 6]" (*id.* at 463, 605 N.Y.S.2d 213, 626 N.E.2d 29), and no such claim or cause of action was asserted by plaintiff.

It is hereby ORDERED that the order so appealed from be and the same hereby is unanimously modified on the law by reinstating the first cause of action and as modified the order is affirmed without costs, and

It is further ORDERED that judgment be entered in favor of plaintiff and against defendant in the amount of $10,000.

N.Y.A.D. 4 Dept.,2006.
Simpson v. Lakeside Engineering, P.C.
26 A.D.3d 882, 809 N.Y.S.2d 710, 2006 N.Y. Slip Op. 00917

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT O

Westlaw.

Slip Copy                                                                                           Page 1
Slip Copy, 2007 WL 766282 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Monagle v. Scholastic, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Edward MONAGLE, Plaintiff,
v.
SCHOLASTIC, INC., Defendant.
**No. 06 Civ. 14342 GEL.**

March 9, 2007.

Robert L. Levy, Bantle & Levy LLP, New York, NY, for Edward Monagle.
Elise M. Bloom and Nathaniel M. Glasser, Proskauer Rose LLP, New York, NY, for Scholastic, Inc.

OPINION AND ORDER

LYNCH, J.

*1 Plaintiff Edward Monagle brings this action for breach of contract, claiming that his former employer, defendant Scholastic, Inc., violated an agreement requiring it to pay him substantial severance pay. Scholastic moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the second count of the complaint, which alleges that the failure to pay the agreed severance amount also violates provisions of the New York Labor Law. The motion will be granted.

BACKGROUND

According to the complaint, which for purposes of this motion to dismiss must be taken as true, Monagle was employed as Senior Vice President of Scholastic when, in July 2004, he was advised that he was being laid off as part of a restructuring of his department. In December 2004, in connection with his departure, Monagle entered a written Separation Agreement. The Separation Agreement provided that Monagle would be "deemed to have resigned his position" effective December 31, 2004, and would be "retained as an employee of Scholastic from January 1, 2005 through June 30, 2006." (Compl.¶ 15.) The Separation Agreement also provided that, at the end of that period, Scholastic would pay Monagle 24 months' severance pay. Since Monagle's annual salary at the time of the agreement was $422,000, the total severance payment would have been $844,000.

In July 2006, following the end of Monagle's period of employment, Scholastic paid him $211,000-in effect, six months' salary-and advised him that it would not make further payments. Monagle then brought this action for breach of contract and violation of "New York Labor Law Section 190 et seq." (Compl.¶ 34.)

DISCUSSION

A defendant is entitled to dismissal of a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When deciding a 12(b)(6) motion to dismiss, the Court must take as true the facts as alleged in plaintiff's complaint, Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.1995), and draw all reasonable inferences in plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir.2004).

Scholastic does not dispute that Monagle's complaint states a claim for breach of contract. It argues, however, that the allegations cannot support a claim for violation of any New York Labor Law provision invoked, because Mongale was a highly-paid executive.

Courts have taken different views as to the scope of the term "employee" in the Labor Law. Dictum in Gottlieb v. Kenneth D. Laub & Co., Inc., 82 N.Y.2d 457 (1993), led some courts to conclude that executives and professionals were entirely excluded from the definition of "employee" in N.Y. Lab. L. § 190(2), and therefore from all the protections of that statute. See, e.g., Rice v. Scudder Kemper Inv., Inc., No. 01 Civ. 7078(RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 13, 2003). As Monagle points out, however, Judge Marrero's scholarly analysis in Miteva v. Third Point Management Co., L.L.C., 323 F.Supp.2d 573 (S.D.N.Y.2004), has persuaded most courts that this position is incorrect, and that there is no basis for excluding executives and professionals from § 190(2)'s broad definition of "employee" as "any person employed for hire by an employer in any employment." For purposes of this motion, this Court can and does assume, without deciding, that Judge Marrero is right.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*2** But this hardly ends the analysis. That Monagle was a statutory employee does not determine whether he has a claim under any particular provision of the Labor Law, since many of the provisions defining particular rights do not apply to all "employees" as defined in the statute, but are limited by their own terms to particular *categories* of employee.

