UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THEODORE ITZKOWITZ,                           :
                                              :
                         Plaintiff,           :        Index No. 07 CV 3783 (JGK)
                                              :
      -against-                               :
                                              :
ISRAEL DISCOUNT BANK OF NEW YORK,             :
ISRAEL DISCOUNT BANK OF NEW YORK              :
SEVERANCE PLAN FOR SPECIFIED                  :
EXECUTIVES, ISRAEL DISCOUNT BANK OF           :
NEW YORK SEVERANCE PLAN, ISRAEL               :
DISCOUNT BANK OF NEW YORK DEFERRED            :
COMPENSATION PLAN, and PENSION PLAN           :
FOR EMPLOYEES OF ISRAEL DISCOUNT              :
BANK OF NEW YORK,                             :
                                              :
                         Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS


MINTZ LEVIN COHN FERRIS GLOVSKY and POPEO, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

Jennifer B. Rubin (JR 3321)
Michael S. Arnold (MA 8541)

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Algie v. RCA Global Communications, Inc.*,
    891 F. Supp. 875 (S.D.N.Y. 1994) *aff'd* 60 F.3d 956 (2d Cir. 1995) ........................4

*Chambless v. Masters, Mates & Pilots Pension Plan*,
    815 F.2d 869 (2d Cir. 1987).................................................................................3, 4

*DeFelice v. American Intern. Life Assur. Co. of New York*,
    94CIV8165(AGS), 1996 WL 304542 (S.D.N.Y. Jun. 5, 1996)................................4

*Estate of Morris ex rel. Morris v. Dapolito*,
    297 F. Supp. 2d 680 (S.D.N.Y. 2004)....................................................................5

*Fase v. Seafarers Welfare & Pension Plan*,
    589 F.2d 112 (2d Cir. 1978)...............................................................................2, 3

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir.), *cert. denied*, 513 U.S. 1079, 115 S. Ct. 728 (1994)...............5

*Labarbera v. Clestra Hauserman, Inc.*,
    369 F.3d 224 (2d Cir. 2004).................................................................................3

*Miles v. N.Y.S. Teamsters Conference Pension & Retirement Fund Employee Benefit Plan*,
    698 F.2d 593 (2d Cir. 1983).............................................................................2, 3

*Park v. Trustees of the 1199 SEIU Health Care Employees Pension Fund*,
    418 F. Supp. 2d 343 (S.D.N.Y. 2005)................................................................2, 3

*Renda v. Adam Meldrum & Anderson Co.*,
    806 F. Supp. 1071 (W.D.N.Y. 1992) .....................................................................4

*Slupinski v. First Unum Life Ins. Co.*,
    99CIV0616(TPG), 2006 WL 2266569 (S.D.N.Y. Aug. 7, 2006)............................4

*Thompson v. General Elec. Co.*,
    01CIV4438(JGK), 2002 WL 482862 (S.D.N.Y. Mar. 29, 2002) .............................2, 3

## STATE CASES

*Gottlieb v. Kenneth D. Laub & Co., Inc.*,
    82 N.Y.2d 457, 626 N.E.2d 29, 605 N.Y.S.2d 213 (1993).......................................6

*Harden v. Warner Amex Cable Communications Inc.*,
    642 F. Supp. 1080 (S.D.N.Y. 1986)......................................................................5

*Mirchel v. RMJ Securities Corp*,
   205 A.D.2d 388 (1st Dep't 1994) ...........................................................5

*Tierney v. Capricorn Investors*,
   189 A.D.2d 629 (1st Dep't 1993) ...........................................................6

*Truelove v. Capital & Advisory, Inc.*,
   95 N.Y.2d 220, 738 N.E.2d 770, 715 N.Y.S.2d 366 (2000) ...................6

*Weiner v. Diebold*,
   173 A.D.2d 166 (1st Dep't 1991) ...........................................................5

## **OTHER**

Fed. R. Civ. P. 12(b)(1) ..............................................................................7

Fed. R. Civ. P. 12(b)(6) ..............................................................................7

29 U.S.C. § 1132(g)(1) ...........................................................................2, 3

New York Labor Law § 193 ........................................................................6

New York Labor Law § 198 ........................................................................6

2 *Moore's Federal Practice* § 12.34[1][b] at 12-61-62 (2007) ...................5

## PRELIMINARY STATEMENT

Plaintiff alleges in Courts Four and Five of his Complaint that he is entitled to certain benefits under Israel Discount Bank's ("IDB") Deferred Compensation and Pension Plans. IDB does not dispute his right to these benefits -- and never has. As of this date, plaintiff has received all of his benefits under the Deferred Compensation Plan. He will receive his benefits under the Pension Plan shortly. Plaintiff nonetheless persists in pursuing these claims when there is nothing for this Court to adjudicate. Plaintiff also persists in pursuing Count Three, but his opposing brief confirms that he cannot allege any facts sufficient to support this Count and withstand IDB's motion to dismiss. IDB's motion to dismiss should therefore be granted.

## ARGUMENT

### A.      Plaintiff's Fourth and Fifth Counts Are Moot

As detailed in its moving brief, IDB has fulfilled its obligations to provide plaintiff with information regarding the benefits to which he is entitled under the Deferred Compensation and Pension Plans (Memorandum of Law in Support of Defendant's Motion to Dismiss, dated July 9, 2007 ("Def. Br."), pp. 2-5). To date, IDB has followed its benefits administration procedures under each plan and plaintiff alleges no facts in his Complaint to the contrary (*see* Declaration of Susan Rinaldi, dated August 3, 2007 (hereinafter the "Rinaldi II Decl."), at ¶ 3). Consistent with its benefit administration procedures, IDB transmitted payment for all monies due to plaintiff under the Deferred Compensation Plan on July 26, 2007 (Rinaldi II Decl., at ¶ 4).[1]  IDB's Retirement Committee has recommended that the Pension Plan be funded, which will lift

---

[1] Plaintiff concedes that his claims are moot once he receives his benefits (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts 3, 4, and 5 of the Complaint, dated July 23, 2007 ("Pl. Br."), p. 4).

any legal restrictions applicable to plaintiff (and the other top 25 employees) in connection with the immediate distribution of pension benefits (Rinaldi II Decl., at ¶ 5). The pension distributions will take place as soon as administratively feasible after IDB's auditor completes the calculations for the distributions (Rinaldi II Decl., at ¶ 5). IDB would have followed these procedures regardless of whether plaintiff filed suit (Rinaldi II Decl., at ¶ 7).

In sum, IDB has met all of its obligations to plaintiff. Plaintiff's claims are moot and must be dismissed for lack of subject matter jurisdiction.