In particular, the Labor Law provision that directly protects severance payments excludes certain employees. Section 198-c prohibits an employer who has agreed to pay "benefits or wage supplements" to an employee from failing to do so. N.Y. Lab. L. § 198-c(1). "Benefits and wage supplements" are then defined to include, among other items, "separation ... pay." *Id.* § 198-c(2). This provision, however, explicitly provides that "it shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars a week." *Id.* § 198-c(3). Judge Marrero in *Miteva* expressly notes this exclusion, reasoning that the specific exclusion of executives and professionals from this protection extended to all other "employees" supports a broad reading of the latter term. 323 F.Supp.2d at 579.

Monagle's complaint refers to no particular provision of the Labor Law, instead generally citing the provisions of article 6 of that statute as "Section 190 *et seq."* (Compl.¶ 34.) His response to Scholastic's motion is little more precise, citing *"inter alia,* sections 191(3), 193 and 198." The Court cannot guess at which sections are among the *"alia"* Monagle relies on, but the specifically cited sections do him no good. Section 191(3) by its very terms applies only to the four specific categories of employees listed in § 191. *Kletter v. Fleming,* 820 N.Y.S.2d 348, 350 (3d Dep't 2006); *Miteva,* 323 F.Supp.2d at 584. Section 193 has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages. *Kletter,* 820 N.Y.S.2d at 350 (general allegation of failure to pay money due does not state a claim under § 193 absent allegation of "any specific deduction" from wages). And § 198 provides no substantive cause of action at all; it is a remedial provision authorizing recovery of costs and attorneys' fees to plaintiffs who recover on claims brought under other provisions of the Labor Law. Thus, Monagle cites no provision of the Labor Law other than § 198-c that protects severance benefits or otherwise entitles him to recovery on the facts alleged.

There can be no question that Monagle is excluded from recovering under § 198-c as an "executive ... whose earnings are in excess of six hundred dollars a week." The complaint specifically alleges that Monagle was employed as a Senior Vice President of Scholastic whose "duties included management of all operational functions of Scholastic's Book Group, including without limitation, sales forecasting, inventory management, [and] purchasing inventory," as well as "management of Scholastic's Harry Potter franchise, strategic and operational input in Book Group acquisitions and management of the creation of web based informational systems for the Book Group." (Compl.¶  ¶  8, 9;) Such a person is unquestionably employed "in a bona fide executive, administrative, or professional capacity." N.Y. Lab. L. § 198-c(3). Monagle was paid $422,000 per year (Compl.¶  14), an amount more than thirteen times the $600 per week sufficient to exclude him from coverage by § 198-c.

**\*3** Monagle's sole argument that § 198-c(3) does not exclude him is premised on the assertion that in his terminal year of employment he served only as an "internal consultant," and that "discovery and, perhaps, trial" would be required before the Court could determine whether he was an "professional, executive or administrative" employee during this period. (P. Mem.8.) This argument is ludicrous. First, the complaint does not allege that Monagle was an "internal consultant." Second, Monagle does not need discovery to be able to allege what his duties were during his terminal year at Scholastic. If those duties were such as to exempt him from the category of "executive, administrative, or professional" employment, N.Y. Lab. Law § 198-c(3), during the year when, at a salary of nearly half a million dollars, he wound down from being a Senior Vice President with high-level executive and administrative responsibilities, he could easily have so alleged in the complaint, and still can by seeking leave to amend, if the claim can pass the straight-face test and the strictures of Rule 11 of the Federal Rules of Civil Procedure.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss Count II of the complaint for failure to state a claim is granted.

SO ORDERED.

S.D.N.Y.,2007.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 766282 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 3

Monagle v. Scholastic, Inc.
Slip Copy, 2007 WL 766282 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT P

Westlaw.