**B.    <u>Attorneys' Fees Are Not Appropriate Here</u>**

Plaintiff claims that because IDB's actions "forced" him to institute this action, he is entitled to attorneys' fees pursuant to the ERISA statute, 29 U.S.C. § 1132(g)(1) ("ERISA") (*see* Pl. Br., p. 6). As an initial matter, legal fees are awarded under ERISA only if a plaintiff establishes an ERISA violation. *See Park v. Trustees of the 1199 SEIU Health Care Employees Pension Fund,* 418 F. Supp. 2d 343, 359 (S.D.N.Y. 2005) (Koeltl, J.) (refusing to award attorneys' fees where plaintiffs' positions were entirely meritless); *Thompson v. General Elec. Co.*, 01CIV4438(JGK), 2002 WL 482862, at *8 n.1 (S.D.N.Y. Mar. 29, 2002) (Koeltl, J.) (same) (attached hereto as Exhibit A); *Miles v. N.Y.S. Teamsters Conference Pension & Retirement Fund Employee Benefit Plan*, 698 F.2d 593, 602 (2d Cir. 1983) (attorneys' fees inappropriate because at least three of the five *Chambless* factors are affected by a plaintiff's success on the merits); *Fase v. Seafarers Welfare & Pension Plan*, 589 F.2d 112, 116 (2d Cir. 1978) ("An altogether sufficient support for [a] court's decision not to award attorney's fees under ERISA is that the [plaintiff] obtained no relief under that statute."). Because no such violation occurred here, plaintiff's claim for fees must fail.

2

But even if the Court were to consider plaintiff's claim for fees, the Court should find the claim lacking. In determining whether to award attorneys' fees pursuant to § 1132(g)(1), a court must consider (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987); *Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 227 (2d Cir. 2004) (applying *Chambless* factors). The *Chambless* factors weigh decidedly against an award of attorneys' fees here.

First, courts do not award attorneys' fees to plaintiffs asserting unsuccessful ERISA claims because they cannot satisfy the first, third, or fourth *Chambless* factors. *See Park,* 418 F. Supp. 2d at 359; *Thompson,* 2002 WL 482862, at *8 n.1; *Miles,* 698 F.2d at 602; *Fase,* 589 F.2d at 116. As discussed above, plaintiff's claims are moot and must be dismissed; an award of attorneys' fees is therefore entirely inappropriate.

Second, even if the Court ultimately views plaintiff as "prevailing" on his ERISA claims, the first, third, fourth, and fifth *Chambless* factors each weigh against an award of attorneys' fees given the allegations in the Complaint. IDB acted in good faith in seeking to provide plaintiff with his pension benefits (Rinaldi II Decl., at ¶ 7). IDB did not ignore or refuse to process plaintiff's claims or otherwise act in an arbitrary or capricious manner. Rather, IDB processed those claims timely and accurately, consistent with every other employee similarly situated to plaintiff (Rinaldi II Decl., at ¶¶ 2-3, 6-7). Further, plaintiff alleges no facts to suggest that IDB acted with any degree of culpability

justifying attorneys' fees. *Slupinski v. First Unum Life Ins. Co.*, 99CIV0616(TPG), 2006 WL 2266569, at *4 (S.D.N.Y. Aug. 7, 2006) (even though offending party improperly terminated plaintiff's benefits, defendant did not act with a degree of culpability so "reprehensible or wrong" as to justify an award of attorneys' fees) (attached hereto as Exhibit B); *Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875, 891 (S.D.N.Y. 1994) (culpable conduct means conduct that is blameable, censurable, "something more than simple negligence"), *aff'd* 60 F.3d 956 (2d Cir. 1995).

A fee award would also not deter IDB from continuing to process these claims in a reasonable and thorough manner, consistent with its plan administration procedures. *See DeFelice v. American Intern. Life Assur. Co. of New York*, 94CIV8165(AGS), 1996 WL 304542, at *2 (S.D.N.Y. Jun. 5, 1996) (plaintiff could not satisfy deterrence factor because defendant acted reasonably in evaluating and acting upon benefits claim) (attached hereto as Exhibit C). Likewise, the relative merits of the parties' positions do not support an attorneys' fees award. Even if the court ultimately considers plaintiff to have technically "prevailed" in establishing an ERISA violation, despite the dismissal of his ERISA claims because they are moot, there is no question that IDB's "position had merit and certainly could not be considered frivolous." *Id.* (citing *Renda v. Adam Meldrum & Anderson Co.*, 806 F. Supp. 1071, 1084 (W.D.N.Y. 1992) (award of fees is less appropriate where "the losing party has presented a meritorious, albeit unsuccessful argument in support of its position")). Finally, the fifth *Chambless* factor also weighs heavily against plaintiff because his action "does not directly benefit any group of pension plan participants." *Slupinski*, 2006 WL 2266569, at *5; *see also DeFelice,* 1996 WL 304542, at *2 (fifth factor may not weigh in plaintiff's favor where it is not a

4

common fund case).

IDB paid plaintiff his Deferred Compensation Benefits. IDB will pay him his

Pension benefits shortly. Plaintiff has alleged no facts entitling him to the recovery of

legal fees. Plaintiff's claims for attorneys' fees is baseless.

**C.     The Court Should Dismiss Plaintiff's Breach of Contract
         and Labor Law Claims**

Plaintiff's opposition to IDB's motion to dismiss confirms that his allegations are

legally insufficient to sustain his breach of contract and Labor Law claims. Plaintiff does

not – because he cannot -- allege any facts demonstrating his entitlement to a mandatory

bonus as he is well aware the bonus was not mandatory. Plaintiff's reliance on legal

conclusions to bolster his flawed claim demonstrates why it should be dismissed.

Plaintiff tautologically argues that it is sufficient to allege that he is entitled to a

bonus because it was "awarded" and therefore "earned" (Pl. Br., p. 6). A legal

conclusion is not binding on this Court. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-

61-62 ("Conclusory allegations or legal conclusions masquerading as factual conclusions

will not suffice to prevent a motion to dismiss."); *Estate of Morris ex rel. Morris v.

Dapolito*, 297 F. Supp. 2d 680, 685 (S.D.N.Y. 2004) (Koeltl, J.) (same); *First Nationwide

Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.), *cert. denied*, 513 U.S. 1079, 115

S. Ct. 728 (1994) ("the well-pleaded material allegations of the complaint are taken as

admitted; but conclusions of law or unwarranted deductions of fact are not admitted").[2]

---

[2] The cases plaintiff cites to do not support his contention that "[u]pon the award of the bonus, it [becomes] non-discretionary, and thereby vested in [plaintiff a contractual interest (Pl. Br., p. 6). In *Weiner v. Diebold*, 173 A.D.2d 166 (1st Dep't 1991), the court did not determine whether the bonus at issue was "earned." In *Harden v. Warner Amex Cable Communications Inc.*, 642 F. Supp. 1080 (S.D.N.Y. 1986), the plaintiff had an enforceable right to his bonus payment because it was an integral part of his compensation package as specifically provided for in his employment agreement, and likewise in *Mirchel v. RMJ Securities Corp*, 205 A.D.2d 388 (1st Dep't 1994), there existed an issue of fact as to whether the bonus was an integral part of plaintiff's compensation pursuant to an agreement by the parties.

Plaintiff does not and cannot allege any facts to support the legal conclusion that the bonus was "earned". Without such facts, plaintiff's breach of contract claim cannot withstand IDB's motion to dismiss.[3]

Likewise, the Court must not accept as true plaintiff's legal conclusion that his bonus constituted a "wage" under the Labor Law because it was "earned" (*see* Pl. Br., p. 7-8). As with the breach of contract claim, plaintiff's inability to state facts supporting the legal conclusion that the bonus was "earned" requires dismissal of his Labor Law claim (*see* Def. Br., p. 10 (citing *Truelove v. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 223-25, 738 N.E.2d 770, 715 N.Y.S.2d 366 (2000) (explicitly excluding discretionary compensation from the definition of "wages" under the Labor Law)).