Slip Copy                                                              Page 1
Slip Copy, 2007 WL 1597955 (S.D.N.Y.)
**(Cite as: 2007 WL 1597955 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Peter GLEASON, Plaintiff,
v.
U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. Coast Guard, Captain Donald B.
Thompson, Commander Margretha L. Lukshides, Lt.
Commander Donna A. Kuebler-
Fisher, Defendants.
**No. 06 Civ. 13115DLC.**

June 1, 2007.
Peter J. Gleason, New York, NY, for Plaintiff, pro
se.

Joseph A. Pantoja, Assistant United States Attorney,
Michael J. Garcia, United States Attorney for the
Southern District of New York, New York, NY, for
Defendants.

*OPINION & ORDER*

COTE, J.

 *1 Plaintiff Peter Gleason ("Gleason") brings this
action *pro se* against the United States Department of
Homeland Security, the United States Coast Guard,
and several of their employees for discharging him
because of his jury service, in violation of 28 U.S.C.
§ 1875 ("Section 1875"). The defendants have filed a
motion to dismiss for lack of subject matter
jurisdiction and for failure to state a claim. For the
following reasons, the defendants' motion is granted.

*Background*
The following facts are undisputed or taken from the
complaint. Gleason is a retired Lieutenant in the
United States Coast Guard Reserve and an attorney
admitted before this Court. On December 21, 1999,
Gleason notified his Coast Guard supervisor of his
impending jury service. Gleason was on jury duty
from January 3 to January 28, 2000, during which
time the Coast Guard assigned him duties, and after
which it evaluated him negatively for failure to
perform those duties. The evaluation resulted in his
mandatory retirement. Gleason received notice of the
negative evaluation on June 12, 2000, and the
mandatory retirement was effective July 1. [FN1]

After pursuing administrative remedies, Gleason filed
this action on November 13, 2006, claiming violation
of Section 1875. He seeks appointment to the rank of
Commander, reinstatement, monetary damages, and
other relief.

 FN1. On that date he was transferred to
 Inactive Ready Reserve.

 Gleason's claims arise under Section 1875, which
protects the employment of jurors:
 (a) *No employer shall discharge, threaten to
 discharge, intimidate, or coerce any permanent
 employee by reason of such employee's jury
 service, or the attendance or scheduled attendance
 in connection with such service, in any court of the
 United States.*
 (b) Any employer who violates the provisions of
 this section--
 (1) shall be liable for damages for any loss of
 wages or other benefits suffered by an employee by
 reason of such violation;
 (2) may be enjoined from further violations of this
 section and ordered to provide other appropriate
 relief, including but not limited to the reinstatement
 of any employee discharged by reason of his jury
 service; and
 (3) shall be subject to a civil penalty of not more
 than $1,000 for each violation as to each employee.
 ....
 (d)(1) An individual claiming that his employer has
 violated the provisions of this section may make
 application to the district court for the district in
 which such employer maintains a place of business
 and *the court shall, upon finding probable merit in
 such claim, appoint counsel* to represent such
 individual in any action in the district court
 necessary to the resolution of such claim. Such
 counsel shall be compensated and necessary
 expenses repaid to the extent provided by section
 3006A of title 18, United States Code.
 28 U.S.C. § 1875 (emphases added).

 With his complaint, Gleason submitted an
application for appointment of counsel under Section
1875(d)(1). As a threshold matter, Section 1875
requires a finding of "probable merit" before counsel
can be appointed. Therefore, a November 16, 2006
Order denied the request without prejudice to its
renewal at such time as the existence of a potentially
meritorious claim may be demonstrated.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1597955 (S.D.N.Y.)
(Cite as: 2007 WL 1597955 (S.D.N.Y.))

**\*2** On February 9, 2007, the defendants filed a motion to dismiss, claiming that there is no subject matter jurisdiction because the complaint is barred by sovereign immunity and that the complaint fails to state a claim because it is barred by the statute of limitations. In his opposition filed on March 8, plaintiff renewed his request for appointment of counsel. The defendants' reply was filed on March 22.