Finally, Plaintiff asserts that just because "the Complaint does not specifically address the substantive section of the Labor Law the non-payment violates does not mean there was no allegation of a substantive violation" (Pl. Br., p. 8). This glib statement ignores plaintiff's utter failure to allege such a substantive violation of the Labor Law – a predicate to prevailing on a claim pursuant to § 198 of the Labor Law. *Gottlieb v. Kenneth D. Laub & Co., Inc.,* 82 N.Y.2d 457, 464, 626 N.E.2d 29, 33, 605 N.Y.S.2d 213, 217 (1993). Plaintiff's improper citation to Labor Law § 193 only underscores the lack of merit of this claim -- that section addresses improper withholdings from employee paychecks.

---

[3] A court will not enforce an agreement to provide a discretionary bonus in exchange for past services, because such agreements are unsupported by any consideration. *Tierney v. Capricorn Investors*, 189 A.D.2d 629 (1st Dep't 1993) (*see also* Def. Br., p. 9). Plaintiff seeks to distinguish *Tierney* by pointing out that the plaintiff there sought to enforce an oral agreement where there was a "no oral modification" clause. However, plaintiff neglects to advise the Court that the court in that case went on to state that "[e]ven if the alleged oral agreement is considered a superseding agreement or novation, there was a failure by plaintiff to show adequate consideration. Neither a promise to do that which the promisor is already bound to do, nor the performance of an existing legal obligation constitutes valid consideration." *Id.* at 631.

Absent allegations of specific substantive Labor Law violation, plaintiff is not entitled to recover on this claim and therefore, this claim must be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons stated in its moving brief and above, Defendant Israel Discount Bank of New York respectfully requests that the Court grant its motion to dismiss Counts Four and Five pursuant to Fed. R. Civ. P. 12(b)(1) and Count Three pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: New York, New York
          August 6, 2007

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY and POPEO, P.C.

By: _____
          Jennifer B. Rubin (JR 3221)
          Michael Arnold (MA 8541)
          The Chrysler Center
          666 Third Avenue
          New York, NY 10017
          Tele:(212) 935-3000
          Fax:(212) 983-3115

          *Attorneys for Defendants*

4100661v.3

7

# **<u>EXHIBIT A</u>**

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
**(Cite as: Not Reported in F.Supp.2d)**

C
Thompson v. General Elec. Co.
S.D.N.Y.,2002.

United States District Court, S.D. New York.
James P. THOMPSON, Plaintiff,
v.
GENERAL ELECTRIC CO., Defendant.
**No. 01 Civ. 4438(JGK).**

March 29, 2002.

*OPINION AND ORDER*
KOELTL, J.
**\*1** This is an action arising from an alleged wrongful
denial of benefits under an employee benefits plan
subject to the requirements of the Employee
Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. § 1001 *et seq.* The defendant has moved to
dismiss the complaint in its entirety for failure to
state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). For
the following reasons, the defendant's motion is
granted.

I.

On a motion to dismiss, the allegations in the
complaint are accepted as true. *See Grandon v.
Merrill Lynch & Co., 147 F.3d 184, 188 (2d
Cir.1998).* In deciding a motion to dismiss, all
reasonable inferences must be drawn in the plaintiff's
favor. *See Gant v. Wallingford Bd. of Educ., 69 F.3d
669, 673 (2d Cir.1995); Cosmas v. Hassett, 886 F.2d
8, 11 (2d Cir.1989).* The court's function on a motion
to dismiss is "not to weigh the evidence that might be
presented at trial but merely to determine whether the
complaint itself is legally sufficient." *Goldman v.
Belden, 754 F.2d 1059, 1067 (2d Cir.1985).*
Therefore, the defendant's present motion should only
be granted if it appears that the plaintiff can prove no
set of facts in support of its claim that would entitle it
to relief. *See Conley v. Gibson, 355 U.S. 41, 45-46
(1957); Grandon, 147 F.3d at 188; see also Goldman,
754 F.2d at 1065.*

In deciding the motion, the court may consider
documents referenced in the complaint and
documents that are in the plaintiff's possession or that
the plaintiff knew of and relied on in bringing suit.

*See Brass v. American Film Technologies, Inc., 987
F.2d 142, 150 (2d Cir.1993); Cortec Indus., Inc. v.
Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991);
I. Meyer Pincus & Assoc., P.C. v. Oppenheimer &
Co., Inc., 936 F.2d 759, 762 (2d Cir.1991); Skeete v.
IVF America, Inc., 972 F.Supp. 206, 208
(S.D.N.Y.1997). See also Vtech Holdings Ltd. v.
Lucent Technologies, Inc., 172 F.Supp.2d 435, 437
(S.D.N.Y.2001).*

II.

The complaint alleges as follows. Plaintiff James P.
Thompson is an executive with Thomson Consumer
Electronics, Inc. ("TCE"). (Compl.¶ 4.) Prior to
January 1, 1999, Thompson was Senior Counsel to
GE and RCA Licensing Management Operation, Inc.
("GERLMO"). (*Id.*) In October of 1990, defendant
General Electric Co. ("GE") offered the plaintiff and
certain other employees who were "Executive Band
and above" the opportunity to participate in the
General Electric 1991 Executive Deferred Salary
Plan (the "Plan"). (*Id.* ¶ ¶ 1, 6.) Under the terms of
the Plan, eligible employees were permitted to defer a
portion of their 1991 base salary on a pre-tax basis.
(*Id.* ¶ 7.)

According to the Plan, participants who remained
employed by GE until December 31, 1995 would
receive a 14% fixed annual interest rate on the
amount deferred, with payouts beginning on March 1
of the year following the year that employment with
GE terminated. (*Id.*) In addition, participants who
terminated their employment with GE "on or after
December 31, 1991, but before December 31, 1995
because of retirement, death, disability, or business
disposition" (Def. Mem., Ex. C at 3), would also
receive a 14% interest rate on the amount deferred,
with payouts beginning on March 1 of the year
following the year of termination. Participants
receiving payouts under either of these provisions
could elect to receive them in a lump sum or in 10 to
20 annual installments. (*Id* . at 2.) In contrast,
"[p]articipants who terminate for any reason prior to
December 31, 1991 or for reasons other than
retirement, death, disability or business disposition
prior to December 31, 1995 will receive a lump-sum
payment as soon as practical following termination of
employment ... with simple interest credited monthly
at a 5% annual rate to the date of termination." (*Id.* at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
**(Cite as: Not Reported in F.Supp.2d)**

3.)

**\*2** Thompson questioned whether he would benefit from participating in the Plan, because he expected to be transferred from GERLMO to TCE in 1994 under a contract between GE and TCE that existed at the time the Plan was offered. (Compl.¶ 8.) This contract provided that ownership of the GE subsidiary, RCA Licensing Corporation ("RCAL"), would be transferred to TCE in late 1994 or early 1995. (*Id.*) This transfer (the "RCAL transition") was "an integral factor for [Thompson] in deciding whether to participate in the Plan, since he did not want to suffer the financial hardship of contributing ... in 1991 if his payout would begin just four years later." (*Id.*) Thompson voiced his concerns to Stuart A. Fisher, President and General Manager of GERLMO. In response, Fisher spoke with Jack Peiffer, Senior Vice President of Corporate Human Resources. (*Id.* ¶ 9.) On November 2, 1990, Fisher wrote a memorandum to Thompson, in which he indicated that "Peiffer ... confirmed that should a participant in the plan become a[TCE] employee prior to December 31, 1995 as a result of the RCAL transition, such employment, and only such employment, will be considered an extension of GE employment for purposes of the Plan." (Compl., Ex. A.) Thompson decided to participate in the Plan, and deferred 50% of his base salary in 1991. (*Id.* ¶ 10.)