### Discussion

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." _FDIC v. Meyer, 510 U.S. 471, 475 (1994)_ (citation omitted). Claims brought against a federal agency or a federal agent in his or her official capacity are effectively claims against the United States. _Kentucky v. Graham, 473 U.S. 159, 165 (1985); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir.1994)_. The United States, however, is generally immune from suit unless it consents to be sued, and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." _United States v.. Mitchell, 445 U.S. 535, 538 (1980)_ (citation omitted).

There has been no wavier of sovereign immunity in this action. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." _Lane v. Pena, 518 U.S. 187, 192 (1996)_ (citation omitted). The plaintiff bears the burden of proving "by a preponderance of evidence that jurisdiction exists" when the defendant invokes sovereign immunity. _Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 93 (2d Cir.2004)_ (citation omitted). Nowhere in the language of Section 1875 is there any indication that sovereign immunity is being waived.

Gleason argues that his claim should not be dismissed because of the importance of the jury system and because of Article III of the Constitution. The conferral of federal jurisdiction, however, is not a waiver of sovereign immunity. _See, e.g., Kulawy v. United States, 917 F.2d 729, 733 (2d Cir.1990)_.

Gleason also contends that a waiver of sovereign immunity can be found in Section 1875 because the term "employer" in the statute must include a large employer like the federal government. Gleason cites a decision which found that for purposes of Section 1875, "employer" includes municipal employees. _See Garcia v. Municipality of Mayaguez, 118 F.Supp.2d 153, 154 (D.P.R.2000)_. _Garcia_ is of no assistance to the plaintiff. No defendant in _Garcia_ asserted the defense of sovereign immunity, and the defendant municipality did not even deny that it was the plaintiff's employer for purposes of Section 1875. There is simply no language in Section 1875 that can be construed as a waiver of sovereign immunity. For example, in contrast to the silence in Section 1875, limited, specific waivers of federal sovereign immunity are explicitly expressed in other employment-related statutes such as Title VII [FN2] or the ADEA. [FN3] Accordingly, the government agency defendants and the individual defendants sued in their official capacity are entitled to dismissal. To the extent that plaintiff is suing individual defendants in their personal capacities, [FN4] his claim is barred by the statute of limitations.

> FN2. All personnel actions affecting employees or applicants for employment ... in military departments [ ], in executive agencies [ ], in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.
> 42 U.S.C. § 2000e-16.

> FN3. All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in military departments [ ], in executive agencies [ ], in the United States Postal Service and the Postal Regulatory Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on age.
> 29 U.S.C. § 633a.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN4. Gleason has not made it entirely clear whether he is suing the individual defendants in their individual capacities as well as their official, but the limited suggestions in his complaint relating to actions of the individual defendants who were his supervisors are read liberally in this *pro se* filing to claim suit against these defendants in their individual capacities as well. *See, e.g., Wright v. Comm'r*, 381 F.3d 41, 44 (2d Cir.2004).

**\*3** Motions to dismiss based on the statute of limitations are properly brought under Rule 12(b)(6). *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.2004) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989)). Section 1875 does not contain its own statute of limitations. As a result, an appropriate limitations period must be borrowed from analogous state or federal law, using the standard described in *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-35 (1995). *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 542 (2d Cir.1999). When a federal scheme lacks a limitations period, state law is the "lender of first resort." *North Star Steel*, 515 U.S. at 34.

The most analogous state statute is New York's Human Rights Law, N.Y. Exec. Law § 296, which prohibits discrimination in employment on a variety of grounds. [FN5] While New York does have a statute designed specifically to protect jurors' employment, N.Y. Jud. Law § 519, the statute is less analogous to Section 1875 because the New York statute does not provide for a private right of action against the employer. *See Di Blasi v. Traffax Traffic Network*, 681 N .Y.S.2d 147, 148-49 (App.Div.1998). Under New York's Human Rights Law, parties can bring suit against discriminatory employers, and the applicable limitations period is three years. *Bistrisky v. N.Y. State Dept. of Correctional Services*, 804 N.Y.S.2d 443, 444 (App.Div.2005); *see also* N.Y. C.P.L.R. § 214 (applying a three-year statute of limitation to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute").