In December of 1991, GE renegotiated its contract with TCE, and the RCAL transition was postponed. (*Id.* ¶ 11.) GE and TCE agreed that the transition would take place on January 1, 1999, on which date Thompson began his employment with TCE. (*Id.*) In March of 1999, the plaintiff received his first payment under the Plan from GE. (*Id.* ¶ 12.) Shortly thereafter, Thompson sent a letter offering to return the check and indicating that he should not have received any payment because his employment at TCE was employment with GE for purposes of the Plan. The plaintiff's letter was referred to the committee appointed to administer and interpret the Plan (the "Plan Administrator"). (*Id.* ¶ 13.) The Plan Administrator denied Thompson's claim on April 7, 1999 and denied his appeal of that decision on June 25, 1999. (*Id.*)

The plaintiff alleges that the defendant has wrongfully denied him benefits, thereby breaching the Plan and its fiduciary duties to him, in violation of ERISA and the common law. In essence, the plaintiff argues that his employment by TCE should be considered as continued employment with GE and that he should not receive any payments of his 1991

deferred salary until his employment with TCE terminates. He contends that, instead, his deferred salary should continue to be held and accrue interest at 14% until the termination of his TCE employment. More particularly, the plaintiff asserts the following causes of action: promissory estoppel (first cause of action); breach of contract (second cause of action); breach of the implied covenant of good faith and fair dealing (third cause of action); breach of fiduciary duty in violation of 29 U.S.C. § 1104(a) (fourth cause of action); denial of benefits under the Plan in violation of 29 U.S.C. § § 1132(a)(1)(B) and 1132(a)(3) (fifth cause of action); and **attorney's fees** (sixth cause of action).

III.

**\*3** The parties dispute whether the district court's review of the Plan Administrator's decision under ERISA should be pursuant to an "arbitrary and capricious" standard or a "de novo" standard. It is undisputed, however, that the Plan provided that the "Committee shall have full power and authority on behalf of the Company to administer and interpret the Plan. All Committee decisions with respect to the administration and interpretation of the plan shall be final and shall be binding upon all persons." (Def. Mem., Ex. A at 2.)

Where, as here, a benefits plan governed by ERISA "confers discretion on its administrators to determine plan eligibility and benefits, we review a decision of the administrators under the arbitrary and capricious standard." *Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798 of the Alliance of Theatrical Stage Employees,* 170 F.3d 162, 166 (2d Cir.1999) (*citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995)). Under the arbitrary and capricious standard, the court cannot question the plan administrator's decision except in the case of a "clear error of judgment." *Jiras,* 170 F.3d 162, 166.

Thompson contends that the de novo review standard should apply because of an alleged conflict of interest that allegedly influenced the decision of the Committee members who administered the Plan. The plaintiff argues that the Plan was unfunded and that the Committee members, as employees of the sponsoring company, had an interest in denying benefits to a former employee.

Thompson relies on *Firestone* to argue that, because

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
(Cite as: Not Reported in F.Supp.2d)

the Plan Administrator was allegedly influenced by a conflict of interest, the court should conduct a de novo review of the Administrator's decision. However, the Court in *Firestone* held only that de novo review is appropriate where a benefits plan does not expressly invest a plan administrator or fiduciary with the authority to interpret or construe the plan. *Firestone,* 489 U.S. at 115. The Court went on to explain that where a plan does expressly invest an administrator with discretion, even though the administrator was operating under a conflict of interest, that conflict of interest must be weighed as "a 'facto[r] in determining whether there is an abuse of discretion." ' *Id.* at 115 (quoting *Restatement (Second) of Trusts § 187,* cmt. d (1959)). "Thus, where otherwise appropriate, courts should apply the arbitrary and capricious standard 'regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." ' *Dunnigan v. Metropolitan Life Ins. Co.,* 99 F.Supp.2d 307, 316 (S.D.N.Y.2000) (quoting *Firestone Tire, 489 U.S. at 115); see also Sullivan v. LTV Aerospace and Defense,* 82 F.3d 1251, 1255-56 (2d Cir.1996) (holding that "arbitrary and capricious" standard applies where discretion is expressly given to plan administrator, and where administrator is shown to have a conflict of interest, unless conflict actually influenced decision); *Pagan,* 52 F.3d at 442. Where the administrator was in fact influenced by the conflict of interest, "the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo." *Sullivan,* 82 F.3d at 1256.

**\*4** In this case, before any discovery has been had the Court could not determine whether any alleged conflict of interest actually influenced the Plan Administrator's decision. Therefore, on this motion to dismiss the Court will apply the more exacting de novo review standard. Even applying the stricter standard of de novo review, however, it is clear that the Plan Administrator's decision was entirely correct.

Thompson ceased to be an employee of GE in 1998. Under the clear terms of the Plan, that event triggered the payout of the 1991 deferred salary in accordance with the payout method Thompson had selected, namely 20 annual installments commencing the year after termination. (Def.Mem., Ex. D.) The Plan provided: "Payments will be made under the method elected beginning of March 1 of the year following the year of termination of employment.". (Def. Mem., Ex. A at 2, § IV.4.) The Plan description also clearly states that "[t]ermination of employment on or

after December 31, 1995, for any reason, or on any date on or after December 31, 1991 because of retirement, death, disability, or business disposition will result in payouts based on account accumulation at the 14% interest rate. Payments will be made under the method elected beginning on March 1 of the year following the year of termination." (Def. Mem., Ex. B at 2.) The plaintiff's original deferral election form in 1991 similarly acknowledged that the payout would begin March 1 following the year of termination. (Def.Mem., Ex. D.) There is no question that the defendant's deferred 1991 salary accumulated interest at the rate of 14% and that the remaining installments continue to receive 14% interest under the Plan until the payout is completed. The plaintiff does not dispute the interest rate he has received, only the decision that he was not permitted to defer the beginning of his payout after his employment with GE had terminated. There is nothing in the Plan or Plan description that permitted the plaintiff to defer the beginning of his payout beyond March 1 of the year following his termination from GE. Because that employment terminated in 1998, his payout should have begun and did begin in March, 1999.

The plaintiff argues that the Fisher memorandum should be read to mean that the plaintiff's employment by TCE was a continuation of his employment with GE and therefore his GE employment did not terminate in 1998. This argument is unavailing. First, the Fisher memorandum did not amend the terms of the Plan and the Summary Plan Description. *See Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988) ("absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result of informal communications between an employer and plan beneficiaries."). Second, the Fisher memorandum, by its terms, does not support the plaintiff's attempt to defer the payout of his 1991 deferred salary. By its explicit terms, the memorandum stated that "should a participant in the plan become a[TCE] employee *prior to December 31, 1995* as a result of the RCAL transition, such employment, and only such employment, will be considered an extension of GE employment for purposes of the plan." (Def. Mem, Ex. E (emphasis added).) It is undisputed that the plaintiff did not become a TCE employee before December 31, 1995, and therefore the memorandum by its terms did *not* provide that the plaintiff's employment by TCE in 1995 somehow extended his employment with GE. The Plan Administrator's decision that the Fisher memorandum did not apply to the plaintiff because he transferred to TCE after December 31, 1995 was

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
(Cite as: Not Reported in F.Supp.2d)

Page 4

wholly correct, even applying the strict standard of de novo review. Taking all of Thompson's allegations as true, and drawing all factual inferences in favor of him, there is simply no basis on which this Court could reverse the Plan Administrator's decision. Therefore, the plaintiff's claim for denial of benefits under ERISA (fifth cause of action) is dismissed.