FN5. The only case that this Court found to have considered the statute of limitations issue for Section 1875 determined that the closest state law analogy to Section 1875 in Florida was the limitations period for "an action 'to recover wages or overtime or damages or penalties concerning payment of wages.' " *Kennedy v. Sears, Roebuck & Co.*,

No. 92- 1062-CIV-ORL-19, 1993 WL 276911, at \*2 (M.D.Fla. Mar. 31, 1993) (citing Fla. Stat. § 95.11(4)(c)). While New York has a six-year statute of limitations for recovery of wage claims, N.Y. Labor Law § 198, that statutory section only applies to "claims based upon substantive violations of [New York] Labor Law article 6." *Simpson v. Lakeside Eng'g, P.C.*, 809 N.Y.S.2d 710, 712 (App.Div.2006) (citation omitted). Article 6 concerns "the rights of employees to the payment of wages," *Gottlieb v. Kenneth D. Laub & Co.*, 626 N.E.2d 29, 31 (N.Y.1993), and includes provisions on topics such as the prompt payment of wages, deductions, and the prohibition of a differential in rate of pay because of sex. *See* N.Y. Labor Law § § 190 to 199-a. New York's Human Rights Law, which addresses discriminatory employment practices and allows a broad range of relief, is more analogous to Section 1875 than the limited wage claims available under New York Labor Law.

A claim accrues when the plaintiff "discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir.2007). Gleason served on jury duty from January 3 to January 28, 2000. According to his Application for Correction of Military Record, [FN6] which Gleason filed to correct the negative evaluation he received, the date the "alleged error or injustice" occurred was April 25, 2000, the date the negative evaluation was signed. The date of discovery was provided as June 12, which appears to indicate the day he was notified of the negative evaluation. On July 12, he was transferred to Inactive Ready Reserve. Gleason filed the complaint in this action on November 13, 2006. It is clear that more than three years' time has passed since the June 12, 2000 date of discovery, and his claim is barred by the statute of limitations.

FN6. The defendants submitted these records with their reply papers in response to plaintiff's tolling argument, which is described below. For purposes of a motion to dismiss, the court will deem the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000). Even if the plaintiff does not attach to his complaint "a document upon

Slip Copy
Slip Copy, 2007 WL 1597955 (S.D.N.Y.)
**(Cite as: 2007 WL 1597955 (S.D.N.Y.))**

which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565-66 (2d Cir.2006) (citation omitted). Plaintiff relies on his administrative filings to satisfy the statute of limitations, but he does not provide any of the relevant dates regarding the administrative proceedings in his Complaint. Therefore, these documents submitted by the defendants are incorporated into the record to the extent necessary to obtain the relevant dates.

Gleason argues that he was required to exhaust administrative remedies, and therefore the time during the administrative process should be tolled. The defendants point out that there is no requirement to exhaust administrative remedies under Section 1875. [FN7] Even if the period during which Gleason sought administrative remedies were tolled, however, the action would still be barred by the statute of limitations. Gleason sought administrative review on September 24, 2004, and a final agency determination was rendered on October 28, 2005. The time between discovery of his injury and the filing of the complaint exceeds six years, and tolling the statute of limitations for the thirteen months during which Gleason's administrative claim was pending does not save the claim from the three-year bar.

> FN7. Furthermore, as the defendants point out, plaintiff's administrative filings, although mentioning his jury service, do not claim that he was discharged because of his jury service, unlike the claim in his complaint here.

*4 Gleason further points out that under New York law, a six-year statute of limitations applies to actions having no specific time limitations. N.Y. C.P.L.R. § 213. As noted above, however, the appropriate statute of limitations period for a federal statute is borrowed from an analogous statute, and New York's Human Rights Law and its applicable statute of limitations is the appropriate law here.

*Conclusion*
The defendants' motion to dismiss is granted. The plaintiff's renewed motion for appointment of counsel is denied. The Clerk of Court shall close the case.

SO ORDERED:

Slip Copy, 2007 WL 1597955 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.