## IV.

*5 GE argues that Thompson's claim for breach of fiduciary duty under ERISA must be dismissed because the Plan is a "top hat" plan, that is, one which is "unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," and is therefore exempt from ERISA's fiduciary responsibility provisions. See 29 U.S.C. § § 1051(2), 1081(a)(3), 1101(a)(1).

Thompson claims that the Plan is not a "top hat" plan because he was never a management or highly compensated employee, and that there are issues of fact as to whether the Plan was maintained primarily for such employees. It is unnecessary to determine whether the Plan is a "top hat" plan because the plaintiff's claim for breach of fiduciary duty is premised on his claim that the Plan Administrator wrongfully denied him continued participation in the Plan. For the reasons explained above, there is no merit to that claim and therefore the Plan Administrator breached no fiduciary duty by simply applying the terms of the Plan. Accordingly, the claim for breach of fiduciary duty under ERISA (fourth cause of action) must be dismissed.

## V.

Thompson also alleges causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. These common law claims are preempted pursuant to 29 U.S.C. § 1144(a) because they expressly rely on, and are directly related to, the ERISA claims. The language of the statute is clear: ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a).

The Supreme Court has interpreted ERISA to displace all state laws "within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts Trevellers Ins. Co.,* 471 U.S. 724, 739 (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21 (1983); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 144 (1990) (holding that state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan," whatever the state law's underlying intent); *Lopresti v. Terwilliger,* 126 F.3d 34, 41 (2d Cir.1997) (holding that "alternative theor[ies] of recovery for conduct actionable under ERISA" are preempted). "[T]he express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45-46 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 (1981)). "The words 'relate to' in section [1144(a) ] are to be interpreted broadly; ERISA does not preempt only state laws specifically designed to affect employee benefit plans or dealing with the subject matters covered by ERISA-reporting, disclosure, fiduciary responsibility, and the like." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 144 (2d Cir.1989).

*6 Thompson's claims for breach of contract (second cause of action) and breach of the implied covenant of good faith and fair dealing (third cause of action) "relate to" the benefit plan at issue. There is no dispute that the Plan at issue is governed by ERISA. Thompson alleges the same facts in support of these claims as he does in support of those based on ERISA; the breach of contract alleged is the breach of the Plan itself, in the form of wrongful denial of continued participation. The breach of the implied covenant of good faith and fair dealing similarly rests on this allegedly wrongful denial. These claims are completely coextensive with Thompson's ERISA claims and are, therefore, preempted and must be dismissed. Indeed, Thompson conceded at oral argument that these claims are preempted by ERISA.

## VI.

Thompson further alleges in his complaint that the defendant is estopped from denying him continued participation in the Plan (first cause of action). If the cause of action for promissory estoppel were viewed as a state law cause of action, it would be barred by preemption, as the defendant argues. However, while the complaint is not wholly clear, construing the allegations in favor of the plaintiff, the claim of promissory estoppel could be viewed as an argument that the defendant should be precluded from denying

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
**(Cite as: Not Reported in F.Supp.2d)**

the validity of the plaintiff's claim for benefits-namely his continued deferral of his salary. The Court of Appeals for the Second Circuit has recognized that the "principles of estoppel can apply in ERISA cases under extraordinary circumstances." _Schonholz v. Long Island Jewish Med. Ctr.,_ 87 F.3d 72, 78 (2d Cir.1996) (_citing Lee v. Burkhart,_ 991 F.2d 1004, 1009 (2d Cir.1993)). In _Schonholz,_ the Court of Appeals delineated the four basic elements of promissory estoppel: "(1) a promise, (2) reliance on that promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." _Schonholz,_ 87 F.3d at 79. The Court of Appeals adopted the formulation of the "promise" from the Second Restatement of Contracts: "[a] promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance." _Restatement (Second) of Contracts §_ 90(1) (1979), cited in _Schonholz,_ 87 F.3d at 79. In addition to these four basic elements, an ERISA plaintiff must adduce facts that demonstrate "extraordinary circumstances." _Aramony v. United Way Replacement Benefit Plan,_ 191 F.3d 140, 151 (2d Cir.1999); _Devlin v. Transp. Communications Int'l Union,_ 173 F.3d 94, 102 (2d Cir.1999).

The promise on which Thompson bases his claim of promissory estoppel is unambiguous: "should a participant in the plan become a Thomson Consumer Electronics employee _prior to December 31, 1995_ as a result of the RCAL transition, such employment, _and only such employment,_ will be considered an extension of GE employment for purposes of the plan." (Compl., Ex. E (emphasis added).) GE correctly asserts that this language in the Fisher memorandum does not help Thompson, because he indisputably did not become an employee of TCE until January 1, 1999-a full four years after the date stated the Fisher memorandum.

**\*7** Neither Fisher nor Thompson could reasonably have interpreted Fisher's memorandum to be a "promise" that TCE employment would constitute GE employment in perpetuity. The Plan documents and the Fisher memorandum could not be clearer; no reasonable person-much less a corporate attorney, such as Thompson-could interpret the Fisher memorandum as such a guarantee.

Furthermore, the date set forth in Fisher's memorandum makes sense in the context of the Plan. Thompson himself concedes that in 1990, he, GE, and TCE all anticipated that the RCAL transition would take place before December 31, 1995.

(Compl.¶ 8.) The Plan states, in relevant part: Termination of employment on or after December 31, 1995, for any reason, or on any date _on or after December 31, 1991_ because of retirement, death, disability, or _business disposition_ will result in payouts based on account accumulations at the 14% interest rate ... under the method elected beginning on March 1 of the year following the year of termination.

....

Termination of employment for any reason prior to December 31, 1991 _or for reasons other than retirement, death, disability, or successor employer prior to December 31, 1995_ will result in a lump sum payment as soon as practical following termination of employment. Payment will include the amount deferred with simple interest credited monthly at a 5% annual rate to the date of termination.

(Def. Mem., Ex. B at 2 (emphasis added).) In the absence of the Fisher memorandum, it was not clear from the terms of the Plan itself whether a transfer to TCE prior to December 1, 1995 as a result of the RCAL transition would be considered a "business disposition."

Thompson, therefore, had an obvious reason for concern: If he elected to participate in the Plan, and then he transferred to TCE as scheduled (in 1994 or early 1995), his deferred salary might be credited only 5% interest, rather than 14%, and paid out in an immediate lump sum, rather than according to his payout election. Fisher's assurance protected Thompson from this potential downside; he would receive the 14% interest rate, compounded annually on each December 31, even if he left GERLMO prior to December 31, 1995 to work for TCE as a result of the RCAL transition. The memorandum provided comfort to the plaintiff if he left GE to go to TCE prior to December 31, 1995. The memorandum did not apply to the situation where the plaintiff left GE after December 31, 1995, but in that case the Plan provided that he would receive the 14% interest rate, although the payout would begin in March following the year of termination.

It is also clear that this case lacks the "extraordinary circumstances" required for the application of promissory estoppel. The present case is strikingly different from _Schonholz,_ in which the Court of Appeals for the Second Circuit held there was at least a question as to whether "extraordinary circumstances" existed for the purposes of a promissory estoppel claim in the ERISA context: **\*8** [T]he remarkable consideration in _Schonholz_ was

Not Reported in F.Supp.2d                                                                      Page 6
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703
**(Cite as: Not Reported in F.Supp.2d)**

the defendants' use of promised severance benefits as an inducement to persuade Schonholz to retire. Because the defendant Medical Center was presumably bound by the acts of its agent, Dr. Match, it was as though the Medical Center had intentionally used the promise of severance benefits to win Schonholz's resignation, and then reneged once she resigned.

*Devlin,* 173 F.3d at 102. In this case, however, there are no allegations to support a claim of "extraordinary circumstances." The plaintiff does not claim that the 1990 Fisher memorandum caused him to leave GE in 1998. In fact, Thompson stated in his complaint that he expected he would be going to TCE when the RCAL transition took place-that is precisely what prompted him to ask about the implications of the transfer before he decided to participate in the Plan. Moreover, the plaintiff received protection of accrual at the 14% interest rate if he had left to go to TCE before the end of 1995. There are no extraordinary circumstances in this case to apply promissory estoppel to create a claim for benefits which is not supported in the Plan documents or the Fisher memorandum.[FN1]

> [FN1.] Because there is no merit to any of the plaintiff's claims the plaintiff is not entitled to **attorney's fees**. *See* 29 U.S.C. § 1132(g)(1) (award of **attorney's fees** in ERISA action by participant is in court's discretion).

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted. The Clerk of Court is directed to enter judgment dismissing the complaint and closing the case.

SO ORDERED.

S.D.N.Y.,2002.
Thompson v. General Elec. Co.
Not Reported in F.Supp.2d, 2002 WL 482862 (S.D.N.Y.), 27 Employee Benefits Cas. 2703

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **EXHIBIT B**



Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 2266569 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**H**
Slupinski v. First Unum Life Ins. Co.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Zbigniew SLUPINSKI Plaintiff,
v.
FIRST UNUM LIFE INS. CO., and Weil, Gotshal &
Manges Long Term Disability Income Plan
Defendants.
**No. 99 CV 0616(TPG).**

Aug. 7, 2006.

*OPINION*

GRIESA, J.
**\*1** Plaintiff Zbigniew Slupinski brought this action
pursuant to the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § § 1001 *et seq.*,
challenging the termination of long-term disability
benefits he had been receiving from defendant Weil,
Gotshal & Manges Long Term Disability Income
Plan (the "Plan"), which was administered and
insured by defendant First Unum Life Ins. Co.
Slupinski sought retroactive and prospective benefits,
prejudgment interest, and attorney's fees.

First Unum moved for judgment on the
administrative record and Slupinski cross-moved for
summary judgment. In an opinion dated September
16, 2005, the court denied First Unum's motion, and
granted Slupinski's cross-motion, which the court
treated as a motion for judgment on the
administrative record. *See Slupinski v. First Unum
Life Ins. Co.,* 99-CV-0616, 2005 U.S. Dist. LEXIS
21601 at \*28 (S.D.N.Y. September 16, 2005). The
court conducted a *de novo* review of the
administrative record and found, contrary to First
Unum's determination, that Slupinski was disabled
within the meaning of the Plan. The court declined,
however, to award prejudgment interest or attorney's
fees.

First Unum has taken the position that this court's
ruling only required the payment of benefits from the
date they were terminated, January 11, 1996, through
March 26, 1997, the date the administrative record
was closed, but for no period thereafter. First Unum
maintains that, because the court's review was limited
to the administrative record, which ended with First

Unum's March 26, 1997 final decision to terminate
Slupinski's benefits, it did not intend to require First
Unum to pay benefits for any later period. According
to First Unum, Slupinski would only receive benefits
for periods after March 26, 1997 if he submits
information showing that he continued to be disabled
at those times.

Slupinski has moved pursuant to Fed.R.Civ.P. 60(a)
and (b) for an order clarifying the judgment to require
First Unum to pay retroactive disability benefits from
the date they were terminated through the present and
to reinstate his benefits prospectively. Slupinski also
moves, pursuant to Local Civil Rule 6.3 and Rule
54(d)(2), for reconsideration of that part of the court's
September 16, 2005 opinion that denied attorney's
fees.

The motion to clarify the judgment pursuant to Rule
60(a) is granted. The motion for reconsideration of
the court's decision not to award attorney's fees is
denied.

*Motion to Clarify the Judgment*

The facts of this case are contained in the court's
September 16, 2005 opinion, knowledge of which
shall be assumed. The court's findings were based
upon a thorough *de novo* review of the administrative
record. In the opinion, the court found, contrary to
First Unum's determination, that Slupinski was
disabled within the meaning of the Plan, -*i.e.,* that he
was unable to engage in any gainful occupation, due
to his credible claims of "severe and chronic pain."
The court therefore granted Slupinski judgment on
the administrative record.

**\*2** The court did not, however, explicitly state the
period for which First Unum must pay Slupinski
benefits. This omission has generated a dispute
between the parties as to the effect of the court's
opinion. First Unum argues that the court only
intended to award benefits for the period prior to
March 26, 1997, the date the administrative record
was closed, because the court did not have before it
information regarding Slupinski's subsequent
entitlement to benefits. First Unum alternatively
argues that, even if the court intended to award
benefits for the period after March 26, 1997, it did
not have jurisdiction to do so.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2266569 (S.D.N.Y.)
(Cite as: Slip Copy)

Slupinski, on the other hand, argues that the court's opinion requires First Unum to pay retroactive benefits for the entire period they were suspended, as well as prospective benefits until such time as First Unum determines that he is no longer disabled. Because First Unum has misinterpreted its obligations under the court's opinion, the court is obliged to clarify its opinion pursuant to Rule 60(a).

Rule 60(a) provides that "clerical mistakes in judgments ... arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party." Although the Rule uses the term clerical mistakes, case law makes clear that the more general purpose of Rule 60(a) "is to afford courts a means of modifying their judgments in order to ensure that the record reflects the actual intentions of the court." *Employers Mut. Casualty Co. v. Key Pharmaceuticals,* 886 F.Supp. 360, 363 (S.D.N.Y.1995). Thus, an error is deemed to be "clerical" under Rule 60(a) when the opinion or judgment fails to reflect the actual intention of the court. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1140 (2d Cir.1994); *In re Frigitemp Corp.,* 781 F.2d 324, 327 (2d Cir.1986); *Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 42 (2d Cir.1979).

In the present case, First Unum's reading of the September 16, 2005 opinion is contrary to both its plain meaning and the court's intent. It is true that Slupinski bore the initial burden of demonstrating his entitlement to disability benefits under the Plan. *See Maniatty v. UNUMprovident Corp.,* 62 Fed. Appx. 413, 413 (2d Cir.2003). However, once initial eligibility has been established, the Plan provides that ongoing proof of disability must be given only "upon request."

It is thus clear that an insured is under no obligation to provide proof of continued eligibility for benefits unless explicitly requested to do so by First Unum. Here, because First Unum incorrectly determined that Slupinski was no longer disabled, it failed to request proof of disability after the date of that decision, and did not reevaluate his eligibility for benefits. Under the express terms of the policy, the burden of requesting continuing documentation of disability-and the consequences of failing to do so-fall squarely upon First Unum. Therefore, as an immediate consequence of the court's finding of disability, First Unum must pay full retroactive benefits through the present and prospective benefits until such time as First Unum determines that plaintiff is no longer disabled. To the extent the parties found the

September 16, 2005 opinion ambiguous on this point, the court hereby clarifies that such was the intent of that opinion.

*3 First Unum also argues that the court did not have jurisdiction to grant this relief because it did not have any information regarding Slupinski's condition after the close of the administrative record. The Second Circuit rejected precisely this argument in *Locher v. UNUM Life Ins. Co. of Am.,* 389 F.3d 288 (2d Cir.2004). In *Locher,* the plaintiff had applied for and been denied long term disability benefits by the plan administrator. After exhausting her administrative remedies, which culminated in the denial of her administrative appeal on November 15, 1995, the plaintiff filed suit. The district court conducted a de novo review of First Unum's denial and found that the plaintiff was disabled. The district court ordered First Unum to pay benefits from April 8, 1993, the date of onset of disability, through the entry of judgment in June 2003.

On appeal, First Unum argued that the district court lacked jurisdiction to award payment of benefits for any period beyond that which First Unum had an opportunity to consider, -*i.e.,* the period before to the closing of the administrative record, and that the district court should have remanded the matter to First Unum for a determination of disability for any month after April 8, 1993. The Second Circuit rejected this argument, holding that because the plan places the burden of requesting evidence of continued disability upon First Unum, it is First Unum that must suffer the consequences for failing to request such information and reevaluating the plaintiff's eligibility: Here ... there is no explicit requirement in the Plan for a reevaluation after an initial finding of disability.... Additionally, the Plan indicates that evidence of continued disability need be provided only 'upon request,' rather than prior to each monthly payment....[B]y denying Locher her benefits starting in 1993, UNUM may not now challenge an award on the basis of an insufficiency of information for which it is responsible. Accordingly, UNUM's challenge to the District Court's award of benefits fails.

*Id.* at 298.

Like the plan in *Locher,* the plan at issue in the present case contains no requirement that an insured who is receiving benefits be reevaluated or provide additional medical information unless requested to do so by First Unum. Therefore, as in *Locher,* the court has jurisdiction to order First Unum to pay benefits not just for the period encompassed by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

administrative record, but for the entire period they were suspended and prospectively, and the court so intended in its September 16, 2005 opinion.

In response to Slupinski's motion to clarify the judgment, First Unum has, for the first time, submitted documents that it claims show that Slupinski was not disabled during at least some of the period for which the court has awarded benefits. These documents do appear to raise serious questions as to Slupinski's eligibility for benefits under the Plan. However, as a procedural matter, the issue may not properly be considered in the present context. First Unum is, of course, entitled to seek relief in an appropriate post-judgment motion or a new action.

### Motion for Reconsideration of Denial of Attorney's Fees

**\*4** Slupinski also moves for reconsideration of the court's decision to deny his request for attorney's fees. In the September 16, 2005 opinion, the court considered the question of attorney's fees under the five-factor test set forth in *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir.1987), and declined such an award, holding that:
Despite First Unum's improper termination of plaintiff's LTD benefits, the lack of bad faith and absence of a common benefit conferred upon a group of pension plan participants counsels against an award of attorney's fees in this case.

*Slupinski,* 2005 U.S. Dist. LEXIS 21601 at \*28.

Slupinski's request for reconsideration must be denied. Local Civil Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996). Therefore, a motion for reconsideration is proper only where "the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." *Range Rd. Music, Inc. v. Music Sales Corp.,* 90 F.Supp.2d 390, 392 (S.D.N.Y.2000); *Yurman Design, Inc.,* 99-CV-9307, 2000 U.S. Dist. LEXIS 1747 at \*1-2 (S.D.N.Y. February 22, 1999).

Here, Slupinski concedes that the five-factor *Chambless* test, applied by the court in its September 16, 2005 opinion, is the controlling law which governs his claim for attorney's fees. Under

*Chambless,* the decision whether to award attorney's fees should be based upon the following factors:
(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless,* 815 F.2d at 872.

In the September 16, 2005 opinion, the court determined that First Unum had not acted in bad faith. It is true, as Slupinski argues, that an ERISA plaintiff need not show actual bad faith to recover attorney's fees. *Gennamore v. Buffalo Sheet Metals, Inc.,* 568 F.Supp. 931, 936 (S.D.N.Y.1983). However, the offending party must at least be culpable to such a degree that its actions are "reprehensible or wrong." *Algie v. RCA Global Commun ., Inc.,* 891 F.Supp. 875, 891 (S.D.N.Y.1994).

Here, First Unum did not act in bad faith or with a degree of culpability that would justify an award of attorney's fees. Slupinski claimed that he was disabled by severe and chronic pain resulting from injuries he sustained in an automobile accident. The court recognized that "the subjective nature of pain and its often non-objectively quantifiable nature present special credibility concerns," *Slupinski,* 2005 U.S. Dist. LEXIS 21601 at \*19, but found Slupinski's claims credible because he had sustained an objectively verifiable physical injury and because his pain was confirmed by numerous doctors. It must be recognized, however, that the special credibility concerns inherent in claims of pain introduce a substantial element of imprecision and subjectivity into the determination of disability status, which makes it harder to find the decision-maker, here First Unum, culpable.

**\*5** Other factors also weigh against a finding of culpability. One of Slupinski's doctors, Romas Sakalas, had submitted a report stating that he could work full time while another, Fernando Miranda, had equivocated on his functional capacity. Although the court found these reports not to be credible, especially in light of voluminous evidence to the contrary, First Unum's denial was not without any basis. In addition, First Unum paid benefits for more than three years before it finally determined that Slupinski was no longer eligible. Although the court

Slip Copy
Slip Copy, 2006 WL 2266569 (S.D.N.Y.)
**(Cite as: Slip Copy)**

determined, by *de novo* review of the administrative record, that Slupinski was disabled by his pain, First Unum's finding to the contrary does not constitute culpability sufficient to warrant an award of attorney's fees.

Slupinski argues that First Unum's culpability in the present case should be inferred from its history of allegedly inappropriate claims handling. In particular, Slupinski points to a settlement between state insurance regulators and various insurers, including First Unum, arising from allegations that they had inappropriately denied claims for benefits under long-term disability insurance policies. The court finds this argument to be irrelevant, as First Unum's conduct in this case may be evaluated directly based upon a complete administrative record.

The second and third factors favor Slupinski because First Unum does not deny the ability to pay an award of attorney's fees and because such an award will likely deter First Unum and other administrators from denying claims for disability benefits based upon pain.

The fourth *Chambless* factor asks the court to assess the relative merits of the parties' positions. The court found that Slupinski's complaints of chronic and severe pain were credible in light of the physical injuries he had sustained and his doctors' repeated confirmations that his claims were genuine. However, First Unum's position was not without any basis; First Unum relied upon the September 1995 reports of Miranda and Sakalas, each of which suggested that Slupinski was not disabled. Although the court found this evidence not credible, it was not a frivolous ground for terminating benefits. The court finds that the fourth factor weighs in Slupinski's favor, though not overwhelmingly so.

Finally, the fifth factor weighs decidedly against an award of attorney's fees. Slupinski concedes that this action does not directly benefit any group of pension plan participants. He nevertheless argues that his success in this action will "encourage First Unum to consider these applications for long-term disability with more care." However, the Second Circuit has "not yet recognized such circumstances to satisfy this fifth factor." *Locher,* 389 F.3d at 299. Thus, the fifth factor weighs against any award of attorney's fees.

Having reviewed these factors, the court adheres to its decision to deny Slupinski's request for attorney's fees. The important factors of culpability and common benefit not being met, an award of attorney's

fees would be inappropriate.

### CONCLUSION

*6 Slupinski's motion for clarification of the court's September 16, 2005 opinion is granted. Slupinski's motion for reconsideration of his request for attorney's fees is denied.

SO ORDERED

S.D.N.Y.,2006.
Slupinski v. First Unum Life Ins. Co.
Slip Copy, 2006 WL 2266569 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 304542 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

**H**
DeFelice v. American Intern. Life Assur. Co. of New York
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Susan DEFELICE, Plaintiff,
v.
AMERICAN INTERNATIONAL LIFE
ASSURANCE COMPANY OF NEW YORK,
Defendant.
No. 94 CIV. 8165 (AGS).

June 05, 1996.

### MEMORANDUM DECISION

SCHWARTZ, District Judge:

**\*1** This action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § § 1001-1461, to recover benefits pursuant to an accidental death policy came on for trial before a jury on March 12, 1996. By verdict rendered March 21, 1996, the jury found for Plaintiff Susan DeFelice ("Mrs. DeFelice"), concluding by answer to interrogatory that she had proved, by a preponderance of the evidence, that the death of her husband Kent DeFelice ("Mr. DeFelice") "was caused by an accident and that it resulted directly from the accident and independently of all other causes, including diseases of any kind."

Mrs. DeFelice now moves for an award of reasonable **attorney's fees**, costs and expenses pursuant to 29 U.S.C. § 1132(g)(1). For the reasons set forth below, the motion is **denied**.

### DISCUSSION

Section 1132(g)(1) provides in pertinent part that "[i]n any action under [ERISA] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable **attorney's fee** and costs of action to either party." 29 U.S.C. § 1132(g)(1). The decision whether to award **attorney's fees** under ERISA is based on five factors:
(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of **attorney's fees**, (3) whether an award of fees would deter other persons from acting

similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund, 982 F.2d 783, 789 (2d Cir.1992); Chambless v. Masters, Maters & Pilots Pension Plan, 815 F.2d 869, 872 (2d Cir.1987).*

Applying these factors here, the Court concludes that there is no basis for awarding **attorney's fees** and costs to Mrs. DeFelice.

*Culpability or Bad Faith.* The Court finds that there was no culpability or bad faith on the part of Defendant American International Life Assurance Company of New York ("American International") in denying Mrs. DeFelice's claim and defending this action. A finding of culpability or bad faith requires something more than an ERISA plan administrator's determination that benefits are not to be allowed in a particular case. *See, e.g., Algie v. RCA Global Communications, Inc., 891 F.Supp. 875, 891 (S.D.N.Y.1994)* (culpable conduct means conduct that is blameable, censurable, "something more than simple negligence"), *aff'd, 60 F.3d 956 (2d Cir.1995).*

American International's denial of Mrs. DeFelice's claim was based on (1) its careful review and analysis of the limited information and documents initially submitted by Mrs. DeFelice after her husband's death in Mexico City, and (2) its own investigation based on expert medical advice from two doctors who concluded that Mr. DeFelice did not die an accidental death as Mrs. DeFelice claimed. Although the jury in this action reached a verdict at odds with American International's position, it was a hard-fought case with considerable evidence on both sides. Mrs. DeFelice contended that her husband died an accidental death as a result of the aspiration of his gastric contents into his airway. American International contended that Mr. DeFelice died from natural causes, most likely a heart attack or other "coronary event" stemming from alleged heart disease. Evidence tending to support both parties' contentions-including expert medical testimony, testimony regarding Mr. DeFelice's medical history, and autopsy records prepared by the Mexico City coroner's office-was carefully considered by the jury,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                  Page 2
Not Reported in F.Supp., 1996 WL 304542 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

which deliberated for approximately six hours before reaching its verdict.

**\*2** Analysis of the remaining factors set forth in *Mendez* and *Chambless* demonstrates that three of the four factors are not satisfied here.[FN1]

> FN1. American International concedes that it has the ability to satisfy an award of reasonable **attorney's fees** in this case, and the Court so finds.

*Deterrence.* Mrs. DeFelice contends that a fee award in this case will deter American International from acting in an arbitrary and capricious manner in **denying** future claims. However, as discussed above, the Court concludes that American International acted reasonably in evaluating and acting upon Mrs. DeFelice's claim. Therefore, this factor does not weigh in favor of awarding fees.

*Relative Merits.* The relative merits of the parties' positions also does not support an award of attorney's fees. Notwithstanding the fact that the jury ultimately found for Mrs. DeFelice, American International's position had merit and certainly could not be considered frivolous. *See Renda v. Adam Meldrum & Anderson Co.,* 806 F.Supp. 1071, 1084 (W.D.N.Y.1992) (award of fees is less appropriate where "the losing party has presented a meritorious, albeit unsuccessful, argument in support of its position"); *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1101-02 (6th Cir.1993) (affirming denial of request for **attorney's fees** where defendant acted in good faith and presented meritorious position), *cert. denied,* 114 S.Ct. 1371 (1994). Accordingly, this factor does not weigh in favor of awarding **attorney's fees.**

*Common Benefit.* The Court further finds that Mrs. DeFelice's lawsuit will not confer a common benefit on ERISA plan participants or beneficiaries. Mrs. DeFelice argues that American International will be discouraged "from abusing future beneficiaries of group accidental death policies." Plaintiff's Memorandum of Law in Support of Motion for Attorney's Fees at 22. The Court disagrees, for two reasons. First, the Court rejects the contention that American International has engaged in abusive conduct by vigorously disputing the claim of Mrs. DeFelice to accidental death benefits. Second, this action involved a serious dispute as to the cause of death unlikely to surface with frequency in future cases. In any event, future cases involving

entitlement to accidental death benefits will be decided on a case-by-case basis, not by reference to the particular result here. Accordingly, the Court concludes that this factor does not support an award of attorney's fees.[FN2]

> FN2. Although some courts have granted attorney's fee awards in cases where an action fails to confer a common benefit on a group of ERISA plan participants, these courts have required a strong showing of the other factors. *See, e.g., Pagovich v. Maskowitz,* 865 F.Supp. 130, 139 (S.D.N.Y.1994); *Miller v. United Welfare Fund,* No. 93 CV 2057, 1994 U.S.Dist. LEXIS 10160, at \*8-9 (E.D.N.Y. May 30, 1994). As discussed above, the Court concludes that no such showing has been made here.

*CONCLUSION*

For the reasons set forth above, Plaintiff's motion for an award of reasonable **attorney's fees,** costs and expenses pursuant to 29 U.S.C. § 1132(g)(1) is **denied.**

SO ORDERED.

S.D.N.Y.,1996.
DeFelice v. American Intern. Life Assur. Co. of New York
Not Reported in F.Supp., 1996 WL 304542 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